UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TAWANNA M. ROBERTS, on behalf of herself and all others similarly situated,<br><br>                              Plaintiff,<br><br>            - against -<br><br>CAPITAL ONE, N.A.,<br><br>                              Defendant. | No. 16 Civ. 4841 (LGS) |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

James R. McGuire (*pro hac vice*)  
Grant C. Schrader (*pro hac vice*)  
MORRISON & FOERSTER LLP  
425 Market Street  
San Francisco, California  
Telephone: (415) 268-7000  
Facsimile: (415) 268-7522  
jmcguire@mofo.com  
gschrader@mofo.com  

Jessica L. Kaufman  
MORRISON & FOERSTER LLP  
250 West 55th Street  
New York, New York 10019  
Telephone: (212) 468-8000  
Facsimile: (212) 468-7900  
jkaufman@mofo.com  

*Attorneys for Defendant Capital One, N.A.*

# **TABLE OF CONTENTS**

|  | Page |
|---|---:|
| TABLE OF AUTHORITIES | ii |
| I. ARGUMENT | 3 |
|     A. Plaintiff Has Failed to Show Capital One Breached the Account Agreements. | 3 |
|         1. Plaintiff's Claim that Funds Are Debited "Immediately" at the Time of Authorization Ignores the Plain Terms of the Account Agreements. | 3 |
|         2. Plaintiff Has Not Identified Any Contractual Provision That Requires Capital One To Sequester Funds for Particular Transactions. | 5 |
|     B. The Implied Covenant Claim Cannot Alter the Terms of the Contract. | 7 |
|     C. Plaintiff's Unjust Enrichment Claim Fails as a Matter of Law. | 8 |
|     D. The Conversion Claim Is Duplicative of the Contract Claim. | 9 |
|     E. Plaintiff Fails to State a Claim under General Business Law § 349. | 9 |
| II. CONCLUSION | 10 |

sf-3704189

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Acevado v. Citibank, N.A.*,
   No. 10 Civ. 8030 (PGG), 2012 WL 996902 (S.D.N.Y. Mar. 23, 2012) ................................... 9

*AD Rendon Commc'ns, Inc. v. Lumina Americas, Inc.*,
   No. 04-CV-8832 (KMK), 2007 WL 2962591 (S.D.N.Y. Oct. 10, 2007) ............................... 9

*Broder v. Cablevision Sys. Corp.*,
   418 F.3d 187 (2d Cir. 2005) ............................................................................................... 7, 8

*Claridge v. N. Am. Power & Gas, LLC*,
   No. 15-cv-1261 (PKC), 2015 WL 5155934, at *4-6 (S.D.N.Y. Sept. 2, 2015) ....................... 8

*Fundacion Museo de Arte Contemporaneo de Caracas v. CBI–TDB Union
   Bancaire Privee*,
   160 F.3d 146 (2d Cir. 1998) (per curiam) .............................................................................. 9

*Gutierrez v. Wells Fargo Bank, NA*,
   704 F.3d 712 (9th Cir. 2012) ................................................................................................ 10

*In re Cablevision Consumer Litig.*,
   864 F. Supp. 2d 258 (E.D.N.Y. 2012) .................................................................................. 10

*JA Apparel Corp. v. Abboud*,
   568 F.3d 390 (2d Cir. 2009) ................................................................................................... 3

*Johnson v. Nextel Commc'ns, Inc.*,
   660 F.3d 131 (2d Cir. 2011) ................................................................................................... 7

*Mark Patterson, Inc. v. Bowie*,
   654 N.Y.S.2d 769 (App. Div. 1st Dep't 1997) ....................................................................... 8

*Mendez v. Bank of Am. Home Loans Servicing, LP*,
   840 F. Supp. 2d 639 (E.D.N.Y. 2012) .................................................................................. 10

*Rose v. Chase Bank USA, N.A.*,
   513 F.3d 1032 (9th Cir. 2008) .............................................................................................. 10

*Shaw Grp. Inc. v. Triplefine Int'l Corp.*,
   322 F.3d 115 (2d Cir. 2003) ........................................................................................... 3, 4, 6

*SPCP Grp., LLC v. Eagle Rock Field Servs., LP*,
   No. 12 Civ. 3610(PAC), 2013 WL 359650 (S.D.N.Y. Jan. 30, 2013) ................................... 5

*Speedfit LLC v. Chapco Inc.*,
    No. 15 CV 1323 (JMA) (SIL), 2016 WL 5793738 (E.D.N.Y. June 29, 2016),
    *report & recommendation adopted*, 2016 WL 5678812 (E.D.N.Y. Sept. 30, 2016).................9

*Spread Enters., Inc. v. First Data Merch. Servs. Corp.*,
    No. 11-CV-4743(ADS)(ETB), 2012 WL 3679319 (E.D.N.Y. Aug. 22, 2012).................7, 8, 9

**REGULATIONS**

74 Fed. Reg.
    5212 (Jan. 29, 2009).................................................................................................6
    5498 (Jan. 29, 2009).................................................................................................6
    59033 (Nov. 17. 2009)..............................................................................................6

**OTHER AUTHORITIES**

Pay, Merriam-Webster's Dictionary, http://www.merriam-
    webster.com/dictionary/pay (last visited Nov. 2, 2016) ............................................4

Payment, Merriam-Webster's Dictionary, http://www.merriam-
    webster.com/dictionary/payment (last visited Nov. 2, 2016) ....................................4

Transaction, Merriam-Webster's Dictionary, http://www.merriam-
    webster.com/dictionary/transaction (last visited Nov. 2, 2016) ................................2

Plaintiff wants this Court to read into the Account Agreements provisions that do not exist.  The Opposition cobbles together various arguments that, while nominally grounded in a patchwork of contractual provisions, in reality *ignore* the Account Agreements and state only Plaintiff's (or her counsel's) own subjective beliefs about how debit card transactions work.  Because Plaintiff cannot point to a single provision of her Account Agreements that Capital One breached by assessing overdraft fees on APPSN transactions, the Complaint should be dismissed.

Plaintiff's complex four-part theory of breach ignores the basic principles of contractual interpretation:  that terms should be given their plain meaning, and that particular words are not to be read in isolation but as part of the obligation as a whole.  For instance, the first step of Plaintiff's theory rests on the (incorrect) idea that the funds to pay a debit card transaction are debited from a customer's account "immediately" the moment the customer uses her card.  (Opp. at 1.)  The provision that Plaintiff cites for this premise, however, states that, if Capital One authorizes a transaction, "the funds will be debited from your primary checking account immediately **or** a hold may be placed on your account for up to several days after the purchase transaction has occurred."  Plainly, there is no promise to debit authorized amounts immediately when the EFT Agreement states that funds may instead be held for days.  Plaintiff *herself* does not dispute that the authorized amounts for the transactions at issue here were held, not immediately debited from her account.  Moreover, nothing in the Account Agreements requires Capital One to sequester held funds to pay the authorized transaction.  If that were the case, there would be no need for customers to agree "not to withdraw, write checks or make point of sale purchases against funds that are needed to pay ATM/Debit Card transactions that have not yet posted against your account." (McGuire Decl. Ex. 1 (EFT Agreement) § 3(D), ECF No. 20-1.)

Plaintiff next argues that Capital One promises that overdrafts will not be "charged"

-1-

sf-3704189

where sufficient funds are available to "cover your transactions." (Opp. at 3.) But this provision means just what it says: that customers can avoid overdrafts by keeping sufficient funds available in their accounts to pay for *all* of their transactions. A "transaction" occurs when there is a transfer of funds from the customer's account to the merchant's—*i.e.*, not at the moment a transaction is authorized but when the merchant is paid.[1] (Open. Br. at 8-11.)

The third element of Plaintiff's theory of breach rests, puzzlingly, on a provision that governs who may withdraw funds from an account at the teller window or ATM. Plaintiff takes this provision, which appears under the heading "Withdrawals," out of context.[2] She contends it contains a promise that funds will be deducted from a customer's account immediately and only once "since a customer is only 'at' an ATM machine or point of sale terminal at the time the transaction occurs." (Opp. at 3.) But that provision makes no such promise. Nor would it make sense: that provision governs who may access the customer's account to withdraw funds at a teller window or ATM, not what happens when customers make purchases.

Finally, Plaintiff contends that Capital One allegedly promises to post transactions chronologically. But that is patently contrary to what the Account Agreements actually say— that "[o]ur processing order might not be the same as the order you make transactions and could result in overdraft transactions. You can avoid overdrafts on your account by always making sure you have enough available funds in your account to cover your transactions." (Deposit Agreement at 2 (emphasis added).)

In short, permitting Plaintiff's strained claim for breach of contract—and her other

---

[1] *See* Transaction, Merriam-Webster's Dictionary, http://www.merriam-webster.com/dictionary/transaction (last visited Nov. 2, 2016) ("simple definition" of "transaction": "an occurrence in which goods, services, or money are passed from one person, account, etc., to another").

[2] The full provision states, "Withdrawals from your account may be made at the teller window only by authorized signer(s) on the account. We will not pay withdrawals to third parties. If you provide your ATM card or ATM/Debit card and personal access code to a third party, you have authorized the third party to withdraw funds from your account at an ATM machine or point of sale terminal." (Compl., Ex. A (Deposit Agreement) at 1.)

claims, which substantially restate her contract claim—would require the court to credit the contractual terms that Plaintiff has invented and ignore those in the actual contract. Without some basis in the terms of the Account Agreements, none of Plaintiff's claims can stand.

## I.   ARGUMENT

### A.   Plaintiff Has Failed to Show Capital One Breached the Account Agreements.

#### 1.   Plaintiff's Claim that Funds Are Debited "Immediately" at the Time of Authorization Ignores the Plain Terms of the Account Agreements.

As in the Complaint, Plaintiff's Opposition cobbles together out-of-context words and phrases in the Account Agreements in support of Plaintiff's theory that funds are debited and overdrafts are determined "immediately" when a transaction is authorized. (Opp. at 7-11.) But that is not what the contract says. A "contract should be construed so as to give full meaning and effect to all of its provisions." *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003) (citation omitted); *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 397 (2d Cir. 2009) (Court interpreting a contract "is to consider its [p]articular words not in isolation but in the light of the obligation as a whole . . ." (citation omitted)). Plaintiff's theory ignores the plain language of the overdrafts provision and other terms that circumscribe how transactions are processed and indeed obligate Capital One *not* to debit funds immediately.

The contract is clear. Overdrafts and Capital One's right to charge overdraft fees are triggered by Capital One's "*payment*" of a transaction with funds that are debited from the customer's account and transferred to the merchant payee. (Open. Br. at 8-11; Deposit Agreement at 3, Overdrafts.) Indeed, the entire overdrafts provision in the Deposit Agreement repeatedly and unambiguously describes overdrafts in the payment context, rather than the authorization context. (*See id.*) As shown in the Opening Brief, whether a transaction will overdraw a customer's account can *only* be determined based on the amount of funds available to

pay it at the time of payment, not at authorization. (Open. Br. at 8-13.)

Plaintiff claims "pay" and "payment" are somehow ambiguous (Opp. at 12-13), but the meaning of those terms could not be more plain: a payment does not occur until funds change hands, which, in this context, means funds are debited from Plaintiff's checking account and paid to the merchant.[3] *Shaw Grp. Inc.*, 322 F.3d at 121 ("[W]ords and phrases in a contract should be given their plain meaning") (citation omitted). That happens at posting, not at authorization. (Open. Br. at 8-11.) Plaintiff's claim that these terms refer to when a transaction is initially authorized—when no funds have actually been *paid* to the merchant—"strain[s the contract] language beyond its reasonable and ordinary meaning." *Shaw Grp. Inc.*, 322 F.3d at 124.

Despite this unambiguous language, Plaintiff insists that Capital One promises to debit funds and make overdraft determinations "immediately" at authorization. (Opp. at 6-11.) But if that were true, it would require Capital One to violate its promise to customers to *first* process credits "received by the close of our business day" and *then* process any pending debits on the customer's account. (*See* Deposit Agreement at 2, Processing Order of Credits and Debits.)

In other words, Capital One is obligated *not* to debit accounts immediately because it promises customers that they can deposit funds in their accounts until the close of the business day. This provision *helps* customers avoid overdrafts. If a customer enters into a transaction that causes her account to fall into a negative available balance at authorization, she may still deposit funds before the close of the business day to bring her account current and thus avoid overdraft fees. If Plaintiff's theory were correct and funds were debited immediately, Capital One could charge an overdraft fee for any transaction authorized into overdraft, regardless of whether a

---

[3] This comports with the dictionary definitions of "pay" and "payment." *See* Pay, Merriam-Webster's Dictionary, http://www.merriam-webster.com/dictionary/pay (last visited Nov. 2, 2016) (defining "pay" as "to discharge a debt or obligation"); Payment, Merriam-Webster's Dictionary, http://www.merriam-webster.com/dictionary/payment (last visited Nov. 2, 2016) (defining "payment" as "the act of giving money for something" or "an amount of money that is paid for something.").

customer deposited enough funds to pay the transaction before the merchant was paid. This absurd result illustrates why Plaintiff's interpretation of the contract is unreasonable. *See SPCP Grp., LLC v. Eagle Rock Field Servs., LP*, No. 12 Civ. 3610(PAC), 2013 WL 359650, at *6 (S.D.N.Y. Jan. 30, 2013) (courts must avoid interpreting a contract in a manner that would be "absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties").

The Opposition, like the Complaint, repeatedly misquotes and mischaracterizes the processing order provision, claiming Capital One promises to process transactions "close to the time" a customer makes a transaction. (Opp. at 10.) But the contract states that when Capital One knows the time of a transaction, debits will post "***closer*** to the time" of the transaction. (*See* Deposit Agreement at 2, Processing Order of Credits and Debits.) Plaintiff ignores the language in the same provision that says, "Our processing order **might not be the same as the order you make transactions and could result in overdraft transactions**." (*Id.* (emphasis added).). This provision does not support Plaintiff's immediate debit theory.

### 2. Plaintiff Has Not Identified Any Contractual Provision That Requires Capital One To Sequester Funds for Particular Transactions.

Plaintiff's theory of liability is that once Capital One holds funds in response to a merchant's authorization request, those very same funds must be sequestered to cover the specific transaction when the merchant requests to be paid. (Compl. ¶¶ 2, 41-46.) But, as shown in the Opening Brief, Plaintiff's sequestration theory has no basis in the contract itself, conflicts with various key contractual provisions, and ignores the frequent disparities between the authorization amount and the amount that ultimately may be paid. (Open. Br. at 11-14.) Though she does not allege it in the Complaint, Plaintiff now cites the debit holds provision in the EFT Agreement (EFT Agreement § 3(D)) as the source of Capital One's alleged promise to sequester funds over the life of the transaction. (Opp. at 7.) But that provision says no such thing.

-5-

sf-3704189

Plaintiff misconstrues the purpose of a debit hold.[4]  In light of Capital One's promise to process credits before debits at the end of each business day, a hold is placed to ensure a customer does not spend too much over his or her account balance before the funds are posted against the account.  This provision notifies customers that holds "affect the availability of funds from your designated account for other transactions."  (EFT Agreement § 3(D).)  Because customers are in a unique position to know what transactions they have entered into, they "agree not to withdraw, write checks or make point of sale purchases against funds that are needed to pay ATM/Debit Card transactions that have not yet posted against your account."  (*Id.*)

If funds were really sequestered for particular transactions and debited immediately from customer accounts, as Plaintiff claims, there would be no need for this provision in the contract.  *Shaw Grp. Inc.*, 322 F.3d at 121 (A "contract should be construed so as to give full meaning and effect to all of its provisions.") (citation omitted).  Indeed, it would make no sense to require customers to agree not to spend funds that they have no ability to spend (since they have already been sequestered and immediately debited from their accounts).

Plaintiff claims this provision constitutes "mere advice" to customers not to enter into subsequent transactions after funds are held for earlier debit transactions because doing so can result in overdraft fees on those subsequent transactions.  (Opp. at 15-16.)  But that provision is not so limited nor is it precatory.  Plaintiff does not dispute that her "subsequent transactions" caused her account to fall into a negative balance before her APPSN transactions had posted to her account.  Under the plain terms of the agreement, she expressly promised not to enter into

---

[4] Plaintiff's citation to the Federal Reserve Board commentary on debit holds is unavailing.  (Opp. at 2.)  It does not change the plain terms of the contract.  Moreover, the Board made those comments in the context of a proposal to prohibit overdraft fees on certain transactions subject to debit holds.  74 Fed. Reg. 5498, 5546-47 (Jan. 29, 2009).  Notably, the Board never adopted that proposal, opting instead to address debit hold issues in a separate proposal under the Electronic Funds Transfer Act and Regulation E.  74 Fed. Reg. 5212, 5228 (Jan. 29, 2009).  Ultimately, the Board also declined to adopt that separate proposal due to the "significant operational issues" expressed by the banking industry.  74 Fed. Reg. 59033, 59049-50 (Nov. 17. 2009).  Thus, the mechanics of debit holds are not as simple as Plaintiff would have this Court believe.

those subsequent transactions if she did not have the funds to pay the APPSN transactions that had "not yet posted against [her] account." (EFT Agreement § 3(D).) She cannot now complain about the overdraft fees that she incurred as a direct result of her violation of that promise. *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011) ("performance by the plaintiff" is a necessary element of a breach of contract claim).[5]

### B. The Implied Covenant Claim Cannot Alter the Terms of the Contract.

Plaintiff's implied covenant claim should also be dismissed because it is based on the same conduct underlying her defective breach of contract claim—that assessing overdraft fees on APPSN transactions violates the Account Agreements because Capital One is allegedly required to make overdraft determinations at authorization. (Open. Br. at 15-16; Opp. at 17-21.)

Plaintiff again attempts to reframe her arguments in terms of Capital One's discretion under the contract (Opp. at 17-21), but whether she alleges a direct breach of a promise in the contract or an abuse of contractual discretion, Plaintiff cannot use her implied covenant claim to rewrite the parties' contract. *See Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 198-99 (2d Cir. 2005) ("the implied covenant can only impose an obligation *consistent* with other mutually agreed upon terms in the contract") (emphasis added); *Spread Enters., Inc. v. First Data Merch.*

---

[5] Plaintiff's citation of Judge Edward Smith's order denying a motion to dismiss in *Bodnar v. Bank of America, N.A.*, No. 5:14-cv-03224-EGS (E.D. Pa.) is disingenuous. (Opp. at 16-17.) Not only did the *Bodnar* action involve a different and irrelevant contract, but, as Plaintiff's counsel well knows, having represented the named plaintiff in that case, Judge Smith never construed the applicable account agreements. Bodnar argued in opposition to Bank of America's motion to dismiss that Judge Smith could not consider Bank of America's disclosure regarding debit holds because, she contended, it was not attached to the Complaint nor incorporated by reference into the Deposit Agreement governing Bodnar's account. (*See Bodnar*, Pl.'s Opp. to MTD, ECF No. 22 at 6-7.) Judge Smith denied the motion to dismiss with **no** analysis, stating only that he was "constrained to find" that the allegations were sufficient to state a claim. (Opp., Ex. 1.)

Judge Smith later clarified, during an August 14, 2015 conference held on Bodnar's proposed motion for leave to amend, that he had not considered the agreements governing Bodnar's account on the earlier motion to dismiss because they were not attached to the original complaint in their entirety. Bank of America therefore consented to Bodnar's proposed amendment on the condition that all of the account agreements—including the disclosure on debit holds—be attached to the amended complaint. Bank of America then moved to dismiss the amended complaint based on the complete set of account agreements. (*See Bodnar*, Mem. of Law In Supp. of Def.'s MTD, ECF No. 53 at 2-3 n.2.) Bodnar then settled her claims on a classwide basis before her opposition was due. (*See Bodnar*, ECF No. 62.)

*Servs. Corp.*, No. 11-CV-4743(ADS)(ETB), 2012 WL 3679319, at *4 (E.D.N.Y. Aug. 22, 2012).

But, despite protestations to the contrary, that is exactly what Plaintiff is trying to do. As shown in the Opening Brief and above, Capital One made overdraft determinations and charged overdraft fees at the time it unambiguously said it would—at posting, after the transactions she initiated were "presented for payment" against her account and Plaintiff had insufficient funds in her account to cover her transactions. (*See* Deposit Agreement at 3, Overdrafts; Open. Br. at 7-15.) Plaintiff's authorization theory is nothing more than a prohibited attempt to impose new, inconsistent obligations that are not included in the Account Agreements. *See Broder*, 418 F.3d at 198-99; *Mark Patterson, Inc. v. Bowie*, 654 N.Y.S.2d 769, 771 (App. Div. 1st Dep't 1997) (implied covenant cannot be construed to conflict with express contract provision).

Plaintiff's attempts to analogize her allegations to those in *Claridge v. North American Power & Gas, LLC* are unavailing. The court there found that the contract contained confusing and ambiguous language regarding the method for calculating the price of electricity and denied the defendant's motion to dismiss. No. 15-cv-1261 (PKC), 2015 WL 5155934, at *4-6 (S.D.N.Y. Sept. 2, 2015). Unlike here, however, the plaintiff's interpretation of the language did not conflict with the contract's express terms. *See id.* Because the Account Agreements clearly disclose Capital One's method for calculating overdrafts, this claim should be dismissed.

### C. Plaintiff's Unjust Enrichment Claim Fails as a Matter of Law.

Plaintiff's sole defense of her unjust enrichment claim is that she is allowed to plead it in the alternative to her breach of contract claim. (Opp. at 24.) She is wrong. It is well-established that a plaintiff cannot state an unjust enrichment claim when there is a "valid, enforceable" contract that governs the subject matter of the dispute, even when pled in the alternative. *See Spread Enters., Inc.*, 2012 WL 3679319, at *5-6; (Open. Br. at 16). Plaintiff does not contest the

-8-

validity or enforceability of the contract, but baldly asserts her claim survives because the Court could find that the Account Agreements do not "cover the relevant subject matter." (Opp. at 24.) Again, Plaintiff is wrong. It is beyond dispute that the Account Agreements govern the parties' relationship, including the circumstances under which Capital One may assess overdraft fees. As a result, Plaintiff's unjust enrichment claim fails as a matter of law.

### D. The Conversion Claim Is Duplicative of the Contract Claim.

Plaintiff does not dispute that her conversion claim is substantively identical to her breach of contract claim. (Opp. at 25.) That alone requires dismissal of her claim as duplicative. *See, e.g.*, *AD Rendon Commc'ns, Inc. v. Lumina Americas, Inc.*, No. 04-CV-8832 (KMK), 2007 WL 2962591, at *5 (S.D.N.Y. Oct. 10, 2007); (Open. Br. at 17) (citing cases). The mere potential availability of punitive damages does not change that fact, as Plaintiff suggests. (Opp. at 25.) Indeed, she has it backward—punitive damages are not considered unless a plaintiff *first* establishes a non-duplicative tort independent of breach of contract, which Plaintiff fails to do.[6]

Further, as shown in the Opening Brief (Open. Br. at 18), Plaintiff's conversion claim also fails because the funds in her bank account "are not sufficiently specific and identifiable, in relation to the bank's other funds, to support such a claim."[7]

### E. Plaintiff Fails to State a Claim under General Business Law § 349.

Plaintiff's Opposition makes clear that her § 349 claim is based on the same allegations that underlie her contract claims, *i.e.*, that overdrafts must be determined at the time of authorization and that overdraft fees on APPSN transactions violate the "account disclosures" in

---

[6] *See, e.g.*, *AD Rendon Commc'ns, Inc.*, 2007 WL 2962591, at *8 (dismissing conversion claim as duplicative of breach of contract claim, which required dismissal of the plaintiff's punitive damages request); *Speedfit LLC v. Chapco Inc.*, No. 15-CV-1323 (JMA) (SIL), 2016 WL 5793738, at *9-10 (E.D.N.Y. June 29, 2016), *report & recommendation adopted*, 2016 WL 5678812 (E.D.N.Y. Sept. 30, 2016) (same).

[7] *Fundacion Museo de Arte Contemporaneo de Caracas v. CBI–TDB Union Bancaire Privee,* 160 F.3d 146, 148 (2d Cir. 1998) (per curiam); *Acevado v. Citibank, N.A.*, No. 10 Civ. 8030 (PGG), 2012 WL 996902, at *11-12 (S.D.N.Y. Mar. 23, 2012) (collecting cases).

the parties' contract.  (Opp. at 22-24.)  This claim fails for the same reasons as the contract claims.  Plaintiff again relies on *Claridge* in support of this claim, but as discussed above, that case is inapposite because the Account Agreements are not ambiguous.  (Opp. at 23.)  On the contrary, Capital One charged overdraft fees in precisely the manner it said it would in the Account Agreements.  (Open. Br. at 7-15.)  As a result, this case more closely resembles the *Mendez* case (Open. Br. at 19), where the § 349 claim was dismissed because the defendant complied with the parties' contract and thus did not engage in "materially misleading" conduct.  *See Mendez v. Bank of Am. Home Loans Servicing, LP*, 840 F. Supp. 2d 639, 659 (E.D.N.Y. 2012); *see also In re Cablevision Consumer Litig.*, 864 F. Supp. 2d 258, 266 (E.D.N.Y. 2012) (dismissing § 349 claim where alleged misleading conduct was belied by terms of the parties' agreement).  Because the same is true here, this claim should be dismissed.

Further, Plaintiff concedes that she has not stated a claim based on Capital One's alleged failure to disclose its practice of charging overdraft fees on APPSN transactions.  (Opp. at 23 n.19.)  She insists that her allegations are limited to "affirmative misrepresentations," which is inconsistent with her Complaint.  (*See* Compl. ¶ 136 (alleging Capital One "misrepresent[ed] and fail[ed] to disclose its policy and practice of charging overdraft fees" on APPSN transactions).  Regardless, federal banking regulations preempt *any* attempt by Plaintiff to require Capital One, a national bank, to make particular disclosures or act in contravention of the disclosures it makes.[8]  This applies equally to her remaining claims, including her implied covenant claim.

## II.     CONCLUSION

For the reasons stated above and in the Opening Brief, Capital One respectfully requests that the Court dismiss each of Plaintiff's claims in their entirety and with prejudice.

---

[8] *See, e.g.*, *Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 726 (9th Cir. 2012) ("The requirement to make particular disclosures falls squarely within the purview of federal banking regulation and is expressly preempted."); *Rose v. Chase Bank USA, N.A.*, 513 F.3d 1032, 1037-38 (9th Cir. 2008).

| | |
|---|---|
| Dated: San Francisco, California<br>November 2, 2016 | MORRISON & FOERSTER LLP<br><br>By:   /s/ James R. McGuire<br><br>James R. McGuire (*pro hac vice*)<br>Grant C. Schrader (*pro hac vice*)<br>425 Market Street<br>San Francisco, California<br>Telephone: (415) 268-7000<br>jmcguire@mofo.com<br>gschrader@mofo.com<br><br>Jessica L. Kaufman<br>250 West 55th Street<br>New York, New York 10019<br>Telephone: (212) 468-8000<br>jkaufman@mofo.com<br><br>*Attorneys for Defendant Capital One, N.A.* |