UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
TAWANNA M. ROBERTS, on behalf of herself :
and all others similarly situated, :
                                  Plaintiff, :
:
              -against- :
:
CAPITAL ONE, N.A., :
                               Defendant. :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: May 4, 2017

16 Civ. 4841 (LGS)

OPINION AND ORDER

LORNA G. SCHOFIELD, District Judge:

This putative class action arises from Defendant Capital One, N.A.'s ("Capital One") allegedly improper assessment of overdraft fees. Plaintiff Tawanna M. Roberts asserts claims against Capital One for breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, unjust enrichment and violation of New York General Business Law § 349. Capital One moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons below, the motion is granted.

**I.     BACKGROUND**

The facts that follow are drawn from the Complaint and documents that are integral to the Complaint. They are construed in the light most favorable to Plaintiff, as the non-moving party. *See Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016).

    **A. The Agreement**

Plaintiff has a Capital One checking account and a corresponding debit card that draws on that account. A debit card enables a customer to make purchases, payments, withdrawals, and other electronic debit transactions.

1

As relevant here, the parties' contract consists of Capital One's Rules Governing Deposit Accounts (the "Deposit Agreement"), and the Electronic Funds Transfer Agreement (the "EFT Agreement") (together, the "Account Agreements"). The Deposit Agreement is appended as an exhibit to the Complaint and provides in part:

> Withdrawals. . . . If you provide your ATM card or ATM/Debit card and personal access code to a third party, you have authorized the third party to withdraw funds from your account at an ATM machine or point of sale terminal. [Dep. Agmt. at 1.]
>
> . . .
>
> Processing Order of Credits and Debits. We process credits and debits to your account in a specific order. We refer to this as the processing order and it is how we decide what posts first and last each day. . . . Our processing order might not be the same as the order you make transactions and could result in overdraft transactions. You can avoid overdrafts on your account by always making sure you have enough available funds in your account to cover your transactions. . . . Debits . . . decrease your balance. We will process credits and debits as follows:
> - . . .
> - After we have processed any credits to your account, we will process debits. First, we group any similar types of debits . . . together into separate categories. Then, we process those debits within each category in a specific order such as by dollar amount. For some debits, we will know the time you made the transaction. This allows us to post the debit closer to the time you actually made the debit transaction instead of by dollar amount. [The Deposit Agreement also includes a table that discloses the processing order for different types of transaction, and examples of each.]
>
> . . .
>
> Overdrafts. We may in our sole discretion, and without obligation, elect to pay checks and other items drawn on your deposit account or to permit automatic bill payments and withdrawals against your account for an amount in excess of your available balance (an "Overdraft"). . . . You have no right to overdraw your account at any time, for any reason, and our decision to pay Overdraft items is solely within our discretion. You understand and agree that if we elect to pay Overdraft items or to permit an Overdraft to exist in your account, you have no right to defer payment, and you must deposit additional funds into your account promptly in an amount sufficient to cover the Overdraft and to pay us Overdraft fees for each Overdraft item in accordance with our current Schedule of Fees and Charges. . . . You can avoid overdrafts on your account by always making sure

that you have sufficient available funds in your account to cover all of the debits presented for payment against your account. [Dep. Agmt. at 3.]

The EFT Agreement in § 3(D) provides:

If we authorize the transaction, the funds will be debited from your primary checking account immediately or a hold may be placed on your account for up to several days after the purchase transaction has occurred, depending upon the promptness with which the merchant processes your transaction.

Some purchases may result in a longer hold. Sometimes the preauthorization requests may be in amounts different from the total amount of the transaction. . . . You agree not to withdraw, write checks or make point of sale purchases against funds that are needed to pay ATM/Debit Card transactions that have not yet posted against your account.

### B. The Allegations in the Complaint

The Complaint alleges that between June 4, 2015, and September 8, 2015, Plaintiff incurred overdraft fees for debit card transactions (the "Overdraft Transactions"), despite having a positive balance to cover them at the time of the transaction. The fee was assessed when an Overdraft Transaction ultimately settled, if the account at that time had an insufficient available balance because of intervening transactions between the transaction and the settlement. The Complaint alleges that these overdraft fees violate the parties' agreement, which authorizes Defendant to charge an overdraft fee only if, at the time a merchant requests from Defendant purchase authorization, she has insufficient funds in her account.

## II. LEGAL STANDARD

"On a motion under Rule 12(b)(6) to dismiss a complaint for failure to state a claim, the only facts to be considered are those alleged in the complaint, and the court must accept them, drawing all reasonable inferences in the plaintiff's favor." *Doe*, 831 F.3d at 46. "In determining the adequacy of the complaint, the court [also] may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents

upon which the complaint relies and which are integral to the complaint." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005); *see also Beauvoir v. Israel*, 794 F.3d 244, 248 n.4 (2d Cir. 2015). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III. DISCUSSION

As explained below, Capital One's motion to dismiss is granted as to each of Plaintiff's claims, Counts I through V.

### A. Breach of Contract -- Count I

The Complaint relies on an untenable interpretation of the parties' agreement, and thus fails plausibly to allege a breach of contract. Count I is dismissed.

Both the Deposit Agreement and the EFT Agreement are considered on this motion, as they comprise the parties' contract and are integral to the breach of contract claim. The Deposit Agreement also is attached to the Complaint. *See Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) ("Where, as in this case, certain contracts are integral to the complaint, we also consider those documents in deciding the merits of the motion."). The court is "not obliged to accept the allegations of the complaint as to how to construe [the contract], but at this procedural stage," ambiguities in the contract are to be resolved in the plaintiff's favor. *Subaru Distribs. Corp.*, 425 F.3d at 122. "At the motion to dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous," which is "a question of law to be resolved by the courts." *Orchard Hill Master*

4

*Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016) (citation omitted). Under New York law, an ambiguous contract is one whose "terms could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Id.* at 156–57 (internal quotation marks omitted). "The words and phrases in a contract should be given their plain meaning . . . ." *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co.*, 773 F.3d 110, 114 (2d Cir. 2014) (citation omitted).

The Complaint's construction of the Account Agreements is unreasonable as a matter of law. The Complaint alleges that the Account Agreements foreclose Defendant from charging overdraft fees if a customer's available balance was positive at the time a merchant requested purchase authorization, but negative at the time the merchant was paid. The plain meaning of the Account Agreements does not support this interpretation. First, the Account Agreements do not contain a provision requiring Defendant to make overdraft determinations on the basis of a customer's available balance at the time of purchase authorization.

Second, the occurrence of an overdraft is the triggering event for assessing overdraft fees, and the Account Agreements expressly provide that an overdraft occurs when Defendant *pays* -- and not merely authorizes -- a transaction in an amount that exceeds a customer's available balance. "We may . . . elect to *pay* . . . or to permit . . . withdrawals against your account for an amount in excess of your available balance (an 'Overdraft')." Dep. Agmt. at 3 (emphasis added). "An Overdraft occurs when you do not have enough money in your designated account to cover a transaction, but we *pay* it anyway." EFT Agmt. § 5 (emphasis added). Under the Account Agreements, overdraft fees are incurred when Defendant *pays* an overdraft. "[I]f we

5

elect to *pay* Overdraft items . . . you must deposit additional funds . . . sufficient to . . . pay us Overdraft fees for each Overdraft item . . . ." Dep. Agmt. at 3 (emphasis added); *accord* EFT Agmt. § 5. Overdrafts are avoided by ensuring sufficient funds at the time of payment. The Deposit Agreement instructs that a customer can avoid overdrafts by ensuring there are "sufficient available funds in your account to cover all of the debits presented for *payment* against your account." Dep. Agmt. at 3 (emphasis added). The Account Agreements unambiguously and overwhelmingly support Defendant's construction.

Plaintiff argues that several provisions in the Account Agreements require Defendant to debit transactions immediately, when the customer's available balance is positive, rather than later, when it is negative. These arguments misconstrue the Account Agreements. The cited provision in the EFT Agreement that supposedly requires an immediate debit is followed by the remainder of the sentence, which also permits Defendant to defer payment for several days and place a hold on the account. EFT Agmt. at § 3(D). The provision that deals with who is authorized to withdraw funds at an ATM or point of sale terminal is inapposite. Dep. Agmt. at 2. The provision that allegedly promises that debit transactions will be handled chronologically, if the requisite information is available, follows an explicit warning that, "[o]ur processing order might not be the same as the order you make transactions and could result in overdraft transactions." Dep. Agmt. at 2–3. Plaintiff's argument also contradicts the EFT Agreement, which states, "You agree not to withdraw, write checks or make point of sale purchases against funds that are needed to pay ATM/Debit Card transactions that have not yet posted against your account." EFT Agmt. § 3(D). This language makes clear that authorization and payment are

6

distinct occurrences, and that a customer's account balance may become insufficient between the time a transaction occurs and the time Defendant pays the merchant.

Lastly, Plaintiff's reliance on *Bodnar v. Bank of Am., N.A.*, No. 14 Civ. 3224 (E.D. Pa. Oct. 15, 2014), which implicated a different set of account agreements, is misplaced. There, the Court denied Bank of America's motion to dismiss presumably because it had not considered the relevant account agreements, some of which were neither attached to the Complaint, nor incorporated by reference in the Deposit Agreement governing Plaintiff's bank account. *Id.* In its Order, which contained no substantive analysis, the Court explained that it was "constrained to find" that the Complaint's allegations were sufficient to state a claim. *Id.*

Because the Account Agreements are unambiguous as a matter of law, and the Complaint fails to state a claim for breach of contract, this claim is dismissed.

### B. Breach of Implied Covenant of Good Faith and Fair Dealing -- Count II

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is dismissed as duplicative of Plaintiff's claim for breach of contract. "Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013) (quoting *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002)); *accord 511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 773 N.E.2d 496, 500–01 (N.Y. 2002). "[W]hen a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." *Cruz*, 720 F.3d at 125. Plaintiff's claim for breach of the implied covenant and for breach of contract "clearly rest on the same alleged deceptive practices." *Id.*

7

To the extent that Plaintiff's implied covenant and breach of contract claims are not duplicative, the implied covenant cannot be employed to impose on Defendant obligations that are inconsistent with or contrary to the Account Agreements. *See 1357 Tarrytown Road Auto, LLC v. Granite Properties, LLC*, 37 N.Y.S.3d 341, 343 (2nd Dep't 2016) ("[N]o obligation may be implied that would be inconsistent with other terms of the contractual relationship."). "Here, a finding that the defendants breached the covenant . . . would necessarily contradict explicit and unambiguous terms of the [parties'] agreements and create additional obligations not contained in them." *Id*. Accordingly, Plaintiff's claim for breach of the implied covenant is dismissed as redundant.

### C. Conversion -- Count III

Plaintiff's conversion claim is dismissed as well. "A conversion claim cannot succeed . . . where the party fails to allege[] a wrong that is distinct from any contractual obligations." *Gate Techs., LLC v. Delphix Capital Mkts., LLC*, No. 12 Civ. 7075, 2013 WL 3455484, at *4 (S.D.N.Y. July 9, 2013) (internal quotation marks omitted); *accord Karmilowicz v Hartford Fin. Servs. Grp., Inc.*, 494 Fed App'x 153, 158 (2d Cir. 2012) (summary order). The Complaint merely "repeats paragraphs 1 through 110," which specifically pertain to Plaintiff's breach of contract claim, and rephrases those allegations in terms of the elements of a conversion claim. The Complaint also fails to plead any conversion damages distinct from contractual damages. *See Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 204 (S.D.N.Y. 2011) ("[I]f Plaintiff[s] were to recover under both claims, [they] would in effect be paid twice.") (citation omitted). Because the Complaint "fail[s] to set forth allegations which would constitute a wrong separate and distinct from an alleged breach of contract which could give rise to independent tort liability," Plaintiff's conversion claim is dismissed. *E. End Labs.,*

*Inc. v. Sawaya*, 914 N.Y.S.2d 250, 251–52 (2nd Dep't 2010) (holding that the lower court erred in denying a motion to dismiss a conversion claim that was predicated entirely on Defendants' alleged breach of contract); *see also Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 456 (S.D.N.Y. 2014) ("Whereas courts in this Circuit allow for alternative pleading of unjust enrichment and contract claims, conversion claims are routinely dismissed on Rule 12(b)(6) motions where duplicative of breach of contract claims.") (collecting cases).

### D. Unjust Enrichment -- Count IV

Plaintiff's claim for unjust enrichment also is dismissed. "The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of any agreement." *Goldman v. Metro. Life Ins. Co.*, 841 N.E.2d 742, 746 (N.Y. 2005). "The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of N.J., Inc.*, 448 F.3d 573, 587 (2d Cir. 2006) (quoting *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987)). Plaintiff's unjust enrichment claim is pleaded in the alternative, and arises out of precisely the same conduct as that underlying Plaintiff's breach of contract claim. Only "where 'a bona fide dispute exists as to the existence of the contract, the plaintiff may proceed on both breach of contract and quasi-contract theories.'" *Beth Israel Med. Ctr.,* 448 F.3d at 587 (quoting *Nakamura v. Fujii,* 677 N.Y.S.2d 113, 116 (1st Dep't 1998)). As there is a valid written agreement between the parties that governs their dispute, Plaintiff's claim for unjust enrichment is dismissed.

### E. New York General Business Law § 349 -- Count V

Plaintiff's claim under New York's consumer protection law -- New York General Business Law § 349 -- fails as a matter of law and also is dismissed. To plead a claim under § 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *City of New York v. Smokes-Spirits.Com, Inc.*, 911 N.E.2d 834, 838 (N.Y. 2009). Materially misleading conduct -- the prong at the center of the parties' dispute -- is that which is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995). There can be no claim for deceptive acts or practices under § 349 when the alleged deception was fully disclosed. *Beth Israel Med. Ctr. v Verizon Bus. Network Services, Inc.*, No. 11 Civ. 4509, 2013 WL 1385210, at *7 (S.D.N.Y. Mar. 18, 2013).

Defendant's conduct is not materially misleading under § 349. According to the Complaint, Capital One improperly charged overdraft fees when a customer's available balance was sufficient at the time of purchase authorization, and insufficient at the time of payment. However, the Deposit Agreement plainly states that "processing order might not be the same as the order you make transactions and could result in overdraft transactions." Dep. Agmt. at 2. The order of processing credits and debits is disclosed as well. Dep. Agmt. at 3. The Deposit Agreement further states that Defendant retains "sole discretion" to pay an overdraft, and that Defendant will charge a specified fee. Dep. Agmt. at 3. The customer "agree[s] not to withdraw, write checks or make point of sale purchases against funds that are needed to pay ATM/Debit Card transactions that have not yet posted against [the] account." EFT Agmt. § 3(D). As Defendant's conduct is expressly anticipated by and disclosed in the parties'

contract, the Complaint fails to allege facts to state a claim under § 349.  Defendant's motion to dismiss is granted as to Count V.

**IV.    CONCLUSION**

For the foregoing reasons, Defendant Capital One, N.A.'s motion to dismiss is GRANTED.  Defendant's motion for oral argument is DENIED as moot.  The Clerk of Court is directed to close the motion at Docket No. 18 and close this case.

SO ORDERED.

Dated: May 4, 2017
      New York, New York

LORNA G. SCHOFIELD<br>
UNITED STATES DISTRICT JUDGE