**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TAWANNA M. ROBERTS, on behalf of herself and all others similarly situated,<br><br>                          Plaintiff,<br><br>         - against -<br><br><br>CAPITAL ONE, N.A.,<br><br>                        Defendant. | No. 16 Civ. 4841 (LGS) |

## DEFENDANT CAPITAL ONE, N.A.'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................... 1

COUNTERSTATEMENT OF FACTS ..................................................................... 2

ARGUMENT ........................................................................................................... 5

I.    PLAINTIFF IS ESTOPPED FROM (AGAIN) CHANGING HER POSITION ON THE MEANING OF THE CONTRACT TO AVOID SUMMARY JUDGMENT. ........ 5

II.    THE COURT CAN AND SHOULD USE EXTRINSIC EVIDENCE TO INTERPRET THE CONTRACT .......................................................................... 8

     A.    *Contra Proferentem* is a Last Resort. ................................................... 9

     B.    Plaintiff Does Not Counter the Extrinsic Evidence Showing the Account Agreements Provide for Assessment of Overdraft Fees when Transactions are Paid. ..................................................................................... 10

         1.    The Parties' Course of Conduct Confirms that Overdraft Determinations Are Made at Payment. ....................................... 10

         2.    Widespread Industry Practice is to Assess Overdraft Fees at Payment. .......................................................................... 13

     C.    Capital One is Also Entitled to Summary Judgment Because Its Interpretation is Most Favorable to Plaintiff. ........................................ 15

III.    PLAINTIFF FAILS TO ESTABLISH STANDING AND HER CLAIMS FAIL AS A MATTER OF LAW BECAUSE SHE CANNOT ESTABLISH DAMAGES. ....................................................................................................... 16

     A.    None of Plaintiff's Cases Support Standing Where Plaintiff Benefited From the *Exact* Practice She Says Harmed Her. ............................... 16

     B.    Even If Plaintiff Has Standing, All of Her Claims Fail Because She Has Not Established Damages. ................................................................... 17

IV.    PLAINTIFF'S BREACH OF CONTRACT FAILS BECAUSE SHE DID NOT PERFORM UNDER THE ACCOUNT AGREEMENTS. ............................... 19

V.    PLAINTIFF'S SECTION 349 CLAIM FAILS AS A MATTER OF LAW. ............ 22

     A.    Plaintiff Cannot Show that Any Alleged Misrepresentation in the Account Agreements Caused Her Any Harm Because She Never Read Them. ............... 23

     B.    Plaintiff Was Not Misled by Capital One's Mobile Application. ....................... 24

     C.    Plaintiff's June 2015 Call with Capital One Precludes Any Subsequent Finding of Harm—Including Based on Communications at Account Opening or Subsequent Calls. ................................................................ 24

CONCLUSION ..................................................................................................... 25

ny-1527826

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*67 Wall St. Co. v. Franklin Nat'l Bank*,
37 N.Y.2d 245, 371 N.Y.S.2d 915 (1975) .................................................................10

*Albany Sav. Bank, FSB v. Halpin*,
117 F.3d 669 (2d Cir. 1997) ......................................................................................9

*Am. Home Prods. Corp. v. Liberty Mut. Ins. Co.*,
565 F. Supp. 1485 (S.D.N.Y. 1983) ...........................................................................9

*Anthony v. GE Capital Retail Bank*,
321 F. Supp. 3d 469 (S.D.N.Y. 2017) .......................................................................3

*Aristocrat Leisure Ltd v. Deutsche Bank Trust Co. Ams.*,
727 F. Supp. 2d 256 (S.D.N.Y. 2010) .......................................................................18

*Axiom Inv. Advisors, LLC v. Deutsche Bank AG*,
No. 15 Civ. 9945 (LGS), 2018 WL 4253152 (S.D.N.Y. Sept. 6, 2018) ..............10, 14, 15

*Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp.*,
963 F. Supp. 1342 (S.D.N.Y. 1997) ..........................................................................24

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ...............................................................................................17

*D'Amato v. Five Star Reporting, Inc.*,
80 F. Supp. 3d 395 (E.D.N.Y. 2015) .........................................................................9

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) ................................................................................16, 18

*Deutsche Bank AG v. AMBAC Credit Prod., LLC*,
No. 04 CIV. 5594 (DLC), 2006 WL 1867497 (S.D.N.Y. July 6, 2006) .......................14

*Douyon v. N.Y. Med. Health Care, P.C.*,
894 F. Supp. 2d 245 (E.D.N.Y. 2012), *order amended on recons.*,
No. CV 10-3983(AKT), 2013 WL 5423800 (E.D.N.Y. Sept. 25, 2013) .......................24

*EMI Music Mktg. v. Avatar Records, Inc.*,
317 F. Supp. 2d 412 (S.D.N.Y. 2004) .......................................................................17

*Faulkner v. Nat'l Geographic Soc'y*,
452 F. Supp. 2d 369 (S.D.N.Y. 2006), *aff'd sub nom.*
*Ward v. Nat'l Geographic Soc'y*, 284 F. App'x 822 (2d Cir. 2008) ...................................11

*Fed. Ins. Co. v. Great White Fleet (US) LTD.*,
No. 07 Civ. 2415 (GEL), 2008 U.S. Dist. LEXIS 58461
(S.D.N.Y. Aug. 1, 2008) ...................................................................................................9

*Harte v. Ocwen Fin. Corp.*,
No. 13-cv-5410, 2018 U.S. Dist. LEXIS 21843 (E.D.N.Y. Feb. 8, 2018) .......................23, 24

*Halo Optical Prods., Inc. v. Liberty Sport, Inc.*,
No. 614-CV-00282, 2017 WL 1082443 (N.D.N.Y. Mar. 22, 2017) .....................................11

*Intellivision v. Microsoft Corp.*,
484 F. App'x 616 (2d Cir. 2012) .......................................................................................6

*Jacobson v. Sassower*,
66 N.Y.2d 991, 489 N.E.2d 1283, 499 N.Y.S.2d 381 (1985).............................................10

*Jobim v. Songs of Universal, Inc.*,
732 F. Supp. 2d 407 (S.D.N.Y. 2010)...........................................................................12, 13

*L.A. Haven Hospice, Inc. v. Sebelius*,
638 F.3d 644 (9th Cir. 2011) ...........................................................................................18

*Man-Hung Lee v. Hartsdale Canine Cemetery, Inc.*,
28 Misc. 3d 234, 899 N.Y.S.2d 823 (N.Y. City Ct. 2010) ....................................................15

*McCarthy v. Am. Int'l Grp.*,
283 F.3d 121 (2d Cir. 2002)...............................................................................................9

*Medinol Ltd. v. Boston Sci. Corp.*,
346 F. Supp. 2d 575 (S.D.N.Y 2004).................................................................................22

*NCAA v. Governor of N.J.*,
730 F.3d 208 (3d Cir. 2013).........................................................................................17, 18

*Oakgrove Constr., Inc. Genesse Valley Nurseries, Inc.*,
10 Misc. 3d 1053(A), 809 N.Y.S.2d 482 (N.Y. Sup. Ct. 2005) .............................................10

*Preira v. Bancorp Bank*,
885 F. Supp. 2d 672 (S.D.N.Y. 2012).................................................................................25

*Record Club of Am., Inc. v. United Artists Records, Inc.*,
890 F.2d 1264 (2d Cir. 1989)..............................................................................................9

*Record Club of Am., Inc. v. United Artists Records, Inc.*,
    No. 72 Civ. 5234 (WCC), 1991 WL 73838 (S.D.N.Y. Apr. 29, 1991) .............................9, 16

*Relativity Travel, Ltd. v. JP Morgan Chase Bank*,
    123 Misc. 3d 1221(A), 2006 WL 2918081 (N.Y. Sup. Ct. Feb. 14, 2006) ...........................23

*Roberts v. Capital One, N.A.*,
    719 F. App'x 33 (2d Cir. 2017) ................................................................................8, 10, 15

*Samuels v. Thomas Crimmins Contracting Co.*,
    No. 91 CIV. 6657 (SS), 1993 WL 36168 (S.D.N.Y. Feb. 9, 1993).........................................15

*Sec. Plans, Inc. v. CUNA Mut. Ins. Soc.*,
    769 F.3d 807 (2d Cir. 2014)...........................................................................................11

*Zellner v. Summerlin*,
    494 F.3d 344 (2d Cir. 2007).........................................................................................3, 25

**Other Authorities**

13A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*
    § 3531.4 (3d ed. 2018 update) .......................................................................................16

## PRELIMINARY STATEMENT

The logic of Plaintiff's Cross-Motion and Opposition is simple:  The Second Circuit found the Account Agreements to be ambiguous; ambiguous contracts are construed against the drafter; Plaintiff is not the drafter, therefore Plaintiff wins.

But Plaintiff's logic is not just simple; it is overly simplistic and wrong.  It is black-letter law that *contra proferentem* is a principle of last resort, considered only if extrinsic evidence does not clarify the contract's intended meaning.  Here, *contra proferentem* is inapplicable because the undisputed facts following discovery—including the parties' conduct, recorded interactions, and industry practice—overwhelmingly show that the parties intended overdraft fees to be assessed at payment, not authorization.  Indeed, Plaintiff actually admits that it is "implausible" that Capital One would assess overdraft fees at authorization.

Capital One is also entitled to summary judgment because Capital One's interpretation of the Account Agreements *is* the construction most favorable to Plaintiff, resulting (according to her own expert's analysis) in fewer overdraft fees assessed to her account.  The Second Circuit found the Account Agreements ambiguous because language regarding when overdraft determinations are made was susceptible to two reasonable interpretations:  such determinations would be made either when a transaction that overdrew the account was authorized (Plaintiff's interpretation) or when the transaction was paid into overdraft (Capital One's interpretation). Unable to meaningfully dispute that she would have incurred more fees if overdrafts were determined at authorization, Plaintiff now attempts to argue that the Account Agreements actually say that an overdraft occurs only when a transaction results in a negative balance at *both* authorization *and* payment.  But the Second Circuit's holding nowhere contemplates such a construction as a reasonable reading of the contracts, and there is no support for such a reading in

the Account Agreements themselves.  Plaintiff's construction is not only unreasonable, it is directly contrary to the theory she advanced before the Second Circuit (overdraft determinations occur only at authorization).  As such, judicial estoppel bars Plaintiff from asserting it to avoid summary judgment.

Plaintiff also fails to show she can satisfy the other elements of her breach of contract claim:  her own performance and that she was injured by the challenged practice.  Plaintiff concedes that if *she had not breached her* promise to refrain from spending or withdrawing funds needed to pay for pending debit card and ATM transactions, the challenged overdraft fees would not have been assessed.  Plaintiff also fails to show she was injured in any way—she does not dispute that offsetting benefits exceed her claimed damages or that her expert's analysis shows she benefited under Capital One's interpretation.  Plaintiff's failure to establish injury is fatal to **both** her claims and her standing to assert them.

*Finally,* Plaintiff's unpled theories do not save her section 349 claim:  Recognizing that the only pled basis for her section 349 claim fails because she never read the Account Agreements (so they could not have *caused* her any harm), Plaintiff attempts to add new theories of liability to salvage her claim.  But unpled theories cannot defeat summary judgment.  Even if they are considered, there is no evidence that they *caused* her any harm either.  The evidence demonstrates that Plaintiff knew overdraft fees were assessed when the transactions were paid and that she needed to account for pending transactions before she overdrew her account.

The Court should grant summary judgment in favor of Capital One.

## <u>COUNTERSTATEMENT OF FACTS</u>

Although Plaintiff "responds" to 47 Statements of Material Fact, none of the responses create a genuine issue of material fact.  Instead of offering counter-facts, Plaintiff argues over

materiality, or "disputes" the application of law to facts (instead of the facts themselves).  For the convenience of the Court, Capital One sets forth those material facts that remain undisputed and underlie each argument in support of its motion.

**Plaintiff does not dispute the material facts showing she was not damaged:**  Plaintiff does not dispute that she did not repay Capital One an overdrawn balance of $561.20 (SOF ¶ 89) or that her own expert's analysis shows that Plaintiff would have incurred 259 more overdrafts if Capital One had assessed overdraft fees based on the balance at authorization.  (*Id.* ¶ 87.)

**Capital One assessed overdraft fees based on Plaintiff's balance at payment:** Plaintiff does not dispute that Capital One assessed overdraft fees at payment, not authorization. (SOF ¶ 26.)  Nor does Plaintiff dispute that Capital One removes "memo posts" (posts that hold funds while authorized transactions are pending) when it posts and pays transactions according to its stated posting order based on the customer's ledger balance, *i.e.* it does not sequester memo posted funds to pay for specific transactions.  (*Id.* ¶ 9.)  Further, while Plaintiff argues she did not understand everything the account statements or Capital One representatives were saying, these documents and recordings speak for themselves, show that Capital One has consistently assessed overdraft fess based on the balance at payment, and cannot be controverted by self-serving deposition testimony.  *See Zellner v. Summerlin*, 494 F.3d 344, 371 (2d Cir. 2007) ("Incontrovertible evidence relied on by the moving party, such as a relevant videotape, whose accuracy is unchallenged should be credited by the court[.]"); *Anthony v. GE Capital Retail Bank*, 321 F. Supp. 3d 469, 474 (S.D.N.Y. 2017) ("A party's self-serving uncorroborated and conclusory allegation are not enough to raise a genuine dispute of material fact when documentary evidence clearly indicates the opposite.").

**Plaintiff expected and intended for overdraft fees to be assessed based on her balance when the transaction was paid:**  Plaintiff makes several admissions that confirm that the parties intended to have overdraft fees assessed at settlement, not authorization.  (*Infra* at 10-12, 19.)  She admits that it is "implausible" that Capital One would assess overdraft fees at authorization (Opp. at 32) and that the Bank did not have the capacity to do so (Pl.'s SOAF ¶ 93).  Indeed, she even argues that it would breach the Account Agreements to assess overdraft fees at authorization and that she would have opted out if Capital One had done so.  (Opp. at 31.)  In addition to these admissions, Plaintiff does not refute other conduct that confirms that she intended for overdraft fees to be determined at posting.  She admits that she paid close attention to her balance, that she would check her balance before transacting to avoid overdrafts, and that her expert's analysis shows that she had 259 transactions that authorized negative but later settled into a positive balance.  (SOF ¶¶ 41, 87.)  Plaintiff also cannot refute her pre-litigation recorded admissions that she understood that pending transactions were transactions that had not yet cleared from her account and if she overdrew while transactions were pending she might incur overdraft fees, so she usually waited until her "stuff" has cleared.  (*Id.* ¶ 42.)

**It is widespread industry practice to assess overdraft fees at payment, not authorization:**  It is unclear whether Plaintiff is attempting to "dispute" the Federal Reserve Board's commentary or whether she is arguing it is immaterial, but either challenge fails. Plaintiff conceded before the Second Circuit that industry practice was important to interpreting ambiguous contracts (*infra* at 12-13) and uncontroverted evidence demonstrates that industry practice is to assess overdraft fees at settlement, not authorization.  While Plaintiff purports to "dispute" the Fed's commentary, she does not point to any evidence that would controvert it. (*See* SOF ¶¶ 28-34.)  She does not (and cannot) dispute that the Fed purposely defined the rule

and the model form to reference "payment" instead of "authorization" because "fees are typically charged for the institution's *payment* of the transaction." (SOF ¶ 32.) In fact, even the CFPB guidance Plaintiff contends the Court is "require[d]" to consider points to financial institutions that assess overdraft fees at payment, not authorization. Finally, the "evidence" that Plaintiff submits to show "other banks" assess fees at authorization lacks foundation and is contradicted by Bank testimony, the regulatory record, and other evidence including Plaintiff's counsel's own filings against nearly every large consumer bank alleging the opposite. (*See* Objs.[1]; Reply Decl.,[2] Ex. K at 169:10-19.) Tellingly, Plaintiff's own filings do not and cannot identify even *one* bank that assesses overdraft fees based on the customer's balance at authorization.

**Plaintiff admits she breached the EFT Agreement:** Plaintiff disputes only that her ATM withdrawal *caused* the overdrafts; she does not contest any of the underlying facts: prior to her debit card transactions posting, she went to an ATM and withdrew more money than she had in her account, and pursuant to Capital One's posting order the ATM transaction settled first. (*See, e.g.*, Pl.'s Resp. to SOF ¶ 80.) That she blames Capital One for following her instructions to withdraw the funds does not create a dispute of material fact.

**Plaintiff did not read the Account Agreements:** Plaintiff does not dispute that she did not read, and has never read, the Account Agreements and did not do any research into Capital One's overdraft services before opening her account. (SOF ¶¶ 35, 38, 39.)

## ARGUMENT

I.   **PLAINTIFF IS ESTOPPED FROM (AGAIN) CHANGING HER POSITION ON THE MEANING OF THE CONTRACT TO AVOID SUMMARY JUDGMENT.**

Plaintiff was able to proceed with this action only because she convinced the Second

---

[1] "Objs." refers to Defendant Capital One, N.A.'s Objections to Evidence Submitted in Plaintiff's Response to Defendant Capital One, N.A.'s Statement of Material Undisputed Facts in Support of Its Motion for Summary Judgment and Statement of Additional Facts, dated March 25, 2019.
[2] "Reply Decl." refers to the Declaration of Jessica Kaufman in support of this memorandum of law.

Circuit that Capital One's Account Agreements could reasonably be read to require Capital One

to make *overdraft determinations at authorization*, instead of at settlement.  Now that Plaintiff's

own expert's analysis shows she *benefited* from Capital One's assessment of overdraft fees at

settlement, Plaintiff attempts to change her theory of breach for at least the second time.[3]  She

now argues that in some, *but not all*, cases (or in her case for at least 259 transactions), overdraft

determinations should be made at payment instead of authorization.  But Plaintiff is judicially

estopped from reverting to a hybrid interpretation to argue that she was damaged when the case

was reinstated only because she convinced the Second Circuit that it was a binary question—

were overdraft determinations made at authorization or settlement—and that both were equally

reasonable.  (ECF No. 45 at 3 ("[T]he principal question presented by this matter is whether

Capital One has breached the parties' agreement by assessing overdraft fees when it *settles*

transactions . . . rather than when it *authorizes* transactions[.]").)  "[J]udicial estoppel[] generally

prevents a party from prevailing in one phase of a case on an argument and then relying on a

contradictory argument to prevail in another phase.  *Intellivision v. Microsoft Corp.*, 484 F.

App'x 616, 618-19 (2d Cir. 2012) (citing *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)).

Before the Second Circuit, Plaintiff unequivocally argued:  it was a binary decision,

overdraft fees could either be determined at authorization or settlement, and the Account

Agreements required overdraft fees to be determined at authorization:

- "A bank may charge overdraft fees when a customer's debit card purchase exceeds her
  account balance. In doing so, the bank has an important choice to make.  It may make
  overdraft determinations at the time that the bank agrees to pay for a transaction—*i.e.*, at
  the time of authorization. Or it may make the determination when the transaction is
  actually paid—*i.e.*, at [] settlement."  (Br. for Pl.-Appellant ("BPA") at 1, No. 17-1762
  (2d Cir July 31, 2017), ECF No. 27-1.)

---

[3] The Second Circuit already let Plaintiff change her theory once to preserve her case.  (ECF No. 45 at 3-4.)
Plaintiff should not be able to change her theory of breach every time she files a brief.

- "This appeal turns on whether Capital One's contract unambiguously allows the bank to make overdraft determinations at the time of settlement, ***rather than at the time of authorization***." (*Id.* (emphasis added).)

- "The text of Capital One's contract is clear: the bank can make overdraft determinations at the time it 'elects to pay' a particular debit card transaction.  That point in time—the time at which the bank holds a choice over whether to pay or not—***occurs when the bank first authorizes a particular transaction***, not when the bank ultimately ends up paying it." (*Id.* at 21 (emphasis added).)

- "By its plain terms, Capital One's contract guarantees customers that ***overdrafts will be determined at the time the bank 'elect[s] to pay' a transaction***." (*Id.* at 22 (emphasis added).)

- "It says that an overdraft occurs, not when the bank 'pays' a transaction, but when the bank 'elects to pay' a transaction . . . [g]iving the phrase 'elects to' its normal meaning—'to choose'—the ***time at which the bank 'elects to pay' a debit card transaction is when it authorizes that transaction*** and not when it actually withdraws funds to settle up with the merchant." (*Id.* at 24 (emphasis added).)

- "[T]he contractual language defining 'overdraft' specifically pinpoints the time of authorization—when the bank 'elect[s] to pay' a transaction—as the point at which an overdraft can occur." (*Id.* at 32.)

Plaintiff went further and explicitly stated that she did not "contest Capital One's right to legitimately charge overdraft fees for any transaction that, *at the time the bank elected to pay it*, exceeded her [] available account balance." (BPA at 16 (emphasis added); *see also id.* (describing overdraft fees assessed on transactions where the account balance was insufficient at the time of authorization as "valid[]").)   The Second Circuit accepted Plaintiff's argument that "it is equally reasonable to understand the term 'Overdraft' as referring to Capital One's election to make a payment, ***which would occur at the time of authorization*** . . . or as referring to the payment itself, which would occur at settlement[.]" (ECF No. 45 at 5 (emphasis added.)

Because the Second Circuit's reversal hinged on Plaintiff's argument that the Account Agreements could be reasonably read to require overdraft determinations *at authorization*, Plaintiff cannot avoid summary judgment simply by advocating for a contradictory interpretation

ny-1527826

(at authorization only when it benefits her) now that the record evidence shows that her prior position is unreasonable.  As explained below, the decision to pay an overdraft can only occur at one point in time:  when the transaction settles—*i.e.*, when funds are "drawn" on the customer's account and paid to the merchant.  That is why Plaintiff did *not* incur overdraft fees for the nearly 260 negative-authorized transactions paid after funds had been deposited to cover them.

## II.   THE COURT CAN AND SHOULD USE EXTRINSIC EVIDENCE TO INTERPRET THE CONTRACT.

In an attempt to evade the overwhelming evidence weighing against her contractual theory, Plaintiff argues that she is entitled to summary judgment on her contract claim for just one reason:  because she entered into a uniform contract with Capital One.  This, she argues, means that the Court "must" accept the interpretation she advances, without regard to whether it rewrites the contract, and without review of any evidence.  (Opp. at 11-15.)  Not so.  This Court can—and should—consider extrinsic evidence to determine the parties' intent and resolve the ambiguity in the Deposit Agreement *before* resorting to the doctrine of *contra proferentem*. Indeed, Plaintiff herself advocated for the use of such evidence before the Second Circuit.  (Pl.-Appellant's Reply Br. ("PAR") at 12-13, No. 17-1762, (2d Cir Oct. 3, 2017), ECF No. 79.)

Further, Plaintiff cannot use *contra proferentem* to have the Court reach an interpretation not supported by the language in the Account Agreements.  The Second Circuit was clear, the ambiguity to be resolved is whether the Account Agreements require Capital One to make overdraft determinations at authorization or at payment.[4]  *Roberts v. Capital One, N.A.*, 719 F. App'x 33, 36-37 (2d Cir. 2017).  Under that framework, even applying *contra proferentem* results in summary judgment for Capital One because Capital One's interpretation, overdraft determinations at payment, is the most favorable interpretation for Plaintiff.

---

[4] If the ambiguity the Second Circuit recognized was as Plaintiff contends, the Second Circuit would have simply remanded the case with instructions that Plaintiff's interpretation of the contract governs—but it did not.

A.     *Contra Proferentem* **is a Last Resort.**

Plaintiff argues that extrinsic evidence regarding the parties' intent is irrelevant because

the doctrine of *contra proferentem* applies.  But, "the Second Circuit has made clear that courts

should not resort to *contra proferentem* until after consideration of extrinsic evidence to

determine the parties' intent."  *D'Amato v. Five Star Reporting, Inc.*, 80 F. Supp. 3d 395, 412

(E.D.N.Y. 2015) (citation omitted); *see Record Club of Am., Inc. v. United Artists Records, Inc.*,

890 F.2d 1264, 1271 (2d Cir. 1989) (*Contra proferentem* is a "principle[] of last resort, to be

invoked when efforts to fathom the parties' intent have proved fruitless.").  This principle is no

different in construing a uniform contract or contracts entered into by a consumer and a bank.

*Albany Sav. Bank, FSB v. Halpin*, 117 F.3d 669, 674 (2d Cir. 1997) (interpreting a release

drafted by the bank-defendant and finding *contra proferentem* applies "only as a matter of last

resort after all aids to construction have been employed without a satisfactory result" and "does

not preclude the admission of parol evidence") (internal citations omitted); *Am. Home Prods.

Corp. v. Liberty Mut. Ins. Co.*, 565 F. Supp. 1485, 1492 (S.D.N.Y. 1983) (same) (quoting *Union

Ins. Soc'y of Canton, Ltd. v. William Gluckin & Co.,* 353 F.2d 946 (2d Cir.1965)).

Plaintiff's own authority recognizes that *contra proferentem* is to be used as a last resort.

*Record Club of Am., Inc. v. United Artists Records, Inc.*, No. 72 Civ. 5234 (WCC), 1991 WL

73838, at *7 (S.D.N.Y. Apr. 29, 1991) (quoting the Second Circuit for the proposition that

*contra proferentem* is a principle of last resort and ultimately finding that application of the rule

was not appropriate in the case); *McCarthy v. Am. Int'l Grp.*, 283 F.3d 121, 127 (2d Cir. 2002)

(noting that the parties may submit extrinsic evidence as an aid in construction and finding that

resolution of the ambiguity "cannot be made on this record at this stage of the proceedings");

*Fed. Ins. Co. v. Great White Fleet (US) LTD.*, No. 07 Civ. 2415 (GEL), 2008 U.S. Dist. LEXIS

58461, at *21 (S.D.N.Y. Aug. 1, 2008) (recognizing the *contra proferentem* rule but also finding

a factual issue where the drafter's position was not clear from the contract or "from any other

evidence in the record," indicating that the court looked to evidence in the record); *Oakgrove*

*Constr., Inc. Genesse Valley Nurseries, Inc.*, 10 Misc. 3d 1053(A), 809 N.Y.S.2d 482 (N.Y. Sup.

Ct. 2005) (resorting to *contra proferentem* only where "[n]o attorney submissions [ ] directly

engaged the [ambiguity]."); *67 Wall St. Co. v. Franklin Nat'l Bank*, 37 N.Y.2d 245, 249, 371

N.Y.S.2d 915, 918 (1975) (recognizing the court should look to the surrounding facts and

circumstances, including parol evidence, to interpret ambiguous provisions).

The only two cases that Plaintiff offers against the consideration of extrinsic evidence

(*Gillis* and *Kolbe*) did not apply New York law, and are thus inapplicable here.[5]  *See Axiom Inv.*

*Advisors, LLC v. Deutsche Bank AG*, No. 15 Civ. 9945 (LGS), 2018 WL 4253152, at *9

(S.D.N.Y. Sept. 6, 2018) (finding *Gillis* and *Kolbe* inapposite).

>   **B.   Plaintiff Does Not Counter the Extrinsic Evidence Showing the Account Agreements Provide for Assessment of Overdraft Fees when Transactions are Paid.**

>>   **1.   The Parties' Course of Conduct Confirms that Overdraft Determinations Are Made at Payment.**

Plaintiff cannot avoid the extrinsic evidence in this case by pointing to the Deposit

Agreement's prohibition against oral modifications as a basis to exclude consideration of

extrinsic evidence.  (Opp. at 19-20.)  The factual record is not being offered to "modify, amend,

or contravene" the Account Agreements.  (Morgan Decl., Ex. 1 at 4.)  It is offered as an aid to

interpret the phrase "elects to pay" that the Second Circuit found ambiguous.  *Roberts,* 719 F.

App'x at 36-37.  It is black-letter law that a prohibition on oral modification is not a bar to extra-

---

[5] *Jacobson v. Sassower*, 66 N.Y.2d 991, 993, 489 N.E.2d 1283, 1284, 499 N.Y.S.2d 381, 382 (1985) is inapplicable because it analyzes a relationship between an attorney and a client, *i.e.* a situation where one party owes another a fiduciary duty.

contractual evidence of meaning. *See Sec. Plans, Inc. v. CUNA Mut. Ins. Soc.*, 769 F.3d 807, 816 (2d Cir. 2014) (noting that a merger clause bars "the introduction of extrinsic evidence to alter, vary or contract the terms of the writing," but a court "might consider extrinsic evidence to illuminate an ambiguous contractual term").

Courts routinely use "course of conduct" evidence to resolve ambiguity. "[T]he parties' course of dealing throughout the life of a contract is highly relevant to determining the meaning of the terms of the agreement." *Faulkner v. Nat'l Geographic Soc'y*, 452 F. Supp. 2d 369, 381 (S.D.N.Y. 2006), *aff'd sub nom. Ward v. Nat'l Geographic Soc'y*, 284 F. App'x 822 (2d Cir. 2008); *see also Halo Optical Prods., Inc. v. Liberty Sport, Inc.*, No. 614-CV-00282, 2017 WL 1082443, at *8 (N.D.N.Y. Mar. 22, 2017) ("New York courts have held that the parties' course of performance under the contract is considered to be the most persuasive evidence of the agreed intention of the parties."). Here, Plaintiff does not even address, much less refute (*see* Opp. 19-22), the substantial evidence Capital One submitted of the parties' course of conduct during the life of the contract, which is consistent with making overdraft determinations at payment:

- Throughout the life of the parties' agreement, Capital One made overdraft fee determinations at the time of payment, *i.e.* when transactions posted to Plaintiff's account. (SOF ¶¶ 46, 53, 56, 61, 64, 70, 73, 76, 79, 82, 85.)

- Plaintiff points to no evidence demonstrating that Capital One assessed an overdraft fee for a transaction at authorization. (*See generally* Pl.'s Resp. to SOF, Opp.)

- Plaintiff closely watched her account, including checking her balance before transacting, to avoid overdrafts, but she initiated over 100 transactions under $35 when she did not have sufficient funds for the transactions *at authorization* but did have sufficient funds when the transactions were *paid* and, therefore, she avoided fees. (SOF ¶¶ 41, 86.)

- A Capital One representative explained to Plaintiff that when she looks at her account and sees a transaction pending, "it may take two or three days before it posts to your account." (SOF ¶ 52.) The representative stated again, "authorization of those are not going to post right away . . . [b]ecause it takes a couple of days for a debit card purchase to post." (*Id.*) The representative also warned Plaintiff to be careful when she tries to withdraw money, as pending transactions may get a $35 fee when they settle if the

11

balance is overdrawn at that time.  (*Id*.)

- During a conversation with another Capital One representative, Plaintiff acknowledged: "when I get ready to make an overdraft purchase, what I usually do is I check my bank account and I see what's pending because I know that things post later."  (SOF ¶ 60, Ex. F.)  Plaintiff further stated:  "I know from years ago somebody told me something is pending, that doesn't mean it's cleared . . . [s]o that's why I usually if I'm making an overdraft purchase, I wait until stuff has cleared."  (Pl.'s Resp. to SOF ¶ 60.)

- Capital One "did not have the technological capacity" to assess overdraft fees at authorization.  (Opp. at 32.)

This evidence confirms that the parties intended for overdraft fees to be determined when the transaction was paid, *i.e.* at the time of settlement.

Plaintiff's only response to this evidence is to point to a *single* comment from a Capital One employee, which was later corrected, describing a couple of the challenged fees as a "bank error."  (Opp. at 20.)  However this evidence does not create a dispute of material fact.  The Capital One employee, Brianna E., mistakenly classified the fees as a "bank error," but correctly explained that the refund of those fees was "discretionary," that debit card transactions "post a few days later," and that Plaintiff should "keep an eye and make sure [a transaction] is in the transaction history."  (SOF ¶¶ 59-60, Ex. F.)  At no point in the call did Brianna E. state that the overdraft fee should have been assessed at authorization.  Indeed, Plaintiff even admitted *after* the misstatement, *and during the same call*, that she knew pending transactions post later and she usually waits for them to clear, which Brianna E. said was "exactly right."  (SOF ¶ 60, Ex. F.) This single misstatement, which does not even support fee assessment at authorization, does not negate the parties' course of conduct.  Nor can Plaintiff's feigned unawareness of overdrafts occurring at posting create a genuine issue of material fact, especially where her recorded statements and course of conduct indicate the contrary.  *Jobim v. Songs of Universal, Inc.*, 732 F. Supp. 2d 407, 417 (S.D.N.Y. 2010) ("claimed lack of awareness is not sufficient to rebut the conclusions to be drawn from a course of performance over an extensive period of time.")

## 2. Widespread Industry Practice is to Assess Overdraft Fees at Payment.

Before the Second Circuit, Plaintiff acknowledged that "customs and usages matter" and "a court must consider the meaning of key terms 'with respect to customs or terminology generally understood' in the particular industry." (PAR at 12-13.)  She now reverses course again, arguing that Capital One "may not rely on an alleged 'industry practice.'" (Opp. at 15.) According to Plaintiff, there is no standard industry practice, and there is no evidence that Plaintiff was aware of the industry practice. (*Id*. at 16-17.)  Both arguments fail.

Plaintiff argues that Regulation E "never states what industry practice is," but that argument ignores the Fed's official commentary. (SOF ¶ 32; Mem. at 7-9; Opp. at 16-18.)  In explaining its decision to focus on "payment" rather than "authorization" in the model opt-in language, the Fed specifically stated that:  "While an institution decides whether or not to *authorize* an overdraft, fees are typically charged for the institution's *payment* of the transaction."[6] (SOF ¶ 32 (emphasis in original).)  Plaintiff ignores this portion of the commentary, which is directly on point, and that Capital One (like most banks) adopted the Fed's model language, which specifically states that "an overdraft occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway." (Opp. at 16-17.)

Instead, Plaintiff attempts to dispel of the industry practice by stating that "there is zero evidence of industry practice that OD Fees are always determined at payment for all types of transactions." (Opp. at 16.)  But this is neither the standard to apply to determine an industry practice, nor the position Capital One has taken. (Mem. at 18-19.)  For an industry practice to be applicable, it does not "always" have to occur, but should be "widespread." *Jobim*, 732 F. Supp. 2d at 417 ("When trade usage is widespread, there is a presumption that the parties intended its

---

[6] This practice is reinforced by the Fed's definition of overdraft and overdraft fees in terms of payment in both Regulation E and Regulation DD.  (Mem. at 8-9.)

incorporation by implication, unless the contract negates this implication." (quoting 28 N.Y. Prac., Contract Law § 9:25)); *Axiom Inv. Advisors, LLC*, 2018 WL 4253152, at *6 (finding among other reasons that industry practice can be cited to construe an ambiguous contract where the usage was "so notorious in the industry").  In other words, Capital One is not required to prove that *every* bank assesses overdraft fees the same way in order for an industry practice to apply, only that the practice was widespread.  For the same reason, Plaintiff's reliance on two Capital One documents that state, without any foundation, that "*some*" banks debit at authorization is misplaced.[7]  In arguing against industry practice, Plaintiff also refers to the CFPB's 2015 guidance, but makes no effort to demonstrate how the alleged "warn[ing] that consumers can and are deceived when certain banks use [APSN] practices" establishes the absence of an industry practice. (Opp. at 17.)  Plaintiff herself has not named a single bank that makes overdraft determinations at any time other than payment.

In another attempt to get around industry practice, Plaintiff makes self-serving statements that she was unaware of it.  But this argument does not get her far.  That is because "it is not necessary for both parties to be consciously aware of the trade usage.  It is enough if the trade usage is such as to justify an expectation of its observance." *Deutsche Bank AG v. AMBAC Credit Prod., LLC*, No. 04 CIV. 5594 (DLC), 2006 WL 1867497, at *13 (S.D.N.Y. July 6, 2006) (quoting *Aceros Prefabricados, S.A. v. TradeArbed, Inc.*, 282 F.3d 92, 102 (2d Cir. 2002)). Here, as evidenced by the Fed's commentary, the practice of assessing overdraft fees at settlement is such as "to justify an expectation of its observance." *Id*.  Even more, Plaintiff understood that Capital One assessed overdraft fees at settlement based on Capital One's and Plaintiff's course of conduct, and the parties' recorded interactions.  (*See supra* at 10-12.)

Plaintiff also raises the novel argument that the industry practice does not govern her

---

[7] Indeed, Plaintiff fails to establish that the authors even knew of any banks that did so.  (*See* Objs. at 5-7.)

14

because the Second Circuit found an ambiguity in the agreement.  (Opp. at 18.)  This argument is circular.  Evidence of industry practice is used to resolve ambiguities.  *Axiom Inv. Advisors LLC*, 2018 WL 4253152, at *6 ("When construing an ambiguous contract the court may accept any available extrinsic evidence to ascertain the meaning intended by the parties . . . includ[ing] custom and practice if certain requirements are met.") (citations omitted).  And the fact that Plaintiff is a consumer does not bar use of industry practice.  As Plaintiff stated before the Second Circuit:  "whether an ambiguity exists is assessed from the viewpoint of 'a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'"  (PAR at 12 (quoting *Alexander & Alexander Servs., Inc.*, 136 F.3d 82, 86-87 (2d Cir. 1998)).  The parties' course of conduct and industry practice both confirm that the parties intended for overdraft fee determinations to be made at settlement.

### C.    Capital One is Also Entitled to Summary Judgment Because Its Interpretation is Most Favorable to Plaintiff.

*Contra proferentem* can determine only whether overdraft fees should be assessed at authorization or payment, because those are the only two reasonable interpretations on the face of the Account Agreements.  *Roberts*, 719 F. App'x at 36-37.  Plaintiff's new theory, which requires the same language to be read as requiring overdraft determinations to be made at authorization *and/or* settlement depending on which benefits her, is an unreasonable interpretation of the Account Agreements.  *Samuels v. Thomas Crimmins Contracting Co.*, No. 91 CIV. 6657 (SS), 1993 WL 36168, at *6 (S.D.N.Y. Feb. 9, 1993) (Although "ambiguities are construed against drafters, this does not imply that a court must adopt wholesale the interpretation proffered by the non-drafter, particularly where the non-drafter's interpretation leads to an absurd result."); *see also Man-Hung Lee v. Hartsdale Canine Cemetery, Inc.*, 28

15

Misc. 3d 234, 247, 899 N.Y.S.2d 823, 832-33 (N.Y. City Ct. 2010) (noting that while ambiguities are construed against the drafter, "where a particular interpretation would lead to an absurd result, the court can reject such a construction in favor of one which would better accord with the reasonable expectations of the parties.") (citations omitted).  Because assessing fees at settlement is the most reasonable interpretation, is consistent with the language of the Account Agreements, and is the more favorable construction to Plaintiff, Capital One is entitled to summary judgment even when the contract is construed in Plaintiff's favor.  *Record Club of Am., Inc.*, 1991 WL 73838 at *7 ("If the language supplied by one party is reasonably susceptible to two interpretations, one of which favors each party, the one that is less favorable to that party that supplied the language is preferred.")

### III.   PLAINTIFF FAILS TO ESTABLISH STANDING AND HER CLAIMS FAIL AS A MATTER OF LAW BECAUSE SHE CANNOT ESTABLISH DAMAGES.

#### A.   None of Plaintiff's Cases Support Standing Where Plaintiff Benefited From the *Exact* Practice She Says Harmed Her.

Plaintiff challenges the practice of assessing overdraft fees at the time of settlement, rather than at the time of authorization.  The undisputed evidence shows that the very practice she challenges was, in fact, of significant benefit to her.  To avoid the legal conclusion that necessarily follows—she lacks standing—Plaintiff cites a variety of cases that hold that *other* benefits received cannot negate standing to challenge a *different* harm.  But none of those cases undermine the basic principle that to have standing to challenge a practice a party must have been harmed by that practice.  *See* 13A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3531.4 (3d ed. 2018 update) ("Standing is recognized to complain that some particular aspect of the relationship is unlawful and has caused injury."); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 265-66 (2d Cir. 2006) (the fact that an injury may be outweighed by *other* benefits, while often sufficient to defeat a claim for damages, does not

16

negate standing) (emphasis added)); *NCAA v. Governor of N.J.*, 730 F.3d 208, 222-23 (3d Cir.

2013) (alleged stigma resulting from gambling law was not negated by league prospering

economically); *cf. EMI Music Mktg. v. Avatar Records, Inc.*, 317 F. Supp. 2d 412, 424 (S.D.N.Y.

2004).  In other words, Plaintiff's authority does not undermine the fundamental principle that to

have standing to assert a claim she must have "suffered a distinct and palpable injury to

[her]self" *as a result of the challenged conduct*.  (Mem. at 14 (citing *Mahon v. Ticor Title Ins.

Co.*, 683 F.3d 59, 64 (2d Cir. 2012)).  Because her own expert's analysis shows that she

benefited (a lot) from the very practice she challenges—charging overdraft fees at payment,

instead of authorization—she was not harmed by that practice and lacks standing to challenge it.

> **B.     Even If Plaintiff Has Standing, All of Her Claims Fail Because She Has Not Established Damages.**

Plaintiff does not contest that damages is a required element of both claims, that she

failed to repay her $561.20 overdrawn balance, or that her own expert's analysis shows that she

would have incurred an additional 259 overdraft fees in her own "but for" world, where Capital

One assessed overdrafts at authorization.  Instead, she claims that damages are "a merits issue for

trial," argues that her unpaid debt does not matter, attempts to discredit her own expert analysis,

and contends that Capital One "mischaracterizes" her theory of breach.  Each argument fails.

*First*, damages are not an issue for trial where, like here, damages are an element of the

claim and Defendant has put forth unrebutted evidence that the Plaintiff was not harmed.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Plaintiff does not dispute that she never

repaid the $561.20 and, as explained below, her challenges to her own expert's analysis fall flat.

Because her unpaid balance exceeds her claimed injury, and the amount of fees that she would

have incurred if Capital One assessed fees at authorization *far exceeds* her claimed damages,

Plaintiff was not damaged, which is fatal to both claims.

*Second*, the fact that her unpaid overdrafts do not consist of the exact same fees identified by her expert does not mean that Plaintiff was injured.  (Pl.'s Resp. to SOF ¶ 89.)  Plaintiff's own authority finds that offsetting benefits preclude a finding of damages where they exceed the alleged harm.  *See Denney*, 443 F.3d at 265 (noting that "the fact that an injury may be outweighed by other benefits [is] ***often sufficient to defeat a claim for damages***"); *NCAA*, 730 F.3d at 223 (same).  Nor can Plaintiff brush aside the more than 250 overdraft fees that would have been assessed according to Plaintiff's own expert's analysis under a "fees at authorization" scheme.  "Federal courts in [the Second] Circuit and New York state courts consistently have held that damages otherwise recoverable for breach of contract must be reduced by any cost savings realized by an injured party as a result of another party's breach."  *Aristocrat Leisure Ltd v. Deutsche Bank Trust Co. Ams.*, 727 F. Supp. 2d 256, 287 (S.D.N.Y. 2010) (collecting cases).  Since the number of Plaintiff's "authorized negative/settle positive" transactions (for which Capital One charged no overdraft fee) far exceeded the number of her "authorize positive/settle negative" transactions (for which it did) Plaintiff has no contract damages under New York law.

*Third*, if her expert's analysis is too speculative to *refute* her own claimed damages, it is also too speculative to *prove* damages because the same underlying analysis was used for both.  Unlike in both of the cases Plaintiff cited—both of which pertain to standing, not damages— Capital One is not suggesting that Plaintiff would have benefited under some undefined alternative scenario.  *See L.A. Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 656 (9th Cir. 2011) (rejecting a comparison to "a hypothetical regulation drawn in conformity with the statute"); *NCAA*, 730 F.3d at 223 (rejecting defendant's argument that plaintiff needed to establish that they would have been more profitable if the challenged statute did not exist).  Capital One is simply applying the theory Plaintiff advanced at the Second Circuit (and is estopped from

changing)—that the Account Agreements require it to assess overdraft fees based on Plaintiff's balance at authorization—to her own analysis of what her balances were at authorization.  (*See supra* at 10-12.)  If that analysis is too speculative, then it is also too speculative to support her claimed damages, which rely solely on her expert's analysis.

*Finally*, Plaintiff's arguments that Capital One "mischaracteriz[ed]" her theory of breach cannot be squared away with her own Second Circuit briefing and show that Capital One's interpretation of the contract is the correct one, which is also fatal to her damages claim. Recognizing that she benefited from Capital One assessing overdraft fees at settlement instead of authorization, Plaintiff now tries to change course and disavows that she ever argued for the binary interpretation of assessment at authorization, not settlement.  (Opp. at 31.)  But as shown *supra*, *that is exactly what Plaintiff argued for*, and she was able to revive her action solely on that theory, and is estopped from changing it.  (*See supra* at 5-8.)  Thus, Plaintiff's arguments about how implausible it is that Capital One would have assessed fees at authorization do not refute that Plaintiff benefited from Capital One's assessment of fees at settlement.  They confirm that the Account Agreements provide for overdraft fee assessment at settlement and that the nine fees were contractually authorized and do not constitute damages.  (*See* Mem. at 15-16; 19-22.)

## IV.    PLAINTIFF'S BREACH OF CONTRACT FAILS BECAUSE SHE DID NOT PERFORM UNDER THE ACCOUNT AGREEMENTS.

Plaintiff does not and cannot dispute that her performance of the contract is an element of her breach of contract claim; nor does she dispute that she agreed "not to withdraw, write checks or make point of sale purchases against funds that are needed to pay ATM/Debit Card transactions that have not yet posted to her account."  (*See* Mem. at 22-24; Opp. at 23 n.4; 22-26; SOF ¶ 21.)  She also does not dispute that for each and every overdraft fee she challenges, she did exactly what she agreed not to do by making large ATM withdrawals that vastly exceeded

the amount in her bank account at times when she had unpaid debit card transactions pending. (Mem. at 22-24; Opp. at 22-23; SOF ¶ 85.)  Despite these clear admissions, Plaintiff argues that she did not breach the Account Agreements, and that even if she did, Capital One's choice to assess her a fee and continue providing her banking services was an election of remedies, so her breach is excused.  She is wrong on both fronts.

Plaintiff's first argument, that she did not breach the Account Agreements because Capital One "memo posts" and "lent her new money" for the ATM withdrawals, is based solely on plainly misrepresented evidence, including emails regarding *deposit* "memo posts" which are different from the *debit* "memo posts" at issue here, and testimony about theoretical possibilities if the Account Agreements were different.  It is undisputed that "memo post" can refer both to a credit from a deposit and a hold from a debit card transaction.  (SOF ¶ 5; Kaufman Decl., Ex. A at 42:8-21.)  Neither affects a customer's ledger balance, which is the balance used to assess overdraft fees.  (*Id.*; Objs. at 5-6.)  Because "memo posted" deposits have not yet been fully processed and/or received, they are not included in the ledger balance and are thus not spendable. (Kaufman Decl., Ex. A at 42:8-21; Objs. at 5-6.)  This has nothing to do with segregating funds for specific debit card transactions, which is prohibited by Capital One's specified posting order. (*Id.*, Reply Decl., Ex. K at 25:18-26:3.)

Despite all of the foregoing being repeatedly explained in discovery, Plaintiff asserts otherwise by submitting curated deposition testimony and omitting context from email strings that show the parties are discussing *deposit*, not *debit*, "memo posts," which concern when Capital One makes deposited funds available for customers to use. (Reply Decl., Ex. K at 89:11-93:8; Objs. at 5-6.)  Similarly, Plaintiff summarily argues that Capital One using "memo posted funds for [the] later made ATM withdrawals" was "its own choice . . . that violated the contract."

That argument is not supported by the cited evidence, and any other decision by Capital One would have violated the posting order set forth in Deposit Agreement.  Plaintiff repeatedly cites to deposition testimony where a Capital One representative states that it would be theoretically and technologically possible to create a system that segregated the funds for debit card authorization, but ignores the repeated testimony that it was not currently possible and it would violate the Account Agreements to do so.  (Reply Decl., Ex. K at 25:24-28:24, 30:1-9, 37:2-8.)  The Deposit Agreement tells Plaintiff exactly how, and in what order, transactions are posted each day, and states that ATM and other "cash-like" transactions post before debit card transactions.  (SOF ¶¶ 16-17.)  "Segregating" funds for authorized debits would result in Capital One effectively posting debit card transactions before ATM withdrawals, which would violate the clear and unambiguous written terms of the Deposit Agreement.

That Capital One provides an overdraft service also does not excuse Plaintiff's *admitted* breach.  Overdrawing, *e.g.* making an ATM withdrawal that exceeds the customer's available balance while there are *no* debit card transactions or other ATM withdrawals pending, is not a breach of the agreement.  As Plaintiff notes, it is a service that Capital One provides and charges a fee for providing.  But making such a withdrawal while there *are* outstanding unsettled debits *is* a breach.  (SOF ¶ 21 (Plaintiff agrees "not to withdraw, write checks or make point of sale purchases against funds that are needed to pay ATM/Debit Card transactions that have not yet posted to her account.").)  This makes sense.  Capital One decides to pay authorized transactions to comply with Mastercard rules, but Capital One cannot know whether, or when, any transactions the customer authorizes will actually result in a settled transaction.  The party with the most complete information about Plaintiff's transactions is Plaintiff, so the contract assigns to Plaintiff, not Capital One, the obligation to "segregate" and not spend or withdraw the money

needed to pay for pending transactions.  Stated differently, Plaintiff cannot now challenge fees that were only incurred because she broke her promise to not spend money needed to pay pending debit card transactions she had initiated. (Mem. at 22-24.)[8]

Plaintiff argues that the doctrine of election of remedies prevents this Court from considering her failure to perform, but she is wrong.  The doctrine requires parties upon learning of a breach to terminate the contract or notify the party of the breach or else lose their right to sue for breach.  Applied here, it bars Plaintiff's suit, as Plaintiff kept her account open without notifying Capital One that it "breached" the Account Agreements when it assessed overdraft fees based on her balance at posting.  *See Medinol Ltd. v. Boston Sci. Corp.*, 346 F. Supp. 2d 575, 620 (S.D.N.Y 2004) ("If a party chooses to continue performance, it must give notice of breach to the other side, or it waives its rights to sue the breaching party.") (citations omitted).  The doctrine of election of remedies only limits who can bring suit.  It does not preclude Capital One from pointing out that Plaintiff's breach is fatal to her claim.

Finally, while Plaintiff attempts to distinguish Capital One's authority, she does not, and cannot, refute the core tenet of New York contract law—she needs to demonstrate her performance to establish a claim.  (Opp. at 22-26.)  It is undisputed that she broke her promise to "not withdraw, write checks or make point of sale purchases against funds that are needed to pay ATM/Debit Card transactions that have not yet posted to her account[,]" and it is only because she broke that promise she incurred the challenged fees.  Summary judgment is warranted.

## V.   PLAINTIFF'S SECTION 349 CLAIM FAILS AS A MATTER OF LAW.

---

[8] Plaintiff's contention, that prohibiting her from asserting claims based -on her own breach would lead to absurd results, lacks merit.  The four overdraft fee per day limit is an express promise from Capital One that *regardless of the cause of the overdraft* Capital One will not charge more than four overdrafts per day.  Thus, if Capital One violated that provision, Plaintiff would have recourse regardless of whether the five (or more fees) were caused by her overdrawing against debit card transactions.  In contrast, here, there is no such express promise that excuses her potential breach.  In fact, the opposite is true.  Plaintiff breached an express promise not to spend money needed for transactions that had not yet posted.

### A.     Plaintiff Cannot Show that Any Alleged Misrepresentation in the Account Agreements Caused Her Any Harm Because She Never Read Them.

Plaintiff concedes that she cannot establish that any alleged misrepresentations in the Account Agreements *caused* her any harm because she never read them.  (Mem. at 24-25; SOF ¶ 38-39.)  Instead, she argues that it is irrelevant that she did not read them because there is no actual reliance element and she has other (unpled) bases for her section 349 claim.  But Capital One's authority established that the absence of an "actual reliance" element does not mean that Plaintiff can ignore the causation element or state a claim based on unread documents.  (Mem. at 25 (citing *Gale v. Int'l Bus. Machs. Corp.*, 781 N.Y.S.2d 45, 47 (2d Dep't 2004) (affirming dismissal of section 349 claim where plaintiff failed to allege he read the challenged statements and rejecting plaintiff's actual reliance argument).)  None of Plaintiff's authority undermines the necessity of the causation element.  *Harte v. Ocwen Financial Corp.* is inapposite because it does not address causation or a failure to read the alleged misrepresentations.  No. 13-cv-5410, 2018 U.S. Dist. LEXIS 21843, at *29-30 (E.D.N.Y. Feb. 8, 2018).  In *Harte*, the question was whether specific disclosures defeated plaintiff's theory of the case; there was no dispute that the plaintiff received and read the letters.  *Id.*  In *Relativity Travel, Ltd. v. JP Morgan Chase Bank*, 123 Misc. 3d 1221(A), 2006 WL 2918081 (N.Y. Sup. Ct. Feb. 14, 2006), the plaintiff identified a wide variety of publically-available misrepresentations and omissions by representatives, *i.e.* not just the account agreements, to support her section 349 claim. *Id.* at *2-3.  It was based on these other pled allegations that her complaint survived.  *Id.*

Here, Plaintiff's new theories are not properly before the Court, and in any event, the facts demonstrate that none of the other alleged misrepresentations harmed Plaintiff.[9]  Thus,

---

[9] Plaintiff attempts to add new theories to support her section 349 claim: (1) in its online banking and mobile interfaces were misleading; (2) representatives failed to disclose the APSN policy to her at account opening; and (3) Capital One representatives provided her false information about the assessment of overdraft fees.  (Opp. at 33-34.)

Plaintiff's concession that she never read the Account Agreements remains fatal to her claim.

### B.    Plaintiff Was Not Misled by Capital One's Mobile Application.

Plaintiff argues that she was misled by Capital One's Mobile Application because it showed positive funds when she made the transactions at issue.  This argument ignores the fact that the mobile application also showed those transactions as pending until they posted. (Streisfeld Decl., Ex. 15.)  Plaintiff admitted that she knew that pending transactions did not leave her account until they posted and could incur overdraft fees if she overdrew her account while they were still pending.  (SOF ¶ 42.)  Indeed, she even admitted to a Capital One representative that she knew to check for pending transactions before she overdrew her account. (*Id.*)  Because it is undisputed that the mobile application and online banking interface showed transactions as pending until they settled, they could not have caused Plaintiff any harm. (Streisfeld Decl., Ex. 15.)  All Plaintiff had to do (as she acknowledged to a Capital One representative) was wait for those transactions to clear to avoid overdraft fees on those transactions.  Because Plaintiff has not identified anything "materially misleading" about the mobile application or online interface, this new theory could not save her claim even if it was properly before the Court.[10]

### C.    Plaintiff's June 2015 Call with Capital One Precludes Any Subsequent Finding of Harm—Including Based on Communications at Account Opening

---

But these theories were not alleged in Plaintiff's Complaint.  (Compl. ¶¶ 136, 137.)  Accordingly, they are not properly before the Court and should be disregarded.  *Douyon v. N.Y. Med. Health Care, P.C.*, 894 F. Supp. 2d 245, 263–64 (E.D.N.Y. 2012) (declining to consider Plaintiff's argument—raised for the first time on reply—that she was entitled to summary judgment based on verbal representations similar to statements made in challenged documents), *order amended on recons.*, No. CV 10-3983(AKT), 2013 WL 5423800 (E.D.N.Y. Sept. 25, 2013); *Harte*, 2018 U.S. Dist. LEXIS 21843, at *21-22 (same).  *Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp.*, 963 F. Supp. 1342, 1359 (S.D.N.Y. 1997) (it is inappropriate to consider a claim the plaintiff never addressed in the complaint at summary judgment after discovery is closed).

[10]  Plaintiff cites to a handful of internal documents to demonstrate that the challenged representations are material (Opp. at 35), but all of the cited documents are either taken out of context (*see supra* at 20-21) and/or lack foundation (*see* Objs. at 4-7.)  Further, Plaintiff conveniently omits the Bank's actual testimony that there were only a few examples of customer queries regarding APSN transactions and they were not "a primary problem."  (*See* Reply Decl., Ex. N at 107:11-109:5.)

**or Subsequent Calls.**

While Plaintiff argues that she did not understand Capital One's June 2015 explanation of its posting order, the call speaks for itself and Plaintiff's subsequent recorded phone calls (where she acknowledges that she knows she needs to wait for pending transactions to clear before she overdraws) demonstrate otherwise. (*See* Kaufman Decl., Exs. D, F & H.) Her self-serving contradictory deposition testimony does not create a genuine issue of material fact. *Zellner*, 494 F.3d at 371.

The June call is also fatal to Plaintiff's argument that she was harmed or misled by Capital One's failure to explain every minute detail of its overdraft policies at account opening, because, after that call, she had received additional express notice that she could and would receive overdraft fees for when she withdrew money needed for pending transactions. (*See* Opp. at 34-35.) Further, based on Plaintiff's testimony that she did nothing to investigate Capital One's overdraft policy and chose Capital One solely based on location, she cannot establish that a lack of an in-depth explanation for that feature was material. (SOF ¶ 35.) The fact that Plaintiff subsequently reached a different Capital One representative who was willing to offer her discretionary refunds does not save her claim. During that same call, Plaintiff admitted that she knew she had to check for pending transactions before overdrawing her account, so any statements by that representative could not have caused any harm. *Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 680 (S.D.N.Y. 2012) (no § 349 injury where all the relevant terms of the gift card were fully disclosed prior to the transaction).

## CONCLUSION

For the foregoing reasons, Capital One requests the Court grant its Motion for Summary Judgment in its entirety and deny Plaintiff's Cross-Motion for Partial Summary Judgment.

ny-1527826

Dated: March 25, 2019                    MORRISON & FOERSTER LLP

                                         By: ___/s/ Jessica L. Kaufman_____
                                               Jessica L. Kaufman


                                         James R. McGuire *(pro hac vice)*
                                         Sarah Davis *(pro hac vice)*
                                         Lauren Erker *(pro hac vice)*
                                         425 Market Street
                                         San Francisco, California
                                         Telephone: (415) 268-7000
                                         jmcguire@mofo.com
                                         sarahdavis@mofo.com
                                         lwroblewski@mofo.com

                                         Jessica L. Kaufman
                                         Tiffani Figueroa
                                         250 West 55th Street
                                         New York, New York 10019
                                         Telephone: (212) 468-8000
                                         jkaufman@mofo.com
                                         tfigueroa@mofo.com

                                         *Attorneys for Defendant Capital One, N.A.*

ny-1527826

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that she caused a true and complete copy of the within

DEFENDANT CAPITAL ONE, N.A.'S MEMORANDUM OF LAW IN FURTHER SUPPORT

OF ITS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S

MOTION FOR PARTIAL SUMMARY JUDGMENT, with supporting objections, declarations,

and exhibits, to be served via ECF and email on the following counsel of record:

Jeff Ostrow (pro hac vice)
Jonathan M. Streisfeld (pro hac vice)
Joshua R. Levine (pro hac vice)
Kopelowitz Ostrow Ferguson Weiselberg Gilbert
1 W Las Olas Blvd, Suite 500
Fort Lauderdale, Florida 33301
Telephone: (954)-525-4100
Email:  ostrow@kolawyers.com
Email:  streisfeld@kolawyers.com
Email: levine@kolawyers.com

Jeffrey D. Kaliel (pro hac vice)
Sophia Goren Gold
Kaliel PLLC
1875 Connecticut Ave. NW, 10th Floor
Washington, DC 20009
Telephone: 202-350-4783
Email: jkaliel@kalielpllc.com
Email: sgold@kalielpllc.com

Laurie Rubinow
Shepherd, Finkelman, Miller & Shah, LLC
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Email: lrubinow@sfmslaw.com

This 25th day of March, 2019.

/s/ *Jessica Kaufman*
Jessica Kaufman