UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TAWANNA M. ROBERTS, individually and on
behalf of all others similarly situated,

                             Plaintiff,

       - against -

CAPITAL ONE, N.A.,

                        Defendant.

Case No. 1:16-cv-04841-LGS

**DEFENDANT CAPITAL ONE, N.A.'S OBJECTIONS TO EVIDENCE SUBMITTED IN PLAINTIFF'S RESPONSE TO DEFENDANT CAPITAL ONE, N.A.'S STATEMENT OF MATERIAL UNDISPUTED FACTS IN SUPPORT OF ITS MOTION <u>FOR SUMMARY JUDGMENT AND STATEMENT OF ADDITIONAL FACTS</u>**

Pursuant to Rule 56(c)(2) of the Federal Rules of Civil Procedure and Local Rule 56.1 of the Civil Rules for the Southern District of New York, Defendant Capital One, N.A.'s ("Capital One"), by and through its attorneys, Morrison & Foerster LLP, submit their objections to evidence submitted by Plaintiff in opposition to Capital One's Motion for Summary Judgment and in support of Plaintiff's Cross-Motion for Partial Summary Judgment. Specifically, Capital One objects to Exhibits 6-14 to the Declaration of Jonathan Streisfeld ("Streisfeld Declaration") ECF No. 103-2) as inadmissible, and requests that the Court not consider them for purposes of the pending summary judgment motions.

On January 25, 2019, Capital One served its Statement of Material Undisputed Facts in Support of Its Motion for Summary Judgment ("Statement") pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 56.1 (ECF No. 98). On February 21, 2019, Plaintiff proposed to "annex" her response to the Statement and identify all undisputed facts that she contends are material to her cross-motion for partial summary judgment (ECF No. 101). The Court accepted that proposal (ECF No. 102). On February 25, 2019, Plaintiff filed her Response to Defendant Capital One, N.A.'s Statement of Material Undisputed Facts in Support of Its

Motion for Summary Judgment and Statement of Additional Facts ("Response") (ECF No. 103-1).  The Response cites to various exhibits in the Streisfeld Declaration.  Exhibits 6-14 are inadmissible for lack of foundation, lack of personal knowledge, and hearsay.

Rule 56(c)(2) provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  The Local Rules similarly require a party's statement of material facts on motion for summary judgment to "be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  L.R. 56.1(d).

Courts have made clear that the test for admissibility of evidence submitted in support of a summary judgment motion is whether such evidence would be admissible at trial.  *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 469-70 (S.D.N.Y. 2008) (citing *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 219–20, 222 (2d Cir. 2004)).  The proponent of the evidence bears the burden of showing that the evidence is admissible.  *Id.*

This Court has sustained objections to evidence on motions for summary judgment for lack of foundation and personal knowledge.  *Vasquez v. Williams*, No. 13 Civ. 9127(LGS), 2015 WL 4757657, at *1 n.3 (S.D.N.Y. Aug. 11, 2015) ("Plaintiff correctly objects that Defendants have failed to produce 'admissible evidence' as required by Rule 56(c)(2) because Defendants' counsel does not have personal knowledge as to the relevant facts and is not competent to testify to the same.").  For these same reasons, the Court should sustain Capital One's objections and decline to consider Exhibits 6-13 of the Streisfeld Declaration.

**Streisfeld Declaration Exhibit 6**

Exhibit 6 of the Streisfeld Declaration is a February 5, 2010 email chain among Capital One employees.  Plaintiff cites Exhibit 6 to contend that "Capital One actively considered the possibility of posting debit card transactions at authorization and rejected it as impossible." (Response ¶ 93.)  But Plaintiff has not established any foundation to support a finding that any of the employees who drafted the emails at issue had personal knowledge of, and/or authority to change, Capital One's transaction posting practices.  Fed. R. Evid. 602.  It even appears from the

face of the email that the posting process for debit card transactions could potentially be outside the scope of the employees' job description as there is confusion about the technical aspects of how the system works or could work.  Such speculation is inadmissible.  *See Sadler v. Moran Towing Corp.*, 204 F. Supp. 2d 695, 698 & n.14 (S.D.N.Y. 2002) ("[t]estimony based on guesswork, speculation, or conjecture is inadmissible") (quoting 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 702.04[5], at 702-57 (2d ed. 2001)) (alteration in original).  Plaintiff had the opportunity to depose the employees who made the statements at issue to determine if they had personal knowledge about the processing of debit transactions, but failed to do so.  Because Plaintiff has not established how this speculation by some employees is sufficient to find that Capital One "actively considered" and "rejected" posting at authorization, Exhibit 6 is inadmissible.

**Streisfeld Declaration Exhibit 7**

Exhibit 7 of the Streisfeld Declaration is an email chain from August 2009, among Capital One employees.  Plaintiff cites Exhibit 7 in support of her contention that "Capital One was aware of the revenue generation potential of APPSN transactions and consumer confusion regarding the same as far back as 2009."  (Response ¶ 94.)  As a preliminary matter, Exhibit 7 plainly does not support this contention.  Consumers are not even mentioned in the email chain. Nor does the document discuss any overdraft revenue *for Capital One.*  The only revenue numbers, which are based on inadmissible hearsay, pertain to Chevy Chase Bank, *i.e.* "CCB," which had only recently been acquired by Capital One.  *See* Fed. R. Evid. 801, 805.  Moreover, Plaintiff has not established any foundation to support a finding that the employees who drafted the emails at issue had personal knowledge of Capital One's revenue, or CCB's revenue, or from where any of the percentages or revenue were derived, and their speculation is inadmissible. Fed. R. Evid. 602, *Sadler*, 204 F. Supp. 2d at 698.  Plaintiff did not depose the senders or recipients of these emails.  As such, Exhibit 7 lacks foundation and contains hearsay and speculation, so it is inadmissible.

3

**Streisfeld Declaration Exhibit 8**

Exhibit 8 of the Streisfeld Declaration is an email chain from September 2009, among Capital One employees.  Plaintiff cites Exhibit 8 in support of her contention that "Capital One was aware of the revenue generation potential of APPSN transactions and consumer confusion regarding the same as far back as 2009."  (Response ¶ 94.)  As a preliminary matter, Exhibit 8 plainly does not support this contention.  Consumers are not even mentioned in the email chain. Further, while the email contains some discussion of settlement timing, the document reflects uncertainty about certain "assumption[s]" and is therefore speculative.  *Sadler*, 204 F. Supp. 2d at 698.  It is also not clear from the email chain what the different percentages and numbers are referring to, *e.g.* what is "NSF from debit."  Plaintiff did not take the deposition of the senders or recipients of these emails to establish foundation or to clarify the emails' contents.  Because Plaintiff has not established any foundation to support a finding that these employees had personal knowledge of Capital One's revenue or the source of the numbers cited, and it is on its face speculative, Exhibit 8 it is inadmissible.  Fed. R. Evid. 602, *Sadler*, 204 F. Supp. 2d at 698.

**Streisfeld Declaration Exhibit 9**

Exhibit 9 of the Streisfeld Declaration is an email chain from June 2011, among Capital One employees.  Plaintiff cites Exhibit 9 in support of her contention that "Capital One was aware of the revenue generation potential of APPSN transactions and consumer confusion regarding the same as far back as 2009."  (Response ¶ 94.)  As a preliminary matter, Exhibit 9 plainly does not support this contention.  The email reflects a response to an opt-out customer who did not understand that she could overdraw her account if she was opted out.  She was not charged overdraft fees and the email does not reflect any discussion of overdraft revenue.  To the extent Plaintiff is attempting to rely on the statement that "settlement timing . . . accounts for 14% of total overdraft transactions" as a proxy for APSN transactions, Plaintiff has not established that this is what the sender is referring to, nor has she established from where the 14% figure was derived.  For the foregoing reasons, Exhibit 9 lacks foundation and is inadmissible.  Fed. R. Evid. 602; *Sadler*, 204 F. Supp. 2d at 698.

**Streisfeld Declaration Exhibit 10**

Exhibit 10 of the Streisfeld Declaration is an excerpt from a PowerPoint presentation purportedly authored by two employees.  Plaintiff cites Exhibit 10 to contend that "[t]he confusion to consumers of providing the available balance was a known issue at Capital One." (Response ¶ 95.)  Plaintiff has mischaracterized this document.  Reference to customers being "confused between the difference in available, current balance displayed on OLB," is in the context of *deposits*—not debit card transactions—and the Bank's funds availability policy, and is therefore irrelevant.  Fed. R. Evid. 401.  Further, Plaintiff has failed to establish the source for the statement "Customers are often confused between the difference in available, current balance displayed on OLB" and/or whether this slide was ever presented or circulated.  Indeed, while Plaintiff briefly asked a Capital One employee about the presentation as a whole, she did not ask any questions about the authors (much less try to depose them) or their basis for any personal knowledge of the document's contents, and did not ask any questions on this specific slide.  (*See* Kaufman Objs. Decl.[1] Ex. 1 at 145:15-147:18.)  Because Plaintiff has not established that the slide pertains to any issue in this litigation, nor has she established any foundation to support a finding that the employees who authored this PowerPoint presentation had personal knowledge of any customer confusion regarding funds availability as to deposit holds, much less as to debit card holds, Exhibit 10 is inadmissible.  Fed. R. Evid. 401, 602, *Sadler*, 204 F. Supp. 2d at 698.

**Streisfeld Declaration Exhibit 11**

Exhibit 11 of the Streisfeld Declaration is an excerpt from a document titled "Overdraft Practices, Environment, and Implications."  Plaintiff cites Exhibit 11 to contend that "Capital One recognized that certain banks in the industry did make OD Fee determinations based on the balance at the time of authorization."  (Response ¶ 96.)  There is no author identified on the

---

[1] "Kaufman Objs. Decl." refers to the Declaration of Jessica Kaufman in Support of Defendant Capital One's Objections to Evidence Submitted in Plaintiff's Response to Defendant Capital One, N.A.'s Statement of Material Undisputed Facts in Support of Its Motion for Summary Judgment and Statement of Additional Facts, dated March 25, 2019.

sf-4002045

document, and Plaintiff has not marked this document as an exhibit in any deposition. Plaintiff has not established any foundation to support a finding that the unidentified author(s) of this document had personal knowledge of the overdraft practices of Capital One or other banks. Fed. R. Evid. 602, *Sadler*, 204 F. Supp. 2d at 698. Plaintiff has not established how this speculation by unidentified author(s) is sufficient to find that Capital One "recognized" how "certain banks" made overdraft fee determinations. It also conflicts with the testimony of Capital One employees that they were unaware of any bank that made overdraft determinations at authorization—nor has Plaintiff herself identified any such bank. (*See, e.g*,. Kaufman Objs. Decl. Ex. 2 at 169:10-19.) Further, any "opinion" comparing Capital One's practices to the hypothetical practices of other banks is an inadmissible lay opinion. *See* Fed. R. Evid. 701. Plaintiff did not depose any Capital One employees regarding this document. As such, Exhibit 11 lacks foundation, contains speculation, and improper lay opinion so it is inadmissible.

**Streisfeld Declaration Exhibit 12**

Exhibit 12 of the Streisfeld Declaration is an email chain from May 16 and 17, 2017, among Capital One employees. Plaintiff cites Exhibit 12 to contend that a "top Capital One executive held exactly the common sense consumer perception that Plaintiff Roberts and reasonable consumers have: once a debit card transaction is authorized, the funds are placed on hold and may not [sic] used for any other purpose" and that another "Capital One executive falsely confirmed as much." (Response ¶ 54.) Plaintiff not only mischaracterized this document, but appears to have done so intentionally as evidenced by her omitting the portion of the email string that makes clear the email chain pertains to an issue specific to *deposit* holds—not holds for authorized debit card transactions—and by ignoring the testimony of Capital One employees, who confirmed that it did not relate to debit card transactions. (Kaufman Objs. Decl. Ex. 2 at 89:11-93:8, Ex. 3.) A Capital One employee described deposit holds as follows: "with deposits, you'll . . . have a funds availability policy. And so if a customer makes a deposit, some of those deposits are on hold, some of those might be available instantly or within a day. So the available balance would reflect the available portion of a given deposit." (*Id*. Ex. 4 at 40:20-41:3.) In

6

Plaintiff's Exhibit 12, Capital One employees are discussing deposit memo posts—again, not debit card memo holds—in the context of a defect the Bank identified when converting debit platforms, where ATM deposits "memo posted twice, inflating balances into some of [the] customers' accounts." (*Id*. Ex. 2 at 85:15-86:15; Ex. 5 at 81:16-87:4.)  A Capital One employee explained with regard to this email chain, and in the context of this defect, that a memo post cannot be spent because it is not a "real" transaction, but a customer can draw against the inflated balance created by the double deposit memo post.  (*Id*. Ex. 5 at 82:10-85:17.)  Because this email chain is regarding deposit holds it does not pertain to any issue in this litigation and is irrelevant.  Fed. R. Evid. 401.  Further, admitting the truncated email chain, which has no bearing on the issues in this litigation, would only serve to confuse the issues because of the similarity in terminology, and therefore it should be excluded for that basis as well.  Fed. R. Evid. 403.  Additionally, Plaintiff has not established any foundation that the employees have any personal knowledge about holds *for debit card transactions*, and it would be more than speculation to apply these emails to debit card transactions, because Capital One employees and the rest of the email chain demonstrate that the discussion pertains to *deposit* holds.  Fed. R. Evid. 602, *Sadler*, 204 F. Supp. 2d at 698.  For the foregoing reasons, Exhibit 12 is irrelevant, prejudicial, and thus inadmissible.

**Streisfeld Declaration Exhibit 13**

Exhibit 13 of the Streisfeld Declaration is an excerpt of an email chain from October 28 and 29, 2009 among Capital One employees.  Plaintiff cites Exhibit 13 to contend that "Capital One was also aware that its own customers were dissatisfied that it did not have an immediate debit practice like other banks."  (Response ¶ 96.)  Plaintiff has mischaracterized this document.  Plaintiff quotes the following statement in the email:  "[t]he fact that we don't debit the account on authorization, rather at settlement, came up as a big dissatisfier"; however, there is no reference to *customers* in the context of this statement.  Further, Plaintiff has not established any foundation to support a finding that the employees involved in this email had personal knowledge of Capital One's overdraft policies and practices, and their speculation regarding a

purported "dissatisfier" is inadmissible.  Fed. R. Evid. 602, *Sadler*, 204 F. Supp. 2d at 698.

Plaintiff has not established how this speculation by some employees is sufficient to find that

Capital One was "aware that its own customers were dissatisfied."  Further, any "opinion"

comparing Capital One's practices to those of other banks is an inadmissible lay opinion.  *See*

Fed. R. Evid. 701.  Plaintiff also relies on inadmissible hearsay, as the email describes what one

unidentified branch manager said to an employee, who then reported that conversation via email.

*See* Fed. R. Evid. 801, 805.  Plaintiff did not take the deposition of the other senders of the

emails in this chain. Because Plaintiff failed to establish foundation, it includes inadmissible

hearsay, and improper lay opinion testimony, Exhibit 13 is inadmissible.

**Streisfeld Declaration Exhibit 14**

Exhibit 14 of the Streisfeld Declaration is a single page out of the "Opt In Facilitator

Guide."  Plaintiff cites to it to support her contention that "Capital One touted its overdraft

service as helping its customers out in case of an emergency when funds were needed."

(Response ¶ 97.)  But Plaintiff fails to establish the requisite foundation to make this document

admissible.  Plaintiff does not establish when the guide was in place, who wrote the guide or

approved of its use, if this is a final version, or how the guide was used.  Without this context,

any deductions from it would be pure speculation.  Fed. R. Evid. 602, *Sadler*, 204 F. Supp. 2d at

698.  Further, Plaintiff has mischaracterized this document as it is an internal document for

Capital One employees, not marketing for customers.  (Kaufman Objs. Decl. Ex. 6 at

CO_RBTS00013343 ("The purpose of this MIAB is to provide participants with the necessary

tools needs to explain the changes to Capital One Bank's Overdraft Coverage, and obtain the

customer's Opt In decision.").  As such, Exhibit 14 lacks foundation, contains improper

speculations, and is inadmissible.

Dated: March 25, 2019                   MORRISON & FOERSTER LLP

                                        By: /s/ *Jessica Kaufman*
                                             Jessica Kaufman


                                        Jessica Kaufman
                                        Tiffani Figueroa
                                        250 West 55th Street
                                        New York, New York 10019
                                        Telephone: (212) 468-8000
                                        jkaufman@mofo.com
                                        tfigueroa@mofo.com

                                        James R. McGuire (*pro hac vice*)
                                        Sarah Davis (*pro hac vice*)
                                        Lauren Wroblewski (*pro hac vice*)
                                        425 Market Street
                                        San Francisco, California
                                        Telephone: (415) 268-7000
                                        jmcguire@mofo.com
                                        sarahdavis@mofo.com
                                        lwroblewski@mofo.com

                                        *Attorneys for Defendant Capital One, N.A.*

9

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she caused a true and complete copy of the within

DEFENDANT CAPITAL ONE, N.A.'S OBJECTIONS TO EVIDENCE SUBMITTED IN

PLAINTIFF'S RESPONSE TO DEFENDANT CAPITAL ONE, N.A.'S STATEMENT OF

MATERIAL UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY

JUDGMENT AND STATEMENT OF ADDITIONAL FACTS, with supporting declaration and

exhibits, to be served via ECF and email on the following counsel of record:

Jeff Ostrow (pro hac vice)
Jonathan M. Streisfeld (pro hac vice)
Joshua R. Levine (pro hac vice)
Kopelowitz Ostrow Ferguson Weiselberg Gilbert
1 W Las Olas Blvd, Suite 500
Fort Lauderdale, Florida 33301
Telephone: (954)-525-4100
Email:  ostrow@kolawyers.com
Email:  streisfeld@kolawyers.com
Email: levine@kolawyers.com

Jeffrey D. Kaliel (pro hac vice)
Sophia Goren Gold
Kaliel PLLC
1875 Connecticut Ave. NW, 10th Floor
Washington, DC 20009
Telephone: 202-350-4783
Email: jkaliel@kalielpllc.com
Email: sgold@kalielpllc.com

Laurie Rubinow
Shepherd, Finkelman, Miller & Shah, LLC
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Email: lrubinow@sfmslaw.com

This 25th day of March, 2019.

/s/ *Jessica Kaufman*
Jessica Kaufman

sf-4002045