# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

TAWANNA M. ROBERTS, individually and on behalf
of all others similarly situated,

Plaintiff,

- against -

CAPITAL ONE, N.A.,

Defendant.

Case No. 1:16-cv-04841-LGS

# PLAINTIFF'S REPLY IN SUPPORT OF
## CROSS-MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ......................................................................................................... 1

ARGUMENT .............................................................................................................. 1

    I.    The Court Should Not Look to Extrinsic Evidence and Should Instead
        Apply *Contra Proferentem* ................................................................................ 1

        A.    The Court Must Interpret the Form Contract in a Way That Assigns It One
                Meaning for All Customers ................................................................ 1

        B.    The Court Should Apply *Contra Proferentem* ....................................... 2

        C.    Application of *contra proferentem* means Capital One's assessment of OD Fees
                on APPSN transactions breached its contract ...................................... 5

    II.    Even if the Court Were to Look to Extrinsic Evidence, It Is Not Compelling ....... 5

    III.    Ms. Roberts' Cross-Motion for Partial Summary Judgment Is Not Barred Due to
         Her Alleged "Nonperformance" ............................................................. 6

    IV.    Ms. Roberts Has Not Changed Her Position on the Meaning of the Contract to
         Avoid Summary Judgment and Judicial Estoppel Is Therefore Inapplicable ........... 8

    V.    Ms. Roberts Has Standing and Can Prove Damages ......................................... 10

CONCLUSION ........................................................................................................... 15

CERTIFICATE OF SERVICE ..................................................................................... 16

i

## **TABLE OF AUTHORITIES**

**Cases**                                                                                    **Page(s)**

*Albany Sav. Bank, FSB v. Halpin,*
   918 F. Supp. 553 (N.D.N.Y. 1996) ......................................................... 2

*Albany Sav. Bank, FSB v. Halpin,*
   117 F.3d 669 (2d Cir. 1997) .................................................................... 2

*Alexander & Alexander Servs., Inc. v. Underwriters at Lloyd's,*
   136 F.3d 82 (2d Cir. 1998) ...................................................................... 4

*AM Cosmetics Inc. v. Solomon,*
   67 F. Supp. 2d 312 (S.D.N.Y. 1999) ...................................................... 8

*Andy Warhol Found. for Visual Arts, Inc. v. Fed. Ins. Co.,*
   189 F.3d 208 (2d Cir. 1999) .................................................................... 5

*Aurora Loan Servs., LLC v. Condron,*
   181 Conn. App. 248, 266 n.13, 186 A.3d 708, 722 n. 13 (2018) .......... 2

*Bank of New York Tr. Co. v. Franklin Advisers, Inc.,*
   726 F.3d 269 (2d Cir. 2013) .................................................................... 2

*D'Amato v. Five Star Reporting, Inc.,*
   80 F. Supp. 3d 395 (E.D.N.Y. 2015) ..................................................... 2

*DeRosa v. Nat'l Envelope Corp.,*
   595 F.3d 99 (2d Cir. 2010) ................................................................. 8, 9

*Deutsche Bank AG v. AMBAC Credit Prod., LLC,*
   No. 04 CIV. 5594 (DLC), 2006 WL 1867497 (S.D.N.Y. July 6, 2006) ............................................. 4

*Flower City Painting Contractors, Inc. v. Gumina Const. Co.,*
   591 F.2d 162 (2d Cir. 1979) .................................................................... 4

*Guan N. v. N.Y. City Dep't of Educ.,*
   2014 U.S. Dist. LEXIS 44783 (S.D.N.Y. Mar. 24, 2014) ..................... 7

*Kaiser Aluminum Corp. v. Matheson,*
   681 A.2d 392 (Del. 1996) ........................................................................ 2

*LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp.,*
   424 F.3d 195 (2d Cir. 2005) .................................................................... 3

*Lebovits v. PHL Variable Ins. Co.,*
   199 F. Supp. 3d 678 (E.D.N.Y. 2016) ................................................... 4

*Medinol Ltd. v. Bos. Sci. Corp.,*
   346 F. Supp. 2d 575 (S.D.N.Y. 2004) ................................................... 8

*Roberts v. Capital One, N.A.*,
  719 F. Appx. 33, 35 (S.D.N.Y. 2017) ................................................................................ 14

*Seven-Up Bottling Co. Ltd. v. Pepsico, Inc.*,
  686 F. Supp. 1015 (S.D.N.Y. 1988) ................................................................................ 8

*Sharon Steel Corp. v. Chase Manhattan Bank, N.A.*,
  691 F.2d 1039 (2d Cir. 1982) ......................................................................................... 3

*Simon v. Safelite Glass Corp.*,
  128 F.3d 68 (2d Cir. 1997) ............................................................................................. 9

*Topps Co. v. Cadbury Stani S.A.I.C.*,
  526 F.3d 63 (2d Cir. 2008) ............................................................................................. 5

## Other

Restatement (First) of Contracts § 247, comment b ............................................................... 2

## INTRODUCTION

Extrinsic evidence of course of performance or industry practice cannot be used to cure a contractual ambiguity in a boilerplate contract with unsophisticated consumers. Because there is no basis to consider extrinsic evidence, the Court should apply *contra proferentem* and construe the agreement against Capital One, the drafter. Application of *contra proferentem* means Capital One's assessment of overdraft fees ("OD Fees") on the only transactions that have ever been at issue in this case—authorize positive, settle negative ("APPSN") transactions—was improper and summary judgment should be granted to Ms. Roberts as to liability on her breach of contract claim.

Moreover, Capital One's new argument that Ms. Roberts cannot state a claim for damages is wrong because it rests on a false dichotomy. Plaintiff has never argued that Capital One must determine OD Fees at authorization in all cases, only that it may not do so for the special subset of transactions at issue in the case given the words it used in its adhesion contract.  As such, Ms. Roberts would not be "worse off" if Capital One did what she argued it was required to do.

## ARGUMENT

I.  **The Court Should Not Look to Extrinsic Evidence and Should Instead Apply *Contra Proferentem***

A.  **The Court Must Interpret the Form Contract in a Way That Assigns It One Meaning for All Consumers**

Capital One's opposition to Ms. Roberts's Cross-Motion for Partial Summary Judgment ignores a basic tenant of contract law: in the context of a contract of adhesion, courts must strive to find *one* meaning, applicable to all consumers. The opposite conclusion makes no sense. Consider the real-world consequences: if the legality of Capital One's overdraft policies were dependent on its customer service telephone calls with each of its hundreds of thousands of customers, Capital One would be forced to adhere to hundreds of thousands of differing interpretations of its own form contract.  The variance would create tremendous uncertainty for both Capital One and consumers.

Here, Capital One only advocates for an individualized interpretation of its contract for tactical reasons specific to this litigation; practically, individualized contractual interpretation would be a nightmare for the Bank (and all banks).

The law recognizes that reality. As highlighted by the treatises and cases cited in Ms. Roberts's opening brief, the law recognizes boilerplate provisions must have a boilerplate meaning, applicable to all consumers. *See* Dkt. 104 at 12-13; *see also Bank of New York Tr. Co. v. Franklin Advisers, Inc.,* 726 F.3d 269, 276 (2d Cir. 2013) (applying New York law and noting "[Boilerplate] provisions are given a consistent, uniform interpretation because they do not depend upon particularized intentions of the parties[.]").[1]

## B.   The Court Should Apply *Contra Proferentem*

Given the need to ascribe one meaning to the contract's ambiguous terms—a meaning which would apply to Ms. Roberts and all other reasonable consumers—the Court must use the tools at its disposal to construe Capital One's ambiguous account agreement. Capital One is correct in one respect: *contra proferentem* is generally considered a principle of last resort. Here, however, there are no other relevant rules of construction to apply to provide a uniform meaning to the contract. While Capital One advocates for the application of two inapplicable legal principles—course of performance and industry practice—the facts here do not support the application of either.[2]

---

[1] *See also Kaiser Aluminum Corp. v. Matheson,* 681 A.2d 392, 398 (Del. 1996) (declining to rely on individualized extrinsic evidence as to the meaning of a boilerplate provision because such an analysis would "risk disuniformity"); *Aurora Loan Servs., LLC v. Condron,* 181 Conn. App. 248, 266 n.13, 186 A.3d 708, 722 n. 13 (2018) (uniform provisions "are afforded one uniform meaning rather than multiple inconsistent meanings" and noting the general irrelevance of extrinsic evidence in such contexts).

[2] Capital One's own cases explain why Capital One is wrong to suggest the Court necessarily must consider the extrinsic evidence offered by Capital One before applying *contra proferentem*. For example, in *D'Amato v. Five Star Reporting, Inc.,* 80 F. Supp. 3d 395, 412 (E.D.N.Y. 2015), the court explained "*contra proferentem* does not apply in situations where, as here, both parties are represented by counsel and have meaningful opportunities to negotiate contractual terms." That is not analogous to the facts here. Likewise, *Albany Sav. Bank, FSB v. Halpin,* 117 F.3d 669, 670 (2d Cir. 1997), did *not* involve a "uniform contract." Though that case happens to involve a transaction between a bank and a consumer, the consumer in that case executed a complex, individualized contract with the bank "after many months of negotiations." *See Albany Sav. Bank, FSB v. Halpin,* 918 F. Supp. 553, 556 (N.D.N.Y. 1996), *vacated,* 117 F.3d 669 (2d Cir. 1997); *see also Albany Sav. Bank, FSB v. Halpin,* 117 F.3d 669, 670 (2d Cir. 1997). Such negotiations did not occur here.

First, as explained in her Opening Brief and above, a *consumer's* course of performance is almost never relevant evidence in interpreting a contract of adhesion. This is true for at least two reasons. First, course of performance evidence is meant to provide insight into what the parties intended the contract to mean when they drafted it. But Ms. Roberts did not participate in negotiating or drafting the contract here. *See Sharon Steel Corp. v. Chase Manhattan Bank, N.A.,* 691 F.2d 1039, 1048 (2d Cir. 1982). Second, for the practical reasons explained in Subsection A, *supra*, a bank simply cannot function if it must be beholden to a consumer's subjective understanding of the contract, as evidenced by the consumer's course of performance.[3]

Nor is evidence of *Capital One's* course of performance compelling evidence of what the contract means to a reasonable consumer. Capital One argues the agreement means what the Bank says it means because the Bank always assessed OD Fees on APPSN transactions. But it simply does not matter how the Bank interpreted its own ambiguous contract. Put another way, the fact that the Bank breached its contract over and over again does not mean the Bank's interpretation of the contract is correct. If that were true, no consumer could ever challenge a bank's conduct as breaching an ambiguous contract term because the bank could *always* point to its repeated violations as "course of performance" evidence. That is not the law; the Bank cannot change the meaning of its contract on the fly. *See LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp.,* 424 F.3d 195, 208 n. 10 (2d Cir. 2005) (applying New York and law and noting that the "unilateral expression of one party's postcontractual subjective understanding of the terms of the agreement . . . was not probative as an aid to the interpretation of the contract").

Next, evidence of industry practice is equally inapplicable here. First, Capital One has failed to meet its burden of proving that a "widespread" industry practice even exists. Capital One's only

---

[3] This is apparently why Capital One included a provision in its Agreement barring the Court from considering course of performance evidence. *See* Dkt. 104 at 19-20.

support for its argument rests on commentary to a federal regulation, which does not purport to explain industry practice and is inconclusive. And Capital One's own employees were aware of differing industry practices.  *See* Dkt. 104 at 16-17.

Second, even if such an "industry practice" existed, it would not matter because reasonable consumers are not aware of it. Capital One does not point to a single case in which a court applied evidence of "industry practice" to interpret a contract of adhesion with unsophisticated consumers. Courts do not look to evidence of "industry practice" in contexts such as these because there is often no evidence that reasonable consumers were aware, or should have been aware, of such "industry practices."[4] That is especially true here. Indeed, Capital One readily admits that its supposed "industry practice" is derived from nothing more than the Federal Reserve's Official Commentary to Regulation E. *See* Dkt. 108 at 13. The absurdity of the argument is apparent on its face. Capital One presents no evidence that most consumers are aware of Regulation E—let alone the Official Commentary. Evidence of industry practice is only relevant when both parties have *reason to know of the usage* within the industry. *See Flower City Painting Contractors, Inc. v. Gumina Const. Co.,* 591 F.2d 162, 165 (2d Cir. 1979) ("[A] party cannot be bound by usage unless he either knows or has reason to know of its existence and nature.") (quoting  Restatement (First) of Contracts § 247, comment b); *Lebovits v. PHL Variable Ins. Co.,* 199 F. Supp. 3d 678, 681 (E.D.N.Y. 2016).[5] Capital One cannot present any evidence that a reasonable consumer ought to know the Official Commentary such that a reasonable consumer would understand that she would be charged OD Fees on APPSN transactions. In fact, the record evidence demonstrates the exact opposite—that consumers do *not* expect to be charged OD Fees on

---

[4] Plaintiff's prior quotation of the legal standard set forth by the Second Circuit in *Alexander & Alexander Servs., Inc.*, 136 F.3d 82, 86-87 (2d Cir. 1998), for determining whether an ambiguity exists in no way amounts to a concession that the use of "industry practice" evidence is appropriate here. *See* Dkt. 108 at 15.

[5] The first sentence of *Deutsche Bank AG v. AMBAC Credit Prod., LLC*, No. 04 CIV. 5594 (DLC), 2006 WL 1867497, at *1 (S.D.N.Y. July 6, 2006), explains why it is inapplicable here: "This is a dispute over a complex transaction between two sophisticated financial institutions." Unlike *Deutsche Bank*, and every other case Capital One cites, this is not a dispute between two sophisticated industry players, but rather a dispute between a bank and an unsophisticated consumer.

APPSN transactions. That is why the CFPB has warned that consumers are deceived by the practice, because they "likely had no reason to anticipate this practice, which was not appropriately disclosed." *See* Dkt. 104 at 5-6. The Bank's reliance on any so-called industry practice is therefore inappropriate here.

In sum, there is no relevant extrinsic evidence for the Court to construe the adhesion contract uniformly. Absent any such evidence, the Court should apply *contra proferentem* and construe the contract against Capital One. *See* Dkt. 104 at 13-15.

**C.    Application of *contra proferentem* means Capital One's assessment of OD Fees on APPSN transactions breached its contract**

Capital One next argues that application of *contra proferentem* results in the application of Capital One's preferred interpretation of the contract. But by definition, the Court cannot apply *contra proferentem* to rule *in favor* of the drafter. Capital One can point to no case in which a court has done such a thing. *Cf. Andy Warhol Found. for Visual Arts, Inc. v. Fed. Ins. Co.,* 189 F.3d 208, 215 (2d Cir. 1999) (agreements are strictly construed against the drafter because the drafter is "responsible for the ambiguity"). As discussed more fully in Section V, *infra*, Capital One's logic rests on a false dichotomy. If the Court applies *contra proferentem*, as it should, the Court must construe the contract as prohibiting the assessment of OD Fees on APPSN transactions. That interpretation would undoubtedly benefit Ms. Roberts.

**II.    Even if the Court Were to Look to Extrinsic Evidence, It Is Not Compelling**

For the reasons explained in her opening brief and above, the Court need not analyze any extrinsic evidence here. However, even if the Court were to examine such evidence, it does not decisively favor either party, and at best creates a triable issue of fact for the jury. *See Topps Co. v. Cadbury Stani S.A.I.C.,* 526 F.3d 63, 68 (2d Cir. 2008) ("To the extent the moving party's case hinges on ambiguous contract language, summary judgment may be granted only if the ambiguities may be resolved through extrinsic evidence that is itself capable of only one interpretation, or where there is

no extrinsic evidence that would support a resolution of these ambiguities in favor of the nonmoving party's case."). Here, even if they were relevant (they are not), the impact and effect of the various call recordings between Ms. Roberts and Capital One's customer service department—wherein Ms. Roberts complains about APPSN OD Fees, and, on at least one occasion, a bank representative told Ms. Roberts her understanding of the Bank's policies was correct and she should not have been charged an OD Fee on an APPSN transaction (*see* Dkt. 104 at 9-10)—is a fact question for the jury. Likewise, whether a reasonable consumer ought to be aware of the Official Commentary to Regulation E, or, on the other hand, whether the CFPB accurately summarized consumers' *unawareness* of any so-called "industry practice," is yet another question for the jury.

III.   **Ms. Roberts's Cross-Motion for PartialSummary Judgment Is Not Barred Due to Her Alleged "Nonperformance."**

Capital One also argues that summary judgment in favor of Ms. Roberts is improper because Ms. Roberts allegedly breached her contract by overdrafting while transactions were pending. In so arguing, Capital One concedes that "[o]verdrawing, e.g. making an ATM withdrawal that exceeds the customer's available balance while there are no debit card transactions or other ATM withdrawals pending, *is not a breach of the agreement*" but argues that "making such a withdrawal while there are outstanding unsettled debits is a breach." Dkt. 108 at 21 (emphasis added). The argument is specious. Capital One cannot explain how one type of overdraft is different from another one. And if the argument were correct, it would mean that Capital One has allowed Ms. Roberts to repeatedly breach the contract, dozens of times, with no consequence.

The contract language supports Ms. Roberts, stating that consumers agree "not to withdraw, write checks or make point of sale purchases against funds that are needed to pay ATM/Debit Card transactions that have not yet posted to her account." *See* Dkt. 108 at 21. That provision informs consumers that *subsequent* transactions drawn on held funds (the funds "needed to pay ATM/Debit Card transactions that have not yet posted") may result in an overdraft. This clause reiterates what is

true and what forms a basis of Ms. Roberts's claim:  that funds "held" for debit card transactions cannot be used for other purposes, including for later-made transactions. It is not a breach to overdraft the account when other funds are on hold for all the same reasons that it is not a breach to overdraft an account when funds are not on hold; it is simply the cause for use of the OD Fee service provided by Capital One.[6]

Next, there is no dispute that it is solely within Capital One's discretion to authorize overdrafts. Capital One uses memo posts—placing funds off limits for other transactions—and was therefore aware that such transactions were "pending" when it knowingly authorized and approved *new* transactions in amounts greater than Ms. Roberts's available balance. It was thus Capital One's decision to authorize those subsequent overdraft transactions, not Ms. Roberts's. *See* Dkt. 104 at 23. Capital One's decision cannot be imputed to Ms. Roberts as the basis of a contract breach.

Capital One now appears to argue that it does not reduce an available balance at authorization (the record is undisputed that it does); and that it does not use memo posts (the record is undisputed that is does). *See* Dkt. 106 at ¶3, 5, 54, 96.  Moreover, Capital One cannot deny that it was aware of pending debit card transactions when it authorized Ms. Roberts's subsequent ATM withdrawals. Capital One had complete control over the processing of all transactions, and if it thought this was a breach of contract, it could have simply set up its system to prohibit Ms. Roberts' supposed breach.[7]

Finally, Capital One is incorrect that Ms. Roberts did not inform the Bank of *its* breach. Capital One cites numerous instances of Ms. Roberts calling customer service arguing that OD Fees were improperly assessed and demanding a refund. As an unsophisticated consumer, Ms. Roberts did not

---

[6] Capital One has not responded to Ms. Roberts's argument that the alleged failure to repay the overdrafts does not bar her suit since that alleged breach occurred after Capital One's breach and therefore, the Court should consider this argument abandoned. *Guan N. v. N.Y. City Dep't of Educ.*, 2014 U.S. Dist. LEXIS 44783, at *30 (S.D.N.Y. Mar. 24, 2014) ("The Court will deem abandoned the due process claims that Plaintiffs did not address in their opposition brief.").

[7] Capital One argues it has to choose between charging OD Fees on APPSN transactions or violating its stated posting order by processing debit card transactions before cash withdrawals. *See* Dkt. 108 at 20–21. But there is no conflict between the two because Capital One could continue its stated ordering practice, but simply not charge overdraft fees when there are available funds at the time of authorization. There is no inconsistency.

use legal terms of art such as a "breach of the agreement," but the sum and substance of her calls was that she was charged an OD Fee when she should not have been. *Medinol Ltd. v. Bos. Sci. Corp.*, 346 F. Supp. 2d 575, 620 (S.D.N.Y. 2004) ("Notice [of a breach] need not be expressed in any magical formula such as a lawyer's letter."). In some cases, Capital One cured the breach by refunding or waiving the OD Fees. However, eventually she grew tired of the repeated breaches and filed suit. The fact that Ms. Roberts attempted to get Capital One to comply with its contractual obligations rather than immediately filing suit and finding a new bank did not constitute a waiver of Ms. Roberts's claims. "[A] party's reluctance to terminate a contract upon a breach and its attempts to encourage the breaching party to adhere to its obligations under the contract do not necessarily constitute a waiver of the innocent party's rights in the future." *AM Cosmetics Inc. v. Solomon*, 67 F. Supp. 2d 312, 318 (S.D.N.Y. 1999) (quoting *Seven-Up Bottling Co. Ltd. v. Pepsico, Inc.*, 686 F. Supp. 1015, 1023, (S.D.N.Y. 1988)). Thus, this Court should grant Ms. Roberts partial motion for summary judgment.

## IV.   Ms. Roberts Has Not Changed Her Position on the Meaning of the Contract to Avoid Summary Judgment and Judicial Estoppel Is Therefore Inapplicable.

Ms. Roberts has only ever taken a position on a single question in this litigation: whether debit card transactions authorized into a positive account balance could properly be assessed OD Fees under the contract. Her position on this question has been consistent: No. Her position has never been what Capital One now claims it is—that *all* transactions must, under the contract, be assessed OD Fees exclusively based on the account balance at authorization. Because Ms. Roberts has never purported to dictate a binary choice between assessing ODs based on account balances at authorization or settlement for all transactions, judicial estoppel is inapplicable.

"Typically, judicial estoppel will apply if: 1) a party's later position is 'clearly inconsistent' with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010).

"Because judicial estoppel is invoked to protect the integrity of the judicial process from the threat of inconsistent results, there *must be a true inconsistency* between the statements in the two proceedings. If the statements *can be reconciled* there is no occasion to apply an estoppel." *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 72-73 (2d Cir. 1997) (citations omitted) (emphasis added).

On summary judgment, this Court deals "with the narrower question of whether the statements can be reconciled, not whether a fact-finder would necessarily adopt the interpretation which reconciles them." *DeRosa*, 595 F.3d at 104. The Second Circuit "limit[s] judicial estoppel to situations where the risk of inconsistent results with its impact on judicial integrity *is certain*." *DeRosa*, 595 F.3d at 103 (internal quotations omitted) (emphasis added). Logically, it follows that if a prior statement can be reconciled with a current statement, judicial estoppel does not apply, and certainly it cannot be imposed on summary judgment where a factfinder could potentially adopt an interpretation that reconciles the two positions. Judicial estoppel is inappropriate here because Ms. Roberts's argument is the same now as it has been.

As is evident from the Complaint, this action only concerns a specific type of debit card transaction: debit card transactions authorized into a positive account balance. That situation is a unique and concerning enough situation that the Consumer Financial Protection Bureau has specifically warned that it can be deceptive. *See* Dkt. 104 at 5-6. Ms. Roberts has never made a claim about the propriety of OD Fees in *other* situations, much less purported to dictate Capital One's posting practice for each and every type of transaction.

Ms. Roberts has never argued that authorization is the only point that matters for *all* transactions. Rather, she claimed that for the particular subset of transactions at issue, a positive balance at authorization precluded OD Fees given the language Capital One inserted in the contract. That is all. All subsequent briefing in this Court and in the Second Circuit concerns only the special subset of transactions identified in the Complaint. Each brief in this Court and in the Second Circuit

has considered how to view the contract for these types of transactions exclusively. Never has the Bank's posting practice for other types of transactions and in other scenarios been at issue. Yet according to Capital One, "the case was reinstated only because she convinced the Second Circuit that it was a binary question—were overdraft determinations made at authorization or settlement—and that both were equally reasonable." Dkt. 108 at 6. Defendant's argument is a straw man and oversimplifies Ms. Roberts's breach of contract claim.

For the specific transactions at issue in the case, Ms. Roberts argues (and has always argued) that the Bank should make determinations based on account balance at authorization. The Second Circuit determined that the contract was ambiguous as to this specific question. But Ms. Roberts took no position on the propriety of fees for other types of transactions. If she had done so, she would have taken the position (discussed below) that Capital One should have adopted the construction most favorable to Ms. Roberts (the consumer and non-drafter of the ambiguous contract) in all circumstances. But she has not and need not do that.

Ms. Roberts generally conceded in the Second Circuit that for transactions that authorize negative *and* settle negative, OD Fees are *generally* permissible under the contract. But the specific contours of which "authorize negative" transactions may be assessed OD Fees has never been briefed or been evaluated by any court. Such a position is, again, not inconsistent with the position urged by Ms. Roberts: for the special debit card transactions at issue, a positive balance at authorization should bar OD Fees. At a minimum, this position is not so truly inconsistent that it cannot be reconciled as a matter of law. Thus, this Court should reject Capital One's argument that judicial estoppel bars Ms. Roberts's claim and grant Ms. Roberts's motion for partial summary judgment on the issue of liability on the breach of contract claim because the contract must be construed against Capital One.

## V.    Ms. Roberts Has Standing and Can Prove Damages

Capital One originally argued Ms. Roberts lacked "standing" based on two theories of

potential "offsetting benefits:" (1) an alleged, unproven, and unrelated debt to Capital One; and (2) a hypothetical world in which Capital One assessed OD Fees on all transactions authorized into a negative balance. In response, Ms. Roberts argued Capital One mixed up the concept of standing with the availability of damages—indeed, ample case law decisively establishes the potential existence of "offsetting benefits" cannot defeat standing. *See* Dkt. 104 at 27-29. Put simply, Ms. Roberts has standing because she paid OD Fees on APPSN transactions which are barred by the contract.[8]

In its latest brief, Capital One retreats from its original standing argument and now argues for the first time that Ms. Roberts's claims fail, and summary judgment should be granted to Capital One, because Ms. Roberts cannot prove damages. Capital One's new damages argument fails. With respect to the alleged unpaid debt, there is no evidence that Ms. Roberts still owes Capital One any debt.[9] If she owes the debt, she may sue to reduce it; if she does not, Capital One's argument is irrelevant. There is no record either way. Moreover, Capital One's potential counterclaim or damages offset is analytically distinct from Roberts' claim. In other words, at trial, Ms. Roberts is free to prove Capital One charged her too many OD Fees, and Capital One is free to prove Ms. Roberts is still indebted to the bank due to unrelated fees. Even assuming both parties prevail on their claims, summary judgment to either side is not warranted with respect to damages. The mere existence of one claim does not defeat the other.

With respect to its second argument, Capital One is wrong that Ms. Roberts would have been worse off if Capital One had interpreted the contract in the way she urges. To the extent that the Court must concern itself with other types of transactions not at issue in the Complaint—as Capital One is now insisting—there is no reason to depart from Capital One's current practices with respect

---

[8] Capital One half-heartedly argues Plaintiff's case law is inapplicable because supposedly Plaintiff was not "harmed by [the] practice" she challenges. That is wrong. Plaintiff was harmed by paying wrongful OD Fees.

[9] The fact that Ms. Roberts's balance was negative when the account was closed does not prove that she still owes an outstanding debt to Capital One.

to those transactions.

*First*, by claiming that if Ms. Roberts' is right, *all* OD Fee determinations must be made at the time of authorization, Capital One is trying to force the Court into a "heads I win, tails you lose" false dichotomy. If Ms. Roberts is right about APPSN transactions, according to Capital One, it may then adopt an entirely new contract interpretation that has nothing to do with the allegations in this case and allow it to do something it has never done—charge overdraft fees on transactions that authorize negative and settle positive. As discussed in Section IV, *supra*, this lawsuit has only ever concerned debit card transactions authorized into a *positive account balance*, and for which funds for settlement were set aside at that time. Ms. Roberts's consistent position is that for such transactions, the contract says OD Fees determinations will be based on the account balance at authorization. This makes common sense, as she has consistently argued, since the Bank places a "hold" on sufficient positive funds for those transactions at that time. If Capital One had used "held" funds to pay authorized transactions, she would not have incurred 259 additional OD Fees; she would have incurred *fewer* OD fees.

Capital One's new damages argument relies on convincing the Court that Ms. Roberts has made a far broader claim than she actually has: that for all transactions and at all times, OD Fee determinations must be made at authorization. But Ms. Roberts has never taken a position on when *other* types of transactions should be assessed OD Fees, nor is it necessary that she do so.

Naturally, then, the Second Circuit only considered the specific, discrete question posed by Plaintiff's claim: may Capital One assess OD Fees on APPSN transactions? The Second Circuit determined the contract language relevant to that specific question was ambiguous. The Second Circuit did not make an all-encompassing, sweeping pronouncement about the propriety of *all* of Capital One's OD Fees. It had one question before it, and it answered that one question, remanding the case for consideration of the merits of Ms. Roberts' claims. Capital One may not put words into the Second Circuit's mouth any more that in may put words into Plaintiff's mouth regarding the

meaning of the contract.

*Second*, the contract does not support Capital One's view that *all* negative authorization transactions could be assessed an OD Fee—rendering its hypothetical damages analysis totally implausible. To be clear, Ms. Roberts's position is no OD Fees may be charged on APPSN transactions. To Plaintiff, no other type of transaction is relevant. Assuming *arguendo* that she must take a position on what the meaning of the contract is for *other* types of debit card transactions—for example, transactions that authorize negative—it would be her position that for transactions that authorize negative and settle negative, fees are proper. And for transactions that authorize negative but settle positive—which Capital One claims entitles it to some sort of offset—the contract *prohibits* the imposition of OD Fees. Dkt. 104 at 31 and n.9. In fact, the contract contains a provision that specifically provides the right for a consumer to submit a deposit between the time authorization occurs and settlement occurs: "All credits to your account that are received by the close of our business day will be processed to your account first … After we have processed any credits to your account, we will process debits." *See* Dkt. 100-1 at 3 (CO_RBTS00000324).

Consider the following hypothetical: a consumer spends $100 on her debit card at 9 a.m. on Friday, bringing her account negative. At 10:00 a.m., the consumer deposits $200, bringing her account back positive. Later that afternoon, the debit card transaction settles. Because the balance was negative at authorization, but positive at settlement, under Capital One's damages analysis, the consumer would be charged an OD Fee. But the imposition of a fee in this instance would seemingly violate Capital One's contractual promise to "process" credits before debits and reasonable consumers' expectations of the same.

Moreover, the phrase upon which the Second Circuit focused—"We may … elect to pay … items drawn … against your account for an amount in excess of your available balance (an 'Overdraft')"—indicates that an overdraft can *only* occur when they are authorized into a negative

balance. *Roberts v. Capital One, N.A.*, 719 F. Appx. 33, 35 (S.D.N.Y. 2017). But it does not say *all* such transactions will be assessed OD Fees, since language shortly after in the contract states "[y]ou can avoid Overdrafts … by always making sure that you have sufficient available funds in your account to cover all of the debits presented for payment against your account."  This provision distinguishes "elect to pay" with "presented for payment," and indicates that a consumer may cover an overdraft prior to "presentment for payment." And the provision "[y]ou agree not to withdraw, write checks or make point of sale purchases against funds that are needed to pay ATM/Debit Card transactions that have not yet posted against your account," Dkt. 98, ¶ 21, also indicates a covering deposit can be made to avoid OD Fees on transactions that initially authorize into negative funds. In short, while is true that Capital One's contract explicitly restricts potential overdrafts to those debit card transactions (and only those transactions) that exceed a consumer's available balance at the time of authorization— when the bank "elects to pay" the charge—negative authorization is a *necessary but not sufficient condition* for valid OD Fee assessment.

    At the very least, the relevant phrases at issue are ambiguous, which means by definition they are subject to differing meanings; they certainly can be subject to differing meanings for different types of transactions, especially if doing so would benefit the consumer. The Second Circuit found Ms. Robert's interpretation reasonable: "it is equally reasonable to understand the term 'Overdraft' as referring to Capital One's election to make a payment, which would occur at the time of authorization (as asserted by [Ms.] Roberts), or as referring to the payment itself, which would occur at the time of settlement (as asserted by Capital One). *Roberts*, 719 F. Appx. at 36. Because this fundamental definition is "subject to more than one reasonable interpretation," it is ambiguous.  Applying *contra proferentem*, as the Court should, Ms. Roberts's interpretation prevails. And, of course, this is exactly how Capital One construed the contract for years with respect to transactions that are authorized on a negative balance. Ms. Roberts has never urged otherwise.

*Third*, Capital One's argument presents an unreasonable interpretation of its ambiguous contract. While Capital One argues that Plaintiff does not challenge the "fact" that she would have been assessed 259 more OD Fees, that is not true. Plaintiff maintains that Capital One's hypothetical version of events is entirely implausible. *See* Dkt. 104 at 32 and *supra*. No reasonable person would construe the contract to allow an interpretation that allowed a cash-strapped customer to incur 259 OD Fees. Moreover, that hypothetical policy is not one that Capital One's systems were even capable of supporting. Dkt. 104 at 32.

## CONCLUSION

Based on the arguments in Ms. Roberts's Opening Brief and above, the Court should grant her partial summary judgment, construing the account agreement in her favor as not permitting OD Fees on APPSN transactions.

Dated:  April 1, 2019

*By: /s/ Jonathan Streisfeld*
Jonathan M. Streisfeld (*pro hac vice*)
Jeff Ostrow (*pro hac vice*)
Joshua R. Levine (*pro hac vice*)
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
One West Las Olas Boulevard, Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-525-4100
Facsimile: 954-525-4300
*streisfeld@kolawyers.com*
*ostrow@kolawyers.com*

Jeffrey D. Kaliel (*pro hac vice*)
Sophia G. Gold (*pro hac vice pending*)
**KALIEL PLLC**
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C.  20009
(202) 350-4783
*jkaliel@kalielpll.com*
*sgold@kalielpllc.com*

## <u>CERTIFICATE OF SERVICE</u>

I, Jonathan M. Streisfeld, hereby certify that on April 1, 2019, caused the foregoing to be

served via CM/ECF and email on the following counsel of record:

James R. McGuire (pro hac vice)
Sarah N. Davis (pro hac vice)
Lauren Wroblewski (pro hac vice)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California
Telephone: (415) 268-7000
jmcguire@mofo.com
sarahdavis@mofo.com
lwroblewski@mofo.com

Jessica L. Kaufman
Tiffani B. Figueroa
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
jkaufman@mofo.com

*Attorneys for Defendant Capital One, N.A.*

*/s/ Jonathan M. Streisfeld*
Jonathan M. Streisfeld