UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TAWANNA M. ROBERTS, on behalf of herself and all others similarly situated,<br><br>                                                            Plaintiff,<br><br>                    - against -<br><br>CAPITAL ONE, N.A.,<br><br>                                                            Defendant. | No. 16 Civ. 4841 (LGS) |

**DEFENDANT CAPITAL ONE, N.A.'S MEMORANDUM OF
LAW IN SUPPORT OF ITS MOTION FOR RECONSIDERATION**

sf-4042866

## TABLE OF CONTENTS

                                                              **Page**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT .................................................................................................................................... 2

I.     THE COURT CLEARLY ERRED IN FINDING A GENUINE DISPUTE REGARDING THE INDUSTRY CUSTOM AND PRACTICE EVIDENCE ................. 2

II.    THE COURT ERRED IN CONCLUDING THAT PLAINTIFF SUFFERED DAMAGES UNDER A THEORY INCONSISTENT WITH THE SECOND CIRCUIT'S RULING IN THIS CASE ................................................................................ 5

III.   THE AMOUNT OF FEES PLAINTIFF OWED UNDER HER INTERPRETATION OF THE ACCOUNT AGREEMENTS IS NOT HYPOTHETICAL, BUT CONTRACTUAL ..................................................................... 7

IV.   THE COURT DID NOT CONSIDER THE ACTUAL CONDUCT CONSTITUTING PLAINTIFF'S NONPERFORMANCE ............................................. 9

CONCLUSION ............................................................................................................................... 10

sf-4042866

-ii-

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.*,
   727 F. Supp. 2d 256 (S.D.N.Y. 2010) ................................................................................. 6

*D. Owens Elec., Inc. v. J.W. Mays, Inc.*,
   61 Misc. 3d 1225(A), 2018 NY Slip Op 51791(U), (Sup. Ct. Dutchess Cnty.
   2018) ................................................................................................................................. 7

*Freund v. Wash. Square Press, Inc.*,
   34 N.Y.2d 379, 357 N.Y.S.2d 857 (1974) ......................................................................... 6

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*,
   729 F.3d 99 (2d Cir. 2013) ................................................................................................ 2

*Roberts v. Capital One, N.A.*,
   719 F. App'x 33 (2d Cir. 2017) .................................................................................... 3, 5

*St. Lawrence Factory Stores v. Ogdensburg Bridge & Port Auth.*,
   121 A.D.3d 1226, 994 N.Y.S.2d 704 (2014) .................................................................... 7

**Other Authorities**

Local Rule 6.3 ............................................................................................................................... 2

## INTRODUCTION

On June 25, 2019, the Court denied Capital One, N.A.'s motion for summary judgment. Capital One respectfully submits that the order should be reconsidered pursuant to Local Rule 6.3 because there are clear errors underlying key portions of the Court's analysis.

First, the Court's identification of a factual dispute over industry custom and practice evidence was clear error. The central question before the Court was whether extrinsic evidence could resolve the contractual ambiguity regarding when overdrafts occur. The Court stated that "custom and practice evidence" was "where the Second Circuit was directing us to go," but that the evidence of industry custom was "not so compelling and clear cut as to warrant summary judgment." The Court's finding of a genuine factual dispute as to custom and practice was unsupported by the record. Neither the Plaintiff nor the Court's analysis points to a single piece of admissible evidence that *any* financial institution makes overdraft determinations at authorization. There is no genuine dispute here: the evidence that banks make overdraft decisions at payment is, in fact, "so one-sided that no reasonable person could decide" that Plaintiff's contract means otherwise.

Second, the Court's conclusion, in connection with the damages argument, that Plaintiff can establish a claim founded on using different overdraft definitions when it suits her is inconsistent with the Second Circuit's decision in this case. While the Second Circuit held that the overdraft definition in the Account Agreements was ambiguous as to when an overdraft occurs (i.e., at authorization or at settlement), it did not hold that the contract could be read to supply different, flexible definitions on an item-by-item basis to minimize the fees of any particular customer. Because New York law requires the Court to consider the costs that Plaintiff would have incurred under her interpretation of the contract and the consistent

sf-4042866

application of an "authorization" overdraft definition would have resulted in thousands of dollars more in overdraft fees, Plaintiff was not damaged by Capital One's use of the "settlement" definition.

Third, the Court's finding that the substantial incremental fees Plaintiff would have incurred under an "authorization" reading of the agreements was speculative hinged on a misreading of the applicable contract language. Capital One reserved (already exercised) discretion to pay items into overdraft, not to charge overdraft fees.

Finally, the Court erred in concluding that Plaintiff's non-performance was uncertain because it did not address the breach of the express promise in the Electronic Funds Transfer Agreement not to use funds needed to pay ATM/Debit Card transactions that had not yet posted. Since a transaction cannot authorize positive and settle negative unless the customer breaches this promise, Plaintiff's breach caused all of the challenged fees, confirming that Plaintiff did not substantially perform and barring her contract claim.

Each of these errors independently warrants reconsideration: the Court should have granted summary judgment in Capital One's favor on all claims.

## ARGUMENT

Local Civil Rule 6.3 allows reconsideration of a court's order on matters or controlling decisions a party believes the court has overlooked. E.D.N.Y. L.R. 6.3. A motion for reconsideration should be granted where "the defendant identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (citation omitted).

I. **THE COURT CLEARLY ERRED IN FINDING A GENUINE DISPUTE REGARDING THE INDUSTRY CUSTOM AND PRACTICE EVIDENCE.**

The Court stated that the "more pertinent" evidence in resolving the meaning of the Account Agreements is industry custom. (June 25, 2019 Tr. at 27:2-3.) It then explained that while Capital One identified a number of banks that assess overdraft fees at settlement and a Federal Reserve statement acknowledging that it is the typical practice, Plaintiff pointed to CFPB guidance condemning APSN overdraft fees and "I think, examples of banks that charge overdraft fees at authorization." (*Id.* at 27:4-10). On that basis, the Court concluded that "the custom and practice evidence … is not so compelling and so clear cut as to warrant summary judgment." (*Id.* at 27:12-15.) Contrary to the Court's finding, however, Plaintiff did not identify even *one* bank that charges overdraft fees based on a customer's balance at authorization instead of at payment. Nor did the CFPB. To Capital One's knowledge, there are none.

Plaintiff identified only three pieces of evidence: the CFPB guidance and two Capital One email strings, (ECF Nos. 107-11 & 107-13), as purported admissible evidence that it is not industry standard for banks to assess overdraft fees at settlement—none of which controverts Capital One's evidence. (ECF No. 106 ("Pl.'s Resp.") ¶ 96; June 25, 2019 Tr. at 13:19-14:2.)

The CFPB guidance, which opines that a bank's *failure to disclose* that it charges overdraft fees on APSN transactions may be deceptive, demonstrates that industry custom and practice is as Capital One describes (overdraft fees are charged at settlement). (*See* Pl.'s Resp. ¶ 28.) The CFPB guidance did not state that any banks assess overdraft fees at authorization.

The two cited emails, Exhibits 11 and 13, likewise neither identify any bank that assesses overdraft fees at authorization nor support an inference that any bank follows that practice. To start, Exhibits 11 and 13 do not say anything about when overdraft fees are assessed. As to Exhibit 11, the language Plaintiff identifies, (Pl.'s Resp. ¶ 96), discusses when Capital One and other, unidentified banks *debit* consumers' account balances; it is silent as to when and whether

those other banks decide to assess overdraft fees. (*See* ECF No. 107 ("Streisfeld Decl."), Ex. 11 at CO_RBTS00010168 ("Capital One: Debit card transactions applied to balance at settlement, not authorization; no adverse fee impact of debit holds . . . Industry Standard: Some apply debit transactions at authorization, even for debit holds that may exceed final tranx amount (Fed will prohibit latter)"); *id.* at CO_RBTS00010183 ("Some banks debit a consumer's actual account balance at debit authorization, removing the 'float' associated with delayed settlement and creating the possibility of undue fees.").) The language in Exhibit 13 cited by Plaintiff—"[t]he fact that we don't debit the account on authorization, rather at settlement, came up as a big dissatisfier"—similarly says nothing about when other banks make overdraft determinations or assess fees. (*See id.*, Ex. 13 at CO_RBTS0011984.)

It is unclear what Exhibits 11 and 13 mean, because, among other things, Plaintiff never deposed anyone who could testify as to the statements they contain. The Court should not have considered them in determining whether a disputed issue of fact exists because they are patently inadmissible. Capital One made numerous objections to the admissibility of the exhibits on which the Court did not rule. (ECF No. 111 ("Capital One's Objs.") at 5-8; *see* ECF No. 109 ¶ 96.) Capital One does not repeat those objections here, but asks that the Court rule upon them.

In contrast to the complete absence of evidence from Plaintiff, Capital One pointed to: (1) numerous federal regulations and commentaries describing the industry practice of assessing overdraft fees at payment, not authorization, and the fact that Regulation E's model overdraft opt-in form states that overdrafts occur at payment (*see* ECF No. 97 (Def.'s Mem.") at 7-9 (citing ECF No. 98 ("SOF") ¶¶ 27-34); ECF No. 108 ("Def.'s Reply Mem.") at 13-14); (2) numerous complaints filed by Plaintiff's counsel alleging that the country's biggest banks charge overdraft fees at settlement, not authorization, (Def.'s Mem. at 18 n.12); (3) testimony from a

Capital One employee that she was unaware of any banks that made overdraft determinations at authorization, (ECF No. 110 ("Kaufman Reply Decl."), Ex. K at 168:8-169:19); and (4) Capital One's own practice of determining whether to assess overdraft fees at the time an item was paid from the customer's account (*see* Def.'s Mem. at 7 (citing SOF ¶ 26)).

Once the incorrect conclusion that Plaintiff provided examples of banks that charge overdraft fees at authorization is set aside, it is clear that here there was no disputed issue of fact regarding the industry custom and practice. Instead, that evidence was "so one-sided" in favor of Capital One's interpretation of the Account Agreements or, to put it another way, entirely lacking in favor of Plaintiff's interpretation, that summary judgment should have been granted for Capital One on Plaintiff's breach of contract claim. (June 25, 2019 Tr. at 25:21-22.)

II.  **THE COURT ERRED IN CONCLUDING THAT PLAINTIFF SUFFERED DAMAGES UNDER A THEORY INCONSISTENT WITH THE SECOND CIRCUIT'S RULING IN THIS CASE.**

The Second Circuit noted that the "key provision in this appeal is the first sentence of the Deposit Agreement's 'overdraft' provision . . . ." *Roberts v. Capital One, N.A.*, 719 F. App'x 33, 35 (2d Cir. 2017). The court held that "it is equally reasonable to understand the term 'Overdraft' as referring to Capital One's election to make a payment, which would occur at the time of authorization (as asserted by Roberts), or as referring to the payment itself, which would occur at the time of settlement (as asserted by Capital One)." *Id.* at 36.

Before the Second Circuit, Plaintiff repeatedly acknowledged that the interpretation questions presented a binary choice and argued that the Account Agreements required overdraft determinations to be made at authorization instead of settlement. (Def.'s Reply Mem. at 6-7.) On remand, though, Plaintiff embraces an "authorization" reading of the overdraft definition for her seven "authorized positive settled negative" transactions, but for the hundreds of transactions that "authorized *negative* settled positive," she adopts a "settlement" reading of that definition.

When asked about such transactions at oral argument, Plaintiff's counsel invoked Capital One's posting order *at settlement* to claim such transactions were not overdrafts. (June 25, 2019 Tr. at 18:14-23, 19:6-9.) There is nothing in the Second Circuit opinion to suggest that the contracts could reasonably be read to toggle back and forth between "authorization" and "settlement" overdraft definitions to minimize the number of overdraft fees. As Plaintiff's counsel conceded at oral argument, under the Second Circuit opinion and governing law, the agreements can only be read to afford a single overdraft definition for *all transactions* of *all customers*. (*See* June 25, 2019 Tr. at 11:13-15 ("[T]he court has to find one *uniform, consistent meaning* of a form contract as a matter of law that would be applicable to *all consumers* . . . .") (emphasis added).)

In rejecting Capital One's argument that Plaintiff was not damaged, the Court stated "[Plaintiff] is not arguing for a contract interpretation where overdraft fees must be assessed at authorization in lieu of at settlement, but simply that Capital One is not authorized to charge overdraft fees at settlement." (*Id.* at 28:19-23). The Court correctly characterizes Plaintiff's argument, but the Second Circuit decision does not permit Plaintiff to ignore the consequences of consistent application of an "authorization" definition of overdraft. To contest Capital One's use of the "settlement" definition of overdraft in assessing fees, Plaintiff must show that use of the "authorization" definition would have left her better off. It is black letter law that "the injured party should not recover more from the breach than he would have gained had the contract been fully performed." *Freund v. Wash. Square Press, Inc.*, 34 N.Y.2d 379, 382, 357 N.Y.S.2d 857, 860 (1974); *see Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.*, 727 F. Supp. 2d 256, 287 (S.D.N.Y. 2010) ("Federal courts in this Circuit and New York state courts consistently have held that damages otherwise recoverable for breach of contract must be reduced by any cost savings realized by an injured party as a result of another party's breach."). Ignoring the costs

that Plaintiff would have incurred if the contracts had been performed using an "authorization" definition would give her an impermissible windfall. (Def.'s Mem. at 15 (citing *St. Lawrence Factory Stores v. Ogdensburg Bridge & Port Auth.*, 121 A.D.3d 1226, 1227, 994 N.Y.S.2d 704, 705-706 (2014) (noting that it is "fundamental that the injured party should not recover more from the breach than [it] would have gained had the contract been fully performed."))); *see also D. Owens Elec., Inc. v. J.W. Mays, Inc.*, 61 Misc. 3d 1225(A), 2018 NY Slip Op 51791(U), at *12, (Sup. Ct. Dutchess Cnty. 2018) ("In New York, windfalls and duplicative recoveries are prohibited.").

Thus, the Court should have evaluated the costs to Plaintiff of an "authorization" definition of overdraft versus her costs resulting from Capital One's use of the "settlement" definition. Here, under Plaintiff's own expert analysis, she would have incurred as many as 252 *more* overdraft fees if overdrafts were determined at authorization instead of at settlement.[1] Plaintiff has failed to establish that she was damaged under the only alternative reading of the contract available to her. Summary judgment should have been granted in favor of Capital One.

### III. THE AMOUNT OF FEES PLAINTIFF OWED UNDER HER INTERPRETATION OF THE ACCOUNT AGREEMENTS IS NOT HYPOTHETICAL, BUT CONTRACTUAL.

The Court declined to consider the additional fees Plaintiff would have incurred under an "authorization" reading of the overdraft definition on the ground that the Account Agreements "repeatedly state that whether Capital One actually assesses a fee for an overdraft is within the bank's discretion," (June 25, 2019 Tr. at 29:1-3), and that "given defendant's discretion, it is hypothetical how many fees plaintiff would have incurred if her interpretation of the contracts prevailed," (*id.* at 29:7-9). This conclusion is based on a false premise—the Account

---

[1] All 259 authorize negative, settle positive transactions necessarily occurred when Plaintiff was opted into overdraft services for her debit card, because Capital One will not authorize a debit card transaction into a negative balance unless the customer is opted in. (SOF ¶ 12.)

Agreements do not afford Capital One discretion to assess a fee; they afford discretion to pay an item that creates or increases an overdraft.  (*See, e.g.*, ECF No. 100 ("Morgan Decl."), Ex. 1 at CO_RBTS00000325 ("[O]ur decision to pay Overdraft items is solely within our discretion."); *id.*, Ex. 2 at CO_RBTS00000334 (same).)

> Overdraft fee assessments are automatic and owed once an overdraft occurs:
>
> You understand and agree that if we elect to pay Overdraft items or to permit an Overdraft to exist in your account, *you have no right to defer payment, and you must deposit additional funds into your account promptly* in an amount sufficient to cover the Overdraft *and to pay us Overdraft fees for each Overdraft item* in accordance with our current Schedule of Fees and Charges.

(Morgan Decl., Ex. 1 at CO_RBTS00000325 (emphasis added); Ex. 2 at CO_RBTS00000334.)

The discretionary language in the Account Agreements does not cure the Court's error.  Capital One's discretion to permit an overdraft does not inject any uncertainty into the damages analysis.  As an historical matter, Capital One already exercised its discretion in deciding to authorize or pay Plaintiff's overdraft transactions.  Thus, the only open question is whether the Court can determine the number of overdrafts that occurred under Plaintiff's interpretation of the contract.  (*See* June 25, 2019 Tr. at 29:1-14.)  Plaintiff's expert identified 259 such transactions that authorized into a negative account balance and did not incur overdraft fees.  (Def.'s Mem. at 16 (citing SOF ¶ 87).)  Thus, contrary to the Court's conclusion, the damages question here truly is "a simple question of arithmetic."  (June 25, 2019 Tr. at 29:10-11.)  Because the Account Agreements plainly obligate Plaintiff to pay overdraft fees for any overdraft items (subject to enumerated exceptions), and because Plaintiff's own expert's

///

///

///

///

methodology showed that Plaintiff would have incurred hundreds of more fees if overdrafts have been consistently determined at authorization, Defendant's showing was not "unfounded."[2]

Moreover, even if Capital One did reserve discretion as to whether it would charge an overdraft fee, it is not plausible that it would choose not to charge or to waive a contractually provided for fee over 250 times. First, the undisputed evidence demonstrates that Capital One assessed an overdraft fee each time it understood it was contractually authorized to do so. (*See, e.g.*, ECF No. 99 ("Kaufman Decl.") Ex. G at ROBERTS 00022-23 (assessing overdraft fees for each transaction that settled negative), ROBERTS 00038 (same).) There is no basis to indicate that Capital One would change its conduct if the overdraft determinations were made at authorization, instead of at settlement. Second, there is also no evidence that Capital One would waive that many fees either. Plaintiff's statements show that Capital One only waived or reversed approximately 22% of its assessed overdraft fees. (Kaufman Decl., Ex. E at Ex. 5.) For Plaintiff to state a claim for damages, it needs to be plausible that Capital One would have waived 253 out of 259 overdraft fees, or 98% of its fees. There is no basis to conclude that Capital One would do so. Thus, the undisputed evidence showed that Plaintiff was not damaged by Capital One's use of a "settlement" definition of overdraft. The Court should have entered summary judgment in Capital One's favor on all Plaintiff's claims.

### IV.  THE COURT DID NOT CONSIDER THE ACTUAL CONDUCT CONSTITUTING PLAINTIFF'S NONPERFORMANCE.

In finding that Plaintiff's "nonperformance is far from certain," the Court failed to consider Capital One's argument that Plaintiff's breach of an explicit provision in her Account Agreement triggered the disputed fees. (Def.'s Mem. at 22-24.) Plaintiff agreed "not to withdraw, write checks or make point of sale purchases *against funds that are needed to pay*

---

[2] If Plaintiff's expert analysis is too speculative to identify "overdrafts" under Plaintiff's interpretation of the contract, it is necessarily also too speculative to establish Plaintiff's purported damages. Either way, Plaintiff cannot establish that she was damaged.

*ATM/Debit Card transactions that have not yet posted against [her] account.*"  (Morgan Decl., Ex. 2 at CO_RBTS00000283, CO_RBTS00000301 (emphasis added).)  Despite this express promise, Plaintiff withdrew the funds needed to pay for all of the transactions at-issue.  (Def.'s Mem. at 22-24; SOF ¶ 85.)  If she had not done so, the transactions at issue would not have settled into negative funds, and simply put, we would not be here before the Court.  When the Court determined that the inferences pertaining to whether Plaintiff substantially performed were uncertain, it did not consider this explicit breach or Capital One's argument.  Instead, the Court considered only that Plaintiff "repeatedly and intentionally overdrew her account," which, while true, is not an explicit breach of her Account Agreements with Capital One.  (June 25, 2019 Tr. at 30:3-5.)  Because Plaintiff's breach of an express agreement with Capital One triggered the fees at issue, Plaintiff's nonperformance is certain and bars her claims.

## CONCLUSION

For all the reasons set forth in Capital One's briefing in support of its motion for summary judgment and in opposition to Plaintiff's cross-motion for summary judgment, as well as the reasons detailed above, Capital One respectfully requests that the Court reconsider its ruling on Capital One's motion for summary judgment and enter judgment in its favor.

-11-

| | |
|---|---|
| Dated: July 16, 2019 | MORRISON & FOERSTER LLP |
| | By: /s/ *Jessica Kaufman* |
| |      Jessica Kaufman |

Jessica Kaufman
Tiffani Figueroa
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
jkaufman@mofo.com
tfigueroa@mofo.com

James R. McGuire (*pro hac vice*)
Sarah Davis (*pro hac vice*)
Lauren Erker (*pro hac vice*)
425 Market Street
San Francisco, California
Telephone: (415) 268-7000
jmcguire@mofo.com
sarahdavis@mofo.com
lerker@mofo.com

*Attorneys for Defendant Capital One, N.A.*