# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

TAWANNA M. ROBERTS, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

CAPITAL ONE, N.A.,

Defendant.

Case No. 1:16-cv-04841-LGS

# PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT CAPITAL ONE, N.A.'S MOTION FOR RECONSIDERATION

## I.   INTRODUCTION

Defendant's motion for reconsideration does nothing but rehash the same arguments already considered and rejected by this Court in its ruling on summary judgment. Contrary to L.R. 6.3, Defendant does not cite to any intervening change of controlling law, the availability of new evidence, or any clear error or manifest injustice. There is therefore no basis for this Court to reconsider its previous order denying Defendant's motion for summary judgment on Plaintiff's breach of contract claim. Moreover, Defendant does not raise any argument as to why summary judgment should be reconsidered on the GBL §349 claim, but merely makes a cursory statement that summary judgment should be granted "on all claims." Because the motion for reconsideration is both procedurally and substantively deficient, this Court should deny the motion.

## II.   LEGAL STANDARD

As this Court has explained, a motion for reconsideration should only be granted in exceptional circumstances, none of which are present here.

> A motion for reconsideration should be granted only when the defendant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice. It is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple.

*Pfizer, Inc. v. United States*, 2017 U.S. Dist. LEXIS 103002, at *1-2 (S.D.N.Y. June 30, 2017) (Schofield, J.) (internal citations and quotations omitted); *see also Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) ("[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided."); *Sea Trade Mar. Corp. v. Coutsodontis*, 2013 U.S. Dist. LEXIS 104297, at *3-4 (S.D.N.Y. July 23, 2013) (Schofield, J.) ("[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." (alteration in original); *City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*, No. 17 Civ. 10014 (LGS), 2019 WL 2136902, at *1 (S.D.N.Y. May 16, 2019) (denying a motion for reconsideration where "[t]he Court already considered Defendants' arguments").

As explained further below, Defendant does not meet this exacting standard.

### III.   THE COURT DID NOT ERR IN DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BASED ON INDUSTRY CUSTOM AND PRACTICE EVIDENCE.

Contrary to the standard applied in this Court, Defendant seeks only to relitigate issues already considered and rejected. Moreover, even on the merits, the Court correctly found disputed issues of fact regarding whether there is a uniform custom and practice in the banking industry on when overdraft fees are assessed. Further, even if Defendant met its burden of showing that its custom and practice is fixed and invariable in the banking industry, it did not even attempt to point to any evidence in its motion, or in response to Ms. Robert's cross-motion, to show that she was actually aware of this practice or that it was so notorious that she should have been aware of it. For these reasons, Ms. Roberts stands by her position that the alleged industry practice evidence is immaterial to the contract construction issues presented in the parties' summary judgment motions and this Court should reject Defendant's arguments and deny the motion.

Initially, as introduced above, this Court should reject the motion for reconsideration because it simply attempts to re-litigate an argument already raised and correctly rejected. (ECF No. 108 at p 13–14). Simply put, this is not the purpose of reconsideration. *Shrader*, 70 F.3d at 257). Here, Defendant fails to point to any intervening, controlling case law or newly-available evidence. Ms. Roberts responded to Defendant's "industry practice" arguments in her briefs and at the hearing and stands on the arguments already raised in opposition to this point. (ECF No. 104 at 20–27; ECF No. 115 at 9–10). Because the mere re-litigation of points already considered and decided is not proper for a motion for reconsideration under L.R. 6.3, this Court should deny the motion.

If the Court entertains Defendant's re-argument regarding the sufficiency of the industry practice evidence, Plaintiff reminds the Court of the following:  First, Defendant has failed to meet its burden of demonstrating that any alleged industry practice exists. To begin with, Defendant's continued reliance on the Federal Reserve's commentary to Regulation E is misplaced. The

commentary never says that banks and credit unions uniformly charge overdraft fees on APPSN transactions or that consumers are aware of this practice.  But even accepting Capital One's strained interpretation of the commentary as true, it would not matter because it is contradicted by both internal Capital One documents and the CFPB.

With respect to the internal Capital One documents (attached to Plaintiff's opposition as Exhibits 11 and 13), Capital One argues Plaintiff misinterprets these documents and objects to their admissibility. Plaintiff has already addressed each of these arguments in her reply brief and in her response to Defendant's objections. (*See* ECF No. 104 at 17; ECF No. 116). Plaintiff will not burden the Court by repeating those arguments here. Suffice to say, the parties' disagreement over the meaning of those exhibits does not eliminate consideration of them, only the potential for credibility determinations at trial. Drawing all reasonable inferences in Ms. Roberts's favor, as the Court must, the Court did not commit "clear error" by concluding "the custom and practice evidence … is not so compelling and so clear cut as to warrant summary judgment." (ECF No. 131 at 27:12-15).

Beyond the federal commentary already considered by this Court, Defendant cites three other pieces of "evidence" to demonstrate a supposed industry practice. None are persuasive. First, the existence of a handful of other lawsuits filed by Plaintiff's counsel does not demonstrate an industry practice. It merely demonstrates that a handful of other banks may breach their contracts, too. Second, it is immaterial that an employee of Defendant is purportedly unaware of any banks that decide whether to assess overdraft fees at the time of authorization. That subjective and self-serving opinion is not evidence. Finally, Defendant's own challenged practice does not aid the Court in finding that it is the undisputed industry custom to make overdraft fee decisions at the time of settlement. That is the ultimate merits question of whether Defendant breached the contract.

Moreover, Defendant fails to provide any evidence that ordinary consumers are aware—or should be aware—of any so-called industry practice. In other words, even if Defendant could prove

the existence of an "industry practice" (it cannot, because as Capital One acknowledged internally, the industry is mixed), it would not matter matter because reasonable consumers—**including** **Capital One's own employees**—are not aware of the practice. As previously argued to the Court, "[u]nder New York law, the party seeking to establish custom and practice must put forward competent evidence that creates a genuine dispute of material fact as to whether '(1) the term in question has a fixed and invariable usage **and** (2) that the party sought to be bound was aware of the custom or that the custom's existence was so notorious that it should have been aware of it.'" *Carlton Grp., Ltd. v. Mirabella SG SpA*, 2019 U.S. Dist. LEXIS 12481, at *9 (S.D.N.Y. Jan. 25, 2019) (Schofield, J.) (quoting *SR Int'l Bus. Ins. Co., Ltd. v. World Trade Ctr. Properties, LLC*, 467 F.3d 107, 134 (2d Cir. 2006) (emphasis added). When a summary judgment record contains no evidence that an industry practice is so pervasive that the opposing party had actual or constructive knowledge of it, a court must deny a motion for reconsideration of the denial of summary judgment. *See Carlton Grp., Ltd.*, 2019 U.S. Dist. LEXIS 12481, at *10-11.

In sum, Defendant did not meet its burden of demonstrating both an industry practice and Plaintiff's knowledge of it. At best, the record suggests that some banks assess overdraft fees in the same way as Capital One and others may not. This is insufficient on summary judgment, and even more insufficient on reconsideration where Defendant must show clear error. The Court should deny the motion for reconsideration.

## IV.    DEFENDANT'S DAMAGES ARGUMENTS STILL MISCONSTRUE MS. ROBERTS'S POSITION AND SHOULD BE REJECTED AGAIN.

Next, Defendant reargues about the fees Defendant thinks Ms. Roberts would have incurred if Defendant always assessed OD Fees at authorization (instead of settlement), but these arguments are misplaced. The Court will recall Defendant's focus on transactions that authorized against a negative balance but settled against a positive balance and for which no overdraft fees are assessed by Defendant.  At the hearing, the Court's ruling recognized that Ms. Roberts "is not arguing for a

contract interpretation where overdraft fees must be assessed at authorization in lieu of at settlement, but simply that Capital One is not authorized to charge overdraft fees at settlement." (ECF No.131 at 28:19-23). Undeterred by the Court's statements, Defendant now persists in repeating its erroneous argument that Ms. Roberts owed Defendant fees under what it inaccurately claims is both her and the Second Circuit's "interpretation of the account agreements." But as the Court has already ruled Defendant, this position "misconstrues plaintiff's argument." (ECF No. 131 at 28:19). It is also speculative and incorrect. The Court should once again reject this misstatement of Ms. Roberts's position and the incorrect conclusions flowing from it.

Preliminarily, the argument that Ms. Roberts would have incurred fees under some other interpretation of the Account Agreements is not a proper basis for a motion for reconsideration because, as above, the Court has already considered it. The Court has already concluded that "[w]hether [Ms. Roberts] is better or worse off under one scenario or another is not a simple question of arithmetic." (ECF No. 131 at 29:7-14. Defendant's dissatisfaction with the Court's ruling does not establish the presence of "clear error." This argument should be rejected on that basis alone.

But even setting aside the impropriety of this argument, it was wrong the first time Defendant made it. As Ms. Roberts has already explained, her position in this case is that Capital One may not assess an OD Fee on a transaction that was authorized positive. The issue of whether a transaction that was authorized negative and settled into a positive balance is not presented here, nor is it relevant. At no time has she ever argued that Capital One should have instead charged OD Fees for transactions that authorized negative and settled positive. Her only argument, moored to the ambiguous contract language, is that Defendant may not charge overdraft fees for transactions that authorize positive and settle negative. Thus, it is wrong at the outset to assert that Ms. Roberts is advocating for an "authorization reading of the overdraft definition" that would permit or require

Defendant to assess an OD Fee at authorization. She is not. And there is no basis for assuming that changing one aspect of the fee determination would somehow also require a less favorable interpretation for other situations (*i.e.*, authorize negative settle positive).

Nor did the Second Circuit ever endorse the binary approach Capital One now demands. To the contrary, the Second Circuit held that in the context of whether Capital One was permitted to assess overdraft fees on debit card transactions that authorized positive but settled negative, the bank's account documents were "infect[ed]" with ambiguity. That is all. The Second Circuit did not make an all-encompassing, sweeping pronouncement about the propriety of all of Capital One's overdraft fees in all potential scenarios. The Second Circuit certainly never considered the propriety of overdraft fees in Capital One's hypothetical world wherein it would assess overdraft fees when transactions authorize negative but settle positive, and this Court correctly determined that issue is irrelevant to Ms. Robert's claims.

Similarly, Defendant's argument that Ms. Roberts is receiving a "windfall" because she would have necessarily incurred OD Fees on 259 transactions that authorized into a negative account balance is premised on unknowable facts about what Ms. Roberts would have done in a made-up scenario in which the bank must be presumed to have changed its practices in the way Ms. Roberts argues it should *and* in another way that has nothing to do with this case. Defendant assumes that Ms. Roberts would have made the same transactions on the same dates with the same account balances under these hypothetical circumstances, but does not explain why that assumption is warranted. In fact, if Defendant had a practice of assessing an OD Fee at authorization (a practice that Capital One's computer systems were not even capable of employing) (*See* ECF No. 106 at ¶ 54), Ms. Roberts might have changed her behavior and made different transactions at different times. It is impossible to know, and it is therefore impossible to know how many fees Ms. Roberts would have incurred if a fee were assessed on all transactions authorized on a negative balance

6

(again, a position Ms. Roberts has not advocated). The Court was thus correct to conclude that "it is hypothetical how many fees plaintiff would have incurred" under a different interpretation of the contract.[1] (ECF No. 131at 29:7-14). Defendant cannot show otherwise.

In sum, the only knowable fact is that Ms. Roberts was charged seven overdraft fees that the contract did not permit Capital One to charge. She has therefore been damaged. The Court should once again reject Capital One's unfounded hypotheticals because the evidence before the Court shows that what Defendant actually did (assess OD Fees on transactions that authorized when Ms. Roberts's account balance was positive) was not authorized under the Account Agreements. That is the only issue that this case presents. The motion should be denied.

V.   **MS. ROBERTS DID NOT BREACH HER CONTRACT AND THE COURT SHOULD AGAIN REJECT THIS ARGUMENT.**

Finally, Defendant attempts to resurrect the baseless argument that Ms. Roberts breached her account agreement. Like the others, this argument fails because the Court has already considered and rejected it:

> Turning to a separate argument that defendant makes on the breach of contract claim, namely, that plaintiff has not substantially performed her obligations under the contract so she has not satisfied all of the elements for a breach of contract claim, that argument is rejected.

(ECF No. 131 at 29:15-19). Again, Defendant's dissatisfaction with the ruling does not establish "clear error."

Further, the argument that Ms. Roberts breached the Account Agreement by taking advantage of the overdraft protection service offered by Defendant is specious. Defendant uses memo posts—placing funds off limit for other transactions—and is aware if debit transactions are

---

[1] Defendant's argument that the Account Agreement provides discretion as to whether or not to pay an overdraft, but not as to whether or not to charge an OD Fee, is a non-starter. A contractual provision permitting or allowing Defendant to assess an OD Fee does not *require* Defendant to assess fees, and any arguments to the contrary should be ignored.

"pending" when a customer attempts to make a debit card transaction in an amount greater than the available balance. In fact, Defendant offers a fee-paid overdraft service purportedly as a benefit to its customers for precisely that scenario. Defendant is again wrong to claim Ms. Roberts breached her agreement by taking advantage of that service, which she paid for in numerous undisputed OD Fees.

Moreover, when Ms. Roberts attempted to make debit card transactions that would overdraw her account while an earlier debit card transaction was pending, Defendant—not Ms. Roberts—had the ultimate authority to decide whether (1) the money "held" to cover the earlier transaction would be depleted; (2) Defendant would loan Ms. Roberts new money in exchange for an OD Fee; or (3) the transaction would be rejected. As Defendant admits, the Account Agreement gave it such discretion. (ECF No. 137 at 8). Having decided to deplete the "held" funds, Defendant cannot now argue that *Ms. Roberts*—whose reliance of the bank's overdraft service was subject to Defendant deciding to approve the transaction—was in violated the agreement.  Accepting Defendant's argument would mean that it could never be held liable for a breach of contract relating to overdraft fees because it could always point to the customer's overdrafting as an excuse. With respect to this argument, too, there was no "clear error."

## CONCLUSION

Because Defendant's motion merely seeks to re-litigate issues already considered and decided by this Court and does not present any intervening, controlling case law, or new evidence that could not have been discovered at the time the Court issued its ruling on the competing summary judgment motions, the motion for reconsideration should be denied.

8

Dated:  July 30, 2019

*By: /s/ Joshua R. Levine*
Jonathan M. Streisfeld (*pro hac vice*)          Jeffrey D. Kaliel (*pro hac vice*)
Jeff Ostrow (*pro hac vice*)                     Sophia G. Gold (*pro hac vice pending*)
Joshua R. Levine (*pro hac vice*)                **KALIEL PLLC**
**KOPELOWITZ OSTROW**                            1875 Connecticut Ave., NW, 10th Floor
**FERGUSON WEISELBERG GILBERT**                  Washington, D.C.  20009
One West Las Olas Boulevard, Suite 500           (202) 350-4783
Fort Lauderdale, Florida 33301                   *jkaliel@kalielpll.com*
Telephone: 954-525-4100
Facsimile: 954-525-4300
*streisfeld@kolawyers.com*
*ostrow@kolawyers.com*

## CERTIFICATE OF SERVICE

I, Joshua R. Levine, hereby certify that on July 30, 2019, caused the foregoing to be served via

CM/ECF and email on the following counsel of record:

James R. McGuire (pro hac vice)                  Jessica L. Kaufman
Sarah N. Davis (pro hac vice)                    Tiffani B. Figueroa
Lauren Wroblewski (pro hac vice)                 MORRISON & FOERSTER LLP
MORRISON & FOERSTER LLP                           250 West 55th Street
425 Market Street                                New York, New York 10019
San Francisco, California                         Telephone: (212) 468-8000
Telephone: (415) 268-7000                        jkaufman@mofo.com
jmcguire@mofo.com
sarahdavis@mofo.com
lwroblewski@mofo.com

*Attorneys for Defendant Capital One, N.A.*

*/s/ Joshua R. Levine*
Joshua R. Levine