# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

TAWANNA ROBERTS, on behalf of herself
and all others similarly situated,

      Plaintiff,

      -   against -

CAPITAL ONE, N.A.,

      Defendant.

CASE No. 1:16-cv-04841-LGS

# PLAINTIFF'S MEMORANDUM IN SUPPORT
## OF THE MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. iii

I.    INTRODUCTION ............................................................................................... 1

II.    SUMMARY OF FACTS ...................................................................................... 2

    A. CAPITAL ONE PROVIDED CHECKING AND DEBIT CARDS IN
       EIGHT STATES AND THE DISTRICT OF COLUMBIA DURING THE
       CLASS PERIOD ........................................................................................... 2

    B. CAPITAL ONE COLLECTED UNLAWFUL OVERDRAFT CHARGES
       FROM MS. ROBERTS AND THE CLASSES IN A UNIFORM MANNER ................ 2

        1. ALL CLASS MEMBERS ENTERED INTO A MATERIALLY
          IDENTICAL FORM A CONTRACT .................................................... 3

        2. ALL CLASS MEMBERS INCURRED OVERDRAFT FEES ON
          APPSN TRANSACTIONS DUE TO CAPITAL ONE'S UNIFORM
          PRACTICE ..................................................................................... 4

    C. CAPITAL ONE WAS AWARE OF CONSUMER CONFUSION
       REGARDING THE APPSN PRACTICE ............................................................ 4

    D. THE CONSUMER FINANCIAL PROTECTION BUREAU CONDEMNED
       THIS IDENTICAL PRACTICE AS DECEPTIVE ................................................. 5

    E. AWARE OF THE WIDESPREAD CUSTOMER CONFUSION WITH
       APPSN TRANSACTIONS, CAPITAL ONE EAGERLY EXPLOITED IT TO
       GENERATE MASSIVE OD FEE REVENUE .................................................... 5

    F. PLAINTIFF'S EXPERT CAN PROVE DAMAGES ON A CLASS-WIDE
       BASIS ......................................................................................................... 6

III.    ARGUMENT ...................................................................................................... 6

    A. Legal Standard ............................................................................................ 6

    B. There Is a Long Track Record of Courts Certifying Overdraft Fee Cases
       Like This One .............................................................................................. 8

    C. The Putative Classes Satisfy the Requirements of Rule 23(a) ........................... 11

        1. Numerosity ........................................................................................ 12

        2. Commonality ..................................................................................... 12

3. Typicality .................................................................................................14

4. Adequacy ...............................................................................................15

D. The Putative Classes Satisfy the Requirements of Rule 23(b)(3) ........................18

1. Predominance ........................................................................................18

a. The Multistate Breach of Contract Class ...........................................18

b. The New York Consumer Protection Act Subclass .........................21

c. Damages Are Amenable to Calculation on a Class-wide Basis .......................22

2. Superiority ..............................................................................................23

E. Ascertainability ...........................................................................................24

IV. CONCLUSION .............................................................................................25

CERTIFICATE OF SERVICE .............................................................................26

## TABLE OF AUTHORITIES

**Cases**                                                                                             **Page(s)**

*Amchem Prods., Inc. v. Windsor Prods.,*
   521 U.S. 591 (1997) .................................................................................................. 6, 18, 24

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds,*
   568 U.S. 455 (2013) ......................................................................................................... 7, 13

*Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.,*
   222 F.3d 52 (2nd Cir. 2000) ................................................................................................. 16

*Consol. Rail Corp. v. Town of Hyde Park,*
   47 F.3d 473 (2d Cir. 1995) ................................................................................................... 12

*Denney v. Deutsche Bank AG,*
   443 F.3d 253 (2d Cir. 2006) ................................................................................................. 16

*Dover v. British Airways, PLC (UK),*
   321 F.R.D. 49 (E.D.N.Y. 2017) ........................................................................................... 13

*Dupler v. Costco Wholesale Corp.,*
   249 F.R.D. 29 (E.D.N.Y. 2008) ................................................................................. 1, 13, 21

*Ellsworth v. U.S. Bank, N.A.,*
   No. C 12-02506 LB, 2014 U.S. Dist. LEXIS 81646 (N.D. Cal. June 13, 2014) ............................. 14

*Faris v. Flagstar Bank,*
   No. 15- 145287-CZ (Oakland Cnty. Cir. Ct. Oct. 8, 2015) ........................................... 10, 11

*Gen. Tel. Co. of S.W. v. Falcon,*
   457 U.S. 147 (1982) ............................................................................................................... 7

*Gulf Oil Co. v. Bernard,*
   452 U.S. 89 (1981) ................................................................................................................. 7

*Gunter v. United Fed. Credit Union,*
   No. 315CV00483MMDWGC, 2017 U.S. Dist. LEXIS 157243 (D. Nev. Sept. 25, 2017) ...... 8, 17

*Gutierrez v. Wells Fargo Bank, N.A.,*
   2008 U.S. Dist. LEXIS 70124 (N.D. Cal. Sept. 11, 2008) .................................................... 9

*Gutierrez v. Wells Fargo Bank,*
   2010 U.S. Dist. LEXIS 29117 (N.D. Cal. Mar. 26, 2010) .................................................. 10

*Hanks v. Lincoln Life & Annuity Co. of New York,*
   330 F.R.D. 374, 383 (S.D.N.Y. 2019) ................................................................................. 20

*Hansen v. Monumental Life Ins. Co.,*
   2008 U.S. Dist. LEXIS 112254 (D. Conn. Mar. 6, 2008) ................................................... 19

*Hernandez v. Point Loma Credit Union,*
No. 37:2013-00053519 (San Diego Cnty. Super. Ct. July 1, 2016) .................................................. 10

*In re Bank of Hawaii,*
2019 U.S. Dist. LEXIS 109110 .................................................................................................. 21, 22

*In re Chase Bank USA, N.A. "Check Loan" Contract Litig.,*
274 F.R.D. 286 (N.D. Cal. 2011) ....................................................................................................17

*In re Checking Account Overdraft Litig.,*
275 F.R.D. 666 (S.D. Fla. 2011) (Union Bank) ........................................................................ 8, 14

*In re Checking Account Overdraft Litig.,*
281 F.R.D. 667 (S.D. Fla. 2012) (TD) ...................................................................................... 8, 14

*In re Checking Account Overdraft Litig.,*
286 F.R.D. 645 (S.D. Fla. 2012) (Comerica) ..................................................................... 8, 10, 14

*In re Checking Account Overdraft Litig.,*
307 F.R.D. 630 (S.D. Fla. 2015) (Wells Fargo) ............................................................................ 8

*In re Checking Account Overdraft Litig.,*
307 F.R.D. 656 (S.D. Fla. 2015) (Wachovia Bank) ...................................................................... 8

*In re Conseco Life Ins. Co. Lifetrend Ins. Sales & Mktg. Litig.,*
270 F.R.D. 521 (N.D. Cal. 2010) .................................................................................................. 19

*In re IndyMac Mortg.- Backed Secs. Litig.,*
286 F.R.D. 226 (S.D.N.Y. 2012) .................................................................................................. 12

*In re Petrobras Sec.,*
862 F.3d 250 (2d Cir. 2017) ........................................................................................................ 25

*In re Prudential Ins. Co. of Am. Sales Practices Litig.,*
962 F. Supp. 450 (D.N.J. 1997) .................................................................................................. 19

*In re Scotts EZ Seed Litig.,*
304 F.R.D. 397 (S.D.N.Y. 2015) ............................................................................................ 13, 21

*In re TD Bank, N.A. Debit Card Overdraft Fee Litig.,*
325 F.R.D. 136 (D.S.C. 2018) ...................................................................................... 1, 8, 9, 14, 22

*In re Telectronics Pacing Sys., Inc.,*
172 F.R.D. 271 (S.D. Ohio 1997) ................................................................................................ 19

*In re U.S. Foodservice Inc. Pricing Litig.,*
729 F.3d 108 (2d Cir. 2013) ................................................................................................ 9, 19, 20

*In re Visa Check/MasterMoney Antitrust Litig.,*
280 F.3d 124 (2d Cir. 2001) ...................................................................................... 12, 23, 24

iv

*Jacobs v. FirstMerit Corp.*,
  No. 11CV000090 (Ohio Ct. Com. Pl Dec. 26, 2012) ............................................... 10, 11

*Jermyn v. Best Buy Stores, L.P.*,
  256 F.R.D. 418 (S.D.N.Y. 2009) ........................................................................... 21

*Klay v. Humana, Inc.*,
  382 F.3d 1241 (11th Cir. 2004) .................................................................... 1, 19, 22

*Mahon v. Chi. Title Ins. Co.*,
  296 F.R.D. 63 (D. Conn 2013) ............................................................................ 15

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997) ............................................................................ 7, 15

*Moreno v. Deutsche Bank Americas Holding Corp.*,
  No. 15 CIV. 9936 (LGS), 2017 U.S. Dist. LEXIS 143208 (S.D.N.Y. Sept. 5, 2017) ................... 15

*Morton v. Greenbank*,
  No. 11-135-III (Tenn. Ch. Ct. Aug. 2, 2012) ............................................................ 10

*Nick's Garage, Inc. v. Progressive Casualty Insurance Company*,
  875 F.3d 107 (2d Cir. 2017) ............................................................................... 21

*Pelman ex rel. Pelman v. McDonald's Corp.*,
  396 F.3d 508 (2d Cir. 2005) ............................................................................... 21

*Price v. L'Oreal USA, Inc.*,
  No. 17 CIV. 614 (LGS), 2018 U.S. Dist. LEXIS 138473 (S.D.N.Y. Aug. 15, 2018) .............. *passim*

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015) ........................................................................... 18, 22

*Robidoux v. Celani*,
  987 F.2d 931–37 (2d Cir. 1993) .......................................................................... 15

*Robinson v. Metro–North Commuter R.R. Co.*,
  267 F.3d 147 (2d Cir. 2001) .............................................................................. 15

*Rodriguez v. It's Just Lunch, Int'l*,
  300 F.R.D. 125 (S.D.N.Y. 2014) .......................................................................... 21

*Seijas v. Republic of Argentina*,
  606 F.3d 53 (2d Cir. 2010) ............................................................................... 23

*Simon v. Phillip Morris*,
  124 F. Supp. 2d 46 (E.D.N.Y. 2000) ...................................................................... 19

*Smith v. Bank of Haw.*,
  No. 16-00513 JAO-RLP, 2019 U.S. Dist. LEXIS 111637 (D. Haw. Jan. 30, 2019) ................. 8, 14

*Steinberg v. Nationwide Mut. Ins. Co.*,
    224 F.R.D. 67 (E.D.N.Y. 2004) ................................................................................. 1, 19

*Sykes v. Mel S. Harris and Assocs. LLC*,
    780 F.3d 70 (2d Cir. 2015) ............................................................... 12, 13, 14, 23

*Terwilliger v. Terwilliger*,
    206 F.3d 240 (2d Cir. 2000) ..................................................................................... 18

*United Fed. Credit Union*,
    No. 3:15-cv-00483-MMD-WGC, 2017 U.S. Dist. LEXIS 157243, (D. Nev. Sep. 25, 2017) ......... 8

*Wal-Mart Stores v. Dukes*,
    131 S. Ct. 2541 (2011) ............................................................................................ 7, 15

## Statutes and Rules

Class Action Fairness Act, Pub. L. No. 109-2, § 2(a)(1), 119 Stat. 4 (2005) ........................................... 6

Fed. R. Civ. P. 23 .................................................................................................................. *passim*

GBL § 349 ................................................................................................................... 2, 15, 21

## Other

American Law Institute, Principles of the Law: Aggregate Litigation § 2.05(b) (2010) ........................ 19

GBL § 349 ................................................................................................................... 2, 15, 21

1 William B. Rubenstein, Newberg on Class Actions § 3:32 (5th ed. 2016) ........................................ 16

2 William B. Rubenstein, Newberg on Class Actions § 4.72 (5th ed. West 2014) ............................... 23

## I.   __INTRODUCTION__

When the Court recently declined to grant summary judgment to either party, it left to the factfinder whether the form contract that Defendant Capital One, N.A. ("Capital One" or the "Bank") drafted permitted it to assess OD Fees on debit card and ATM transactions ("debit card transactions") that authorized against a positive available balance and settled negative ("APPSN transactions"). That is a question that will be answered uniformly and on a class-wide basis.  It is undisputed that the account documents were form contracts; that the relevant terms were the same across all class members and throughout the class period; and that the Bank systematically assessed OD Fees on APPSN transactions. Capital One does not dispute that it charged OD Fees on APPSN transactions. Given the uniformity in the account agreements and the uniformity in the Bank's practices, class certification is appropriate here.

Indeed, district courts in the Second Circuit and elsewhere have noted that "[a]n overwhelming number of courts have held that claims arising out of form contracts are particularly appropriate for class action treatment." *Dupler v. Costco Wholesale Corp.,* 249 F.R.D. 29, 37 (E.D.N.Y. 2008); *see also Steinberg v. Nationwide Mut. Ins. Co.,* 224 F.R.D. 67, 74 (E.D.N.Y. 2004) ("'[I]n light of Rule 23, claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such.'" (quoting *Klay v. Humana, Inc.,* 382 F.3d 1241, 1263 (11th Cir. 2004)). In fact, this Court certified a breach of contract class in *Price v. L'Oreal USA, Inc.,* 2018 U.S. Dist. LEXIS 138473 (S.D.N.Y. Aug. 15, 2018). And in similar cases challenging other banks' OD Fee practices, courts routinely grant class certification. *See, e.g., In re TD Bank, N.A. Debit Card Overdraft Fee Litig.,* 325 F.R.D. 136 (D.S.C. 2018). This case, too, presents a model case for class certification. For the reasons explained below, this Court should find that all the relevant factors of Federal Rule of Civil Procedure 23 weigh in favor of certifying a multistate breach of contract class of Capital One customers who have been charged improper OD Fees on

APPSN transactions, as well as a New York subclass for the GBL § 349 claim.

## II.      SUMMARY OF FACTS

The Second Circuit determined that certain provisions in Capital One's Rules Governing Deposit Accounts ("Deposit Agreement") and Electronic Fund Transfer Agreement and Disclosure for Personal and Commercial Accounts ("EFT Agreement") (collectively "Agreements") are ambiguous. Subsequently, this Court in denying the cross-motions for summary judgment held that the Bank's proffered extrinsic evidence does not, as a matter of law, resolve the ambiguities in these form contracts. The meaning of Capital One's ambiguous form contract is a question that should be answered on a class-wide basis. Capital One's contracts of adhesion are uniform across all of its customers, as was its practice of assessing OD Fees on APPSN transactions. The recitation of evidence below highlights the predominance of common issues, typicality of Plaintiffs' claims, and the superiority of the class action format to resolve these claims. Because the breach of contract claim must be decided on an objective basis, and because a reasonable consumer standard applies to the GBL claim, a class and subclass should be certified.

### A.      CAPITAL ONE PROVIDED CHECKING AND DEBIT CARDS IN EIGHT STATES AND THE DISTRICT OF COLUMBIA DURING THE CLASS PERIOD

Throughout the class period, Capital One has had substantial retail banking presence, offering checking and debit card services to millions of accountholders in 492 branches located in Connecticut, Delaware, Louisiana, Maryland, New Jersey, New York, Texas, Virginia and Washington, D.C.[1]

### B.      CAPITAL ONE COLLECTED UNLAWFUL OVERDRAFT CHARGES FROM MS. ROBERTS AND THE CLASSES IN A UNIFORM MANNER

The common evidence described below demonstrates that the Bank systematically and

---

[1]https://research.fdic.gov/bankfind/detail.html?bank=4297&name=Capital%20One%2C%20National%20Association&searchName=CAPITAL%20ONE%20BANK&searchFdic=&city=&state=&zip=&address=&tabId=2# (last visited September 11, 2019).

uniformly assessed OD Fees on APPSN transactions in violation its standardized account agreements.

### 1. ALL CLASS MEMBERS ENTERED INTO A MATERIALLY IDENTICAL FORM CONTRACT

All class members, including Ms. Roberts, entered into a form contract with Capital One for a checking account. *See* Exhibit 2 to the Declaration of Jonathan Streisfeld ("Streisfeld Decl.") at 347:12 – 348:7. That contract contained certain material terms applicable to the practice at issue in this case, none of which changed during the class period. *See* Streisfeld Decl. Ex. 3 &4. The following are the relevant contractual provisions from the Agreements:

- The Deposit Agreements states: "We may in our sole discretion, and without obligation, elect to pay checks and other items drawn on your deposit account or to permit automatic bill payments and withdrawals against your account for an amount in excess of your available balance (an "Overdraft"). Streisfeld Decl. Ex. 3.

- The EFT Agreement states: "An Overdraft occurs when you do not have enough money in your designated account to cover a transaction, but we pay it anyway." Streisfeld Decl. Ex. 4.

- The Opt-In Agreement States: "An overdraft occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway." Streisfeld Decl. Ex. 5.

The Agreements were uniform throughout the class period among all class members. Streisfeld Decl. Ex. 2 at 347:11–353:7. If any changes to the relevant documents were made, they did not affect the provisions discussed above and, regardless, were the same across all members of the class. *Id.*

Further, each form contract contains a choice of law clause specifying that the law of one of the nine jurisdictions identified above applies in interpreting the contract, regardless of where the accountholder resides. Streisfeld Decl. Ex. 3. As addressed below and in the Trial Plan accompanying this Motion, the laws of those jurisdictions with respect to breach of contract can be harmonized for class certification and trial. As made clear during briefing and orders on the motion to dismiss, the subsequent appeal to the Second Circuit, and most recently the competing summary judgment motions, how the trier of fact construes the ambiguous account agreements will uniformly determine whether there is a breach of contract for all class members.

3

### 2. ALL CLASS MEMBERS INCURRED OVERDRAFT FEES ON APPSN TRANSACTIONS DUE TO CAPITAL ONE'S UNIFORM PRACTICE

Uniformly throughout the class period, when debit card transactions were authorized, Capital One immediately placed a hold or "memo post" on an account's available balance. Streisfeld Decl. Ex. 2 at 40:3-15. A hold or "memo post" reduces an available balance for all purposes, and the reduced available balance is immediately reflected to accountholders in online banking and on the mobile app as the positive amount the accountholder has to spend. Streisfeld Decl. Ex. 6. Such transactions could not incur OD Fees unless Capital One chose to authorize and approve *new* transactions into overdraft, thus consuming funds "memo posted" for the original transactions. Streisfeld Decl. Ex. 2 at 40:5-15. These practices all remained constant and uniform during the class period. Streisfeld Decl. Ex. 2 at 347:11–353:7. All class members, including Ms. Roberts, were wrongfully charged OD Fees on APPSN transactions. Streisfeld Decl. Ex. 7 at 22; Streisfeld Decl. Ex. 2 at 75:21–76:16.

### C. CAPITAL ONE WAS AWARE OF CONSUMER CONFUSION REGARDING THE APPSN PRACTICE

APPSN results when funds placed on hold or "memo posted" for a debit card transaction are instead consumed by later-made transactions. Capital One was aware of the confusion surrounding its overdraft practices. Streisfeld Decl. Ex. 2 at 268:6-10. Two Capital One executives expressly recognized consumer confusion associated with the consumption of "memo posts" or debit holds by unrelated transactions: "OK, some misconceptions for me:  Memo posts cannot ever be spent by a customer, no matter what happens. They may think they can spend it, but we do not draw checks or debits against memo post balances. They will get overdrafts [on the later made transactions]. Right?" Streisfeld Decl. Ex. 8. An executive falsely confirmed as much: "Yes, I agree, memo posts cannot actually be spent by the customer, but the memo post does factor into authorization decisions.  So, *this will lead to customer confusion and potential overdrafts*." *Id.* (emphasis added).

4

### D. THE CONSUMER FINANCIAL PROTECTION BUREAU CONDEMNED THIS IDENTICAL PRACTICE AS DECEPTIVE

The CFPB has stated that accountholders may be deceived by the precise practice at the heart of this lawsuit, flatly calling the practice "unfair" and/or "deceptive" when:

> [A] financial institution authorized an electronic transaction, which reduced a customer's available balance but did not result in an overdraft at the time of authorization; settlement of a subsequent unrelated transaction that further lowered the customer's available balance and pushed the account into overdraft status; and when the original electronic transaction was later presented for settlement, because of the intervening transaction and overdraft fee, the electronic transaction also posted as an overdraft and an additional overdraft fee was charged. *Because such fees caused harm to consumers, one or more supervised entities were found to have acted unfairly when they charged fees in the manner described above. Consumers likely had no reason to anticipate this practice, which was not appropriately disclosed.* They therefore could not reasonably avoid incurring the overdraft fees charged. Consistent with the deception findings summarized above, examiners found that the failure to properly disclose the practice of charging overdraft fees in these circumstances was deceptive.

*See* Consumer Financial Protection Bureau, Winter 2015 "Supervisory Highlights."[2]. Ms. Roberts was in fact deceived, testifying that she had no idea she would be charged OD Fees on APPSN transactions. Streisfeld Decl. Ex. 9 at 98:2-9.

### E. AWARE OF THE WIDESPREAD CUSTOMER CONFUSION WITH APPSN TRANSACTIONS, CAPITAL ONE EAGERLY EXPLOITED IT TO GENERATE MASSIVE OD FEE REVENUE

OD Fees are huge and important source of Capital One revenue. In August 2009, a Capital One senior executive wrote that the "*timing issue [i.e., APPSN] is a greater source of debit overdraft revenue than the matrix* [a process that, in the bank's discretion, authorizes debit card transactions into a negative balance]." Streisfeld Decl. Ex. 10 (emphasis added). The next month, in September 2009, he wrote that "one missing piece to our overall OD understanding is to figure out what % of debit ODs are a result of settlement timing (enough money in acct at authorization, but not enough at settlement). CCB [a bank that Capital One had recently acquired] thinks it's a big piece of the total, but I suspect

---

[2] https://files.consumerfinance.gov/f/201503_cfpb_supervisory-highlights-winter-2015.pdf (last visited February 19, 2019)

it's smaller." *Id.* A later email confirmed that after further analysis, APPSN was "not uncommon," and "*it accounts for around 14% of total overdraft transactions*[.]" *Id.* (emphasis added). Fourteen percent of all OD Fees represents a significant number of Capital One customers being charged OD Fees on APPSN transactions. For example, in 2014 there ███████████████████████████████████ ███████████████████. Streisfeld Decl. Ex. 11. ███████████████████████████ ████████. *Id.* Thus, of the unique accounts that were subject to a fee, approximately ███████████ ███████████████████████████████████████████████████████████ ███████████. *Id.* This represents just a *single year* in the class period.

### F.   PLAINTIFF'S EXPERT CAN PROVE DAMAGES ON A CLASS-WIDE BASIS

A highly experienced expert, Arthur Olsen, who has served as an expert in numerous class actions involving overdraft fees, was retained in this case. He regularly evaluates transaction data maintained by financial institutions to determine whether the data fits a plaintiff's theory of liability. Using data maintained and supplied by Capital One, Mr. Olsen developed a methodology to identify the improper OD Fees Capital One charged Ms. Roberts on APPSN transactions. Capital One maintains identical transactional data for all class members. Streisfeld Decl. Ex. 12 at 210:2-6, 211:2-7, 16-20. Using this additional class-wide data, Mr. Olsen will be able to replicate the same analysis he used for Ms. Roberts for all putative class members. Streisfeld Decl. Ex. 7. Mr. Olsen has determined that Plaintiff Roberts's individual damages for APPSN Transactions is $245.

### III.   ARGUMENT

### A.   Legal Standard

"Class action lawsuits are an important and valuable part of the legal system when they permit the fair and efficient resolution of legitimate claims of numerous parties by allowing the claims to be aggregated into a single action against a defendant that has allegedly caused harm." Class Action Fairness Act, Pub. L. No. 109-2 , § 2(a)(1), 119 Stat. 4 (2005); *see also Amchem Prods., Inc. v. Windsor*

*Prods.*, 521 U.S. 591, 617 (1997) (the "very core" of the justification for a class action is offering a path to relief that otherwise would be too "paltry" for individual suit); *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981) ("[C]lass actions serve an important function in our system of civil justice.").

Class certification is appropriate if the court determines that the requirements of Rule 23 have been met. *Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Specifically, class certification is proper if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class and, (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). To certify a (b)(3) class, "questions of law or fact common to class members [must] predominate over any questions affecting only individual members" and a class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Class certification is not the time to test the case's merits. "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Price*, 2018 U.S. Dist. LEXIS 138473, at *5 (quoting *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-66 (2013) (citing *Wal-Mart*, 564 U.S. at 351)). The Second Circuit gives Rule 23 a "liberal rather than restrictive construction, and courts are to adopt a standard of flexibility." *Id.* (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)). "On occasion 'it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.'" *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 160 (1982). But merits questions may be considered "only to the extent—that they are relevant to determining whether Rule 23 prerequisites for class certification are satisfied." *Amgen Inc.*, 568 U.S. at 466. Here, given the Court's detailed summary judgment analysis, it should have no difficulty concluding the case has merit and that class certification is warranted.

**B.      There Is a Long Track Record of Courts Certifying Overdraft Fee Cases Like This One**

In similar cases challenging the OD Fee practices of financial institutions, courts routinely grant class certification. This Court should rely upon the reasoning of the several judges who have come before it in determining that class treatment is appropriate in a case like this one. Here, like in many overdraft fee class actions to be certified before this case, there are common issues of law and fact because the Bank breached its form contract by uniformly assessing overdraft fees in the same, unlawful manner. *See, e.g., In re TD Bank, N.A. Debit Card Overdraft Fee Litig.,* 325 F.R.D. 136 (D.S.C. 2018); *Smith v. Bank of Haw.*, No. 16-00513 JAO-RLP, 2019 U.S. Dist. LEXIS 111637, at *23 (D. Haw. Jan. 30, 2019), *report and recommendation adopted in part, rejected in part*, 2019 U.S. Dist. LEXIS 109110; *Gunter v. United Fed. Credit Union*, No. 3:15-cv-00483-MMD-WGC, 2017 U.S. Dist. LEXIS 157243, at *26 (D. Nev. Sep. 25, 2017); *In re Checking Account Overdraft Litig.*, 307 F.R.D. 656 (S.D. Fla. 2015) (Wachovia Bank), *pet. for leave to appeal denied*, No. 15-90026 (11th Cir. Dec. 1, 2015); *In re Checking Account Overdraft Litig.*, 307 F.R.D. 630 (S.D. Fla. 2015) (Wells Fargo), *pet. for leave to appeal denied*, No. 15-90024 (11th Cir. Dec. 1, 2015); *In re Checking Account Overdraft Litig.*, 286 F.R.D. 645 (S.D. Fla. 2012) (Comerica), *pet. for leave to appeal denied*, No. 12-90032 (11th Cir. Dec. 13, 2012); *In re Checking Account Overdraft Litig.*, No. 09-MD-2036, Order Granting Class Certification, DE # 2847 (S.D. Fla. July 19, 2012) (Capital One), *pet. for leave to appeal denied*, No. 12-90041 (11th Cir. Feb. 13, 2013); *In re Checking Account Overdraft Litig.*, No. 09-MD-2036, Order Granting Class Certification, DE # 2697 (S.D. Fla. May 16, 2012) (PNC); *In re Checking Account Overdraft Litig.*, No. 09-MD-2036, Order Granting Class Certification, DE # 2673 (S.D. Fla. May 4, 2012) (BancorpSouth); *In re Checking Account Overdraft Litig.*, 281 F.R.D. 667 (S.D. Fla. 2012) (TD); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666 (S.D. Fla. 2011) (Union Bank), *pet. for leave to appeal denied*, No. 11-90012 (11th Cir. Oct. 7, 2011).

In certifying a class in *TD Bank*, a case challenging the type of balance the bank used to determine OD Fees (available vs. ledger balance), the court rejected the bank's argument that extrinsic

evidence of individualized consumers' intent would defeat predominance. Instead, the court held that

common issues predominated because the same form contracts and the same bank policies applied to

all consumers. The court stressed the importance of finding a uniform interpretation of the bank's

contract, applicable to all consumers:

> **[T]he common issue that predominates over all individual issues pertaining to the available balance claims is whether it was permissible under the Bank's materially uniform contract with its customers, and associated common law and statutory duties, for the Bank to impose overdraft fees** before the money associated with "pending" debits, which brought the available balance below zero, had actually left the accounts . . . [T]he resolution of this question . . will permit resolution of Plaintiffs' and class members' available balance claims in the aggregate.

> [. . .]

> **[W]hile it is true that the states at issue permit consideration of extrinsic evidence to resolve ambiguities in form contracts, the extrinsic evidence that will assist the fact finder in resolving the instant breach of contract claim consists of uniform documents, disclosures, and practices.** The Court begins with the common sense principle, stated in the Restatement (Second) of Contracts, that standardized agreements should be "interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing." § 211(2). The contracts at issue are contracts of adhesion, involving non-negotiable terms and a vast bargaining/information imbalance between the parties. . . **If there is _any_ type of standardized agreement that ought to be interpreted uniformly, without regard to the non-drafting party's idiosyncratic comprehension of its terms, it is a consumer checking account agreement.** Here, the same overdraft accounting policy was applied to every TD Bank customer . . .  **In this context, the focus is on the Bank's conduct in relation to the contractual language, and individual customers' "intent" and "course of performance" is largely irrelevant to resolving any ambiguity**.

_In re TD Bank Overdraft Fee Litig.,_ 325 F.R.D. at 155-57 (emphasis added) (internal citation omitted); _see also In re U.S. Foodservice Inc. Pricing Litig.,_ 729 F.3d 108, 125 (2d Cir. 2013) (certifying a breach of contract class and noting that extrinsic evidence of "generalized trade usage . . . [is] appropriately considered on a class-wide basis.").

Similarly, in certifying the class in _Gutierrez v. Wells Fargo Bank, N.A._, No. C 07-05923 WHA, 2008 U.S. Dist. LEXIS 70124, at *48 (N.D. Cal. Sep. 11, 2008), U.S. District Judge William Alsup found that common issues predominated:

> The challenged practice is a standardized one applied on a routine basis to all customers. . . . [I]ndividual variations will not predominate over the pervasive commonality of the highest-to lowest method and its adverse impact on hundreds of thousands of depositors.

In later rejecting Wells Fargo's motion to decertify the class, Judge Alsup again concluded that "there is no question that common questions predominate in this action." *Gutierrez v. Wells Fargo & Co.*, No. C 07-05923 WHA, 2010 U.S. Dist. LEXIS 29117, at *40 (N.D. Cal. Mar. 26, 2010), and noted:

> The legal claims of the "re-sequencing" class target the alleged overcharging of overdraft fees for over a million different Wells Fargo customers. . . . All members of the "re-sequencing" class were charged overdraft fees due to defendant's accused high-to-low posting of transactions. The fees themselves, however, were only around $34 each. Given this backdrop, it cannot be disputed that a denial of class-certification would close the door of justice to a staggering amount of claimants. The deterrent value of class litigation and the desirability of providing recourse for the injured consumer who would otherwise be financially incapable of bringing suit clearly render the class action a viable and important mechanism in challenging an alleged fraud on the public. This is *especially* important here, where the allegedly unlawful practice disproportionately gouges those who maintain, due to choice or (more likely) financial hardship, a shallow amount of funds in their checking accounts.

In the certification orders entered in the Southern District of Florida MDL OD Fee cases, the court repeatedly found predominance was satisfied when form contracts with similar terms applied to all class members, and the banks' systems automatically re-sequenced debit card transactions in the same manner for all class members. *See, e.g., In re Checking Account Overdraft*, 286 F.R.D. at 656. Those elements are likewise present in this case, albeit under the APPSN theory.

The supportive class certification jurisprudence is not limited to federal courts. State courts in California, Michigan, Ohio, and Tennessee have certified classes in OD Fee cases as well. *See* Order Granting Class Certification, *Hernandez v. Point Loma Credit Union*, No. 37:2013-00053519 (San Diego Cnty. Super. Ct. July 1, 2016); Order Granting Class Certification, *Faris v. Flagstar Bank*, No. 15-145287-CZ (Oakland Cnty. Cir. Ct. Oct. 8, 2015); Order Granting Class Certification, *Jacobs v. FirstMerit Corp.*, No. 11CV000090 (Ohio Ct. Com. Pl Dec. 26, 2012); Agreed Order Granting Class Certification, *Morton v. Greenbank*, No. 11-135-III (Tenn. Ch. Ct. Aug. 2, 2012).

In *Flagstar*, the court certified a class consisting of "[a]ll Flagstar customers in the United States who had one or more deposit accounts and who incurred an overdraft fee based on a debit transaction that did not exceed the money in their account." *See Faris* Order, p. 2.  In *FirstMerit*, the court found that class treatment was appropriate, among other reasons, because "[t]he defendants' records can easily be used to determine whose accounts were re-ordered and then charged overdraft fees." *See Jacobs* Order, p. 3. The *FirstMerit* court also found that, whereas recovery in cases brought by individual debit card customers would be "limited," "class action recovery would permit class members to economically assert their rights." *Id.* at 7.

This Court should follow the reasoning of the foregoing courts and certify the classes.

## C.    The Putative Classes Satisfy the Requirements of Rule 23(a).

Plaintiff moves for certification of the following class and subclass (collectively "Classes"):[3]

### Damages Classes under Fed. R. Civ. P. 23(b)(3):

Multistate breach of contract class: All Capital One consumer checking account holders in the United States who, within the applicable statute of limitations up until November 7, 2018, were charged overdraft fees on transactions that were authorized into a positive balance (the "Multistate Class").

New York subclass: All Capital One consumer checking account holders whose accounts were established in the state of New York and who, within the applicable statute of limitations up until November 7, 2018, were charged overdraft fees on transactions that were authorized into a positive balance (the "New York Subclass").[4]

As discussed below, the proposed classes satisfy the criteria for certification under Fed. R. Civ. P. 23(a) and (b)(3). Plaintiff also moves to be appointed representative of the Classes, and for the appointment of the following firms as class counsel pursuant to Rule 23(g): Kaliel PLLC, Kopelowitz

---

[3] Excluded from the putative Classes are Defendant, any entities in which it has a controlling interest, any of its parents, subsidiaries, affiliates, officers, directors, employees and members of such persons' immediate families, and the presiding judge(s) in this case, their staff, and his, her, or their immediate family. Also excluded from the Classes are Capital One 360 accountholders which are accounts opened online and subject to account agreements different than those of the members of the putative Classes.

[4] Plaintiff is closing the classes on November 7, 2018 because that is the date that Capital One revised its Agreements to improve the disclosure of its OD Fee practices impacting APPSN transactions.

Ostrow Ferguson Weiselberg Gilbert, and Tycko & Zavareei LLP.

1.     **Numerosity**

A putative class is certifiable under Rule 23(a)(1) if it "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed at a level of 40 members . . ." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *see also Price*, 2018 U.S. Dist. LEXIS 138473, at *6. This case easily satisfies numerosity. Because each Class comprises thousands of consumers, the numerosity requirement of Rule 23(a)(1) is satisfied here. Capital One assessed OD Fees on APPSN transactions on ███████████████ unique accounts in 2014 alone. *See supra* Section II.E. While Plaintiff's expert has yet to receive and analyze class-wide data to calculate exactly how many unique accounts were affected, logic dictates that with ███████████████ unique accounts incurring OD Fees on APPSN transactions in a single year, there are likely hundreds of thousands of class members.[5]

2.     **Commonality**

"Rule 23(a)'s commonality prerequisite is satisfied if there is a common issue that 'drive[s] the resolution of the litigation' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of the claims in one stroke." *Sykes v. Mel S. Harris and Assocs. LLC*, 780 F.3d 70, 84 (2d Cir. 2015) (quoting *Dukes*, 131 S. Ct. at 2551). "Commonality is satisfied where a single issue of law or fact is common to the class." *Price*, 2018 U.S. Dist. LEXIS 138473, at *7 (quoting *In re IndyMac Mortg.-Backed Secs. Litig.,* 286 F.R.D. 226, 233 (S.D.N.Y. 2012)). The district court's "function at the class certification stage [is] not to determine whether plaintiffs [have] stated a cause of action or whether they [will] prevail on the merits, but rather whether they [have] shown, based on methodology that [is] not fatally flawed, that the requirements of Rule 23 [are] met." *In re Visa Check/MasterMoney*

---

[5] The parties agreed that in the event that the Court certifies a class, Mr. Olsen would be given class-wide transaction data to perform the full damages sought for the class, with Capital One reserving the right to depose Mr. Olsen on his analysis.

*Antitrust Litig.*, 280 F.3d 124, 135 (2d Cir. 2001).  The common elements thus do not need to resolve each element of each claim. *Sykes,* 780 F.3d at 86. And Plaintiff is *not* required to establish that the answers to common questions of law or fact will be favorable to the class. *Amgen,* 568 U.S. at 459.

Commonality is easily satisfied in cases like this one where uniform legal determinations will be made on common account documents. The same form contracts applied to all class members, as did the Bank's uniform APPSN OD Fee practices. *See supra* Section II.B.1. With respect to Plaintiff's breach of contract claim, only nine jurisdictions' laws could possibly apply.[6] As explained in Plaintiff's Trial Plan, Streisfeld Decl. Ex. 1, the elements of a breach of contract claim are materially identical in the each of the relevant jurisdictions. Streisfeld Decl. Ex. 1 at Ex. A.  Since the same contract terms govern the Multistate Class, the factfinder will make one common determination as to whether the contract was breached. *See Dover v. British Airways, PLC (UK),* 321 F.R.D. 49, 54 (E.D.N.Y. 2017), ("[C]laims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such."). *In re Scotts EZ Seed Litig.,* 304 F.R.D. 397, 411 (S.D.N.Y. 2015) ("[C]laims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such."); *Dupler,* 249 F.R.D. at 37 ("An overwhelming number of courts have held that claims arising out of form contracts are particularly appropriate for class action treatment.").

With respect to Plaintiff's GBL claim for the New York Subclass, Plaintiff need only prove: (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result.'" *Price,* 2018 U.S. Dist. LEXIS 138473, at *14 (citations omitted). Each of these elements are capable of class-wide determination. *See id.* at *6 ("[M]ateriality is a question common to all members of the class" when, as here, the materiality of an

---

[6] During the relevant time period, Capital One had branches in only eight states and Washington D.C. The account documents provide that the law of the state where the account was established governs.  *See supra* Section II.A.

alleged misrepresentation is judged according to an objective standard."); *see also Bank of Haw.,* 2019 U.S. Dist. LEXIS 109110, at *12 (certifying an overdraft fee class under Hawaii's consumer protection statute because Hawaii, like New York, "uses an objective test to effectuate its remedial consumer protection statute [and] individual reliance issues are not a proper ground to deny class certification.").

There are thus numerous common questions stemming from this common factual predicate including:

- Whether the Bank breached its contract with respect to the way in which it assessed OD Fees;

- Whether the Bank misled consumers in a material way in its account agreement, its opt-in form, and its online and mobile banking interfaces with respect to the way in which it assesses OD Fees; and

- Whether the Bank's deceptive acts were directed at consumers;

- Whether Plaintiff and class members were harmed by the Bank's conduct, and if so, in what amount.

Any one of these common issues is sufficient to establish commonality. The central issues in this case—namely, how the form contracts should be interpreted and whether Capital One breached its contract by assessing OD Fees on APPSN transactions—is common to the Multistate Class and can be resolved in "one stroke." *See Sykes*, 780 F.3d at 84. Accordingly, commonality is satisfied. *See, e.g., Ellsworth v. U.S. Bank, N.A.*, No. C 12-02506 LB, 2014 U.S. Dist. LEXIS 81646, at *65 (N.D. Cal. June 13, 2014) ("[C]ourts routinely certify class actions regarding breaches of form contracts . . . [C]ommon questions predominate when, as here, they involve form contracts and standardized policies and practices applied on a routine basis to all customers by a bank."); *see also Comerica*, 286 F.R.D. at 652-53; *TD Bank*, 281 F.R.D. at 674-75; *Union Bank*, 275 F.R.D. at 674-76, *TD Bank,* 325 F.R.D. at 155.

### 3.    Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of

the claims or defenses of the class." "Typicality . . . is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal quotation omitted). Moreover, "[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Mahon v. Chi. Title Ins. Co.*, 296 F.R.D. 63, 74 (D. Conn. 2013) (citing *Robidoux v. Celani,* 987 F.2d 931, 936–37 (2d Cir. 1993), and *Robinson v. Metro–North Commuter R.R. Co.,* 267 F.3d 147, 155 (2d Cir. 2001)). Commonality and typicality tend to merge because both of them "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart*, 131 S. Ct. at 2551 n.5.

Plaintiff's claims arise out of the same course of conduct and are based on the same legal theories as the absent class members. Plaintiff and class members were governed by a common and materially uniform account documents, exposed to the same common omissions and misrepresentations, and subjected to the same practice of charging OD Fees on APPSN transactions. And as discussed below, Plaintiff and the Classes seek redress via common legal claims for breach of contract under state laws, and, with respect to the New York Subclass, under GBL § 349.

Thus, the claims of Plaintiff and the Class arise from the same course of conduct by Capital One and are based on the same legal theories, thereby satisfying Rule 23(a)(3). Typicality is satisfied. *Moreno v. Deutsche Bank Ams. Holding Corp.*, 2017 U.S. Dist. LEXIS 143208, at *18 (S.D.N.Y. Sep. 5, 2017).

### 4.    Adequacy

Class certification is appropriate if "the representative parties will fairly and adequately protect

the interests of the class." Fed. R. Civ. P. 23(a)(4). "Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 60 (2nd Cir. 2000); *see also Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006) (noting need for proposed class representative to have interest in vigorously pursuing class claims). Any conflicts between the presentative parties and members of the class must be "fundamental" in order to defeat class certification. *Denney*, 443 F.3d at 268. Whereas "typicality focuses on the similarities between the class representative's claims and those of the class, . . . adequacy focuses on evaluating the incentives that might influence the class representative in litigating the action, such as conflicts of interest." 1 William B. Rubenstein, Newberg on Class Actions § 3:32 (5th ed. 2016).

Plaintiff in this case easily meets both factors. First, Ms. Roberts and counsel do not have any conflicts of interest with other class members. Second, Ms. Roberts and counsel have, and will continue to, vigorously prosecute this action on the Classes behalf. Ms. Roberts has responded to discovery, sat for a deposition, kept apprised of the case, and will testify at trial if necessary. Streisfeld Decl. Ex. 9 at 339:24–344:6. By any measure, she is an adequate class representative. Moreover, counsel is highly experienced in consumer finance and complex class action litigation. *See* Streisfeld Decl. Ex. 13. Counsel has been appointed as class counsel in many consumer class actions recovering hundreds of millions of dollars for the classes they have represented, many involving OD Fees. *Id.*

Ms. Roberts's behavior and understandings have been interrogated extensively in this litigation, and she has repeatedly shown herself to be a more than adequate class representative. Ms. Roberts repeatedly and convincingly testified she never would have knowingly incurred the devastatingly expensive OD Fees on APPSN transactions. Streisfeld Decl. Ex. 9 at 153:6-16; 359: 11- 360:25. Indeed, it was Capital One whose uniform overdraft fee policy *permitted*, and in reality,

*encouraged*, Ms. Roberts and other class members to spend funds needed to pay authorized transactions. Even if Capital One wishes to continue arguing that it was Ms. Roberts and class members who breached their own agreements, it is a defense that will be common to all class members, not just Ms. Roberts.[7]

Moreover, and as this Court has already held on summary judgment, Plaintiff did not benefit from the breach. DE# 131 at 28-29. Assuming the trier of fact construes the contracts in their favor, Ms. Roberts and all class members were damaged insofar as they were assessed OD Fees on APPSN transactions. The Court has already rejected Capital One's made-up, what-if world as "misconstruing Plaintiff's argument" and held that Capital One's argument is "unfounded." DE# 131 at 29. This finding should apply to all class members.

Nor is there any dispute that Ms. Roberts paid her claimed individual damages of $245, out of her own pocket, well before incurring any alleged debt to Capital One. Her claims therefore arise from the same course of events as the members of the Classes.  For example, in *In re Chase Bank USA, N.A. "Check Loan" Contract Litig.,* 274 F.R.D. 286 (N.D. Cal. 2011), a case challenging the bank's practice of raising minimum monthly payments after cardholders accepted fixed-interest-rate loans, Chase argued the class representatives were not suitable because some had defaulted on their contractual obligations and had large outstanding balances owed to Chase. The court rejected the argument. "Because any such defaults would have occurred after the alleged breach, however, the claims of any defaulting class members would still arise from the same course of events and the legal arguments to prove the defendant's liability would remain the same." *Id.* at 292 (internal quotations omitted). The same result

---

[7] The frequency by which Ms. Roberts overdrew her account is not relevant. Nor is it relevant that she sometimes allegedly "intentionally" overdrew her account and sometimes inadvertently did so. *Why* class members use Capital One's overdraft service, or *how frequently* they chose to do so, does not change the fact that Capital One provided an overdraft service to its members in accordance with certain terms. It breached those terms each and every time it assessed an OD Fee on an APPSN transaction. *See Gunter*, 2017 U.S. Dist. LEXIS 157243, at *16 ("[The class representative's] unusually frequent overdrafts suggest that she has suffered from United's practice more than most—not that her claims are qualitatively different.").

applies here.

**D.      The Putative Classes Satisfy the Requirements of Rule 23(b)(3)**

      **1.  Predominance**

Under Rule 23(b)(3), the Plaintiff must demonstrate "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 617. "Predominance is satisfied 'if resolution of some of the legal or factual questions that qualify each member's case as genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015); *see also Price*, 2018 U.S. Dist. LEXIS 138473, at *12.  Because the common questions of law and fact discussed above predominate over any individual questions, this standard is satisfied here.

      **a.      The Multistate Breach of Contract Class**

Certification of the multistate class, under nine jurisdictions' laws, involves one, predominant question: did Capital One breach its contract when it assessed OD Fees on APPSN transactions?  This question can and should be answered on a class-wide basis.

Only nine jurisdictions' laws apply to  class members' breach of contract claim by virtue of the contract's choice of law clause. The law in each of these states mirrors that of New York.  Under New York law, a plaintiff must prove (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages. *See, e.g., Terwilliger v. Terwilliger*, 206 F.3d 240, 245-46 (2d Cir. 2000). Because no state requires proof of any additional element, if Ms. Roberts prevails on her breach of contract claim under New York law, she will necessarily prove the breach of contract claim for all class members under all other applicable laws.  *See* Streisfeld Decl. Ex. 1.

18

Certification of a multistate class is appropriate where, as here, the law is sufficiently similar in each state. Indeed, "minute and insignificant" differences in state law do not preclude certification. *In re Telectronics Pacing Sys., Inc.,* 172 F.R.D. 271, 292 (S.D. Ohio 1997); *see also Simon v. Phillip Morris*, 124 F. Supp. 2d 46, 77 (E.D.N.Y. 2000); *Steinberg v. Nationwide Mut. Ins. Co.,* 224 F.R.D. 67, 76-80 (E.D.N.Y. 2004); *Hansen v. Monumental Life Ins. Co., No. 05-cv-1905 (JBA),* 2008 U.S. Dist. LEXIS 112254, at *21 (D. Conn. Mar. 6, 2008); *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 962 F. Supp. 450, 525 (D.N.J. 1997); American Law Institute, Principles of the Law: Aggregate Litigation § 2.05(b) (2010) ("The court may authorize aggregate treatment of multiple claims, or of a common issue therein, by way of a class action if the court determines that (1) a single body of law applies to all such claims or issues; (2) different claims or issues are subject to different bodies of law that are the same in functional content; or (3) different claims or issues are subject to different bodies of law that are not the same in functional content but nonetheless present a limited number of patterns that the court . . . can manage by means of identified adjudicatory procedures"). "Thus, the crucial inquiry is not whether the laws of multiple jurisdictions are implicated, but whether those laws differ in a material manner that precludes the predominance of common issues." *In re US FoodServ. Pricing Litig.*, 729 F.3d at 127.

In *Klay v. Humana, Inc.*, 382 F.3d 1241, 1263 (11th Cir. 2004), the court "accept[ed] the proposition that the applicable state laws governing contract interpretation and breach are sufficiently identical to constitute common legal issues." As the court explained, determining breach is a simple question of contract interpretation that does not vary from state to state: "A breach is a breach is a breach, whether you are on the sunny shores of California or enjoying a sweet autumn breeze in New Jersey." *Id.* at 1262-63.[8] And the court in *In re Conseco Life Ins. Co. Lifetrend Ins. Sales & Mktg. Litig.*, 270

---

[8] The court ultimately denied certification in *Klay* only because many different contracts applied to different defendants and because the defendants breached the contracts through a variety of means and differing computer algorithms that were not subject to generalized proof. The facts in *Klay* are inapposite, where here uniform form contracts were offered to all class members and the breach is identical for all class members.

F.R.D. 521, 529 (N.D. Cal. 2010), certified a 48-state breach of contract class in a case involving form policy contracts and also found that "the law relating to the elements of breach does not vary greatly from state to state." *Id.; see also In re US FoodServ. Pricing Litig.*, 729 F.3d at 127 ("[S]tate contract law defines breach consistently such that the question will usually be the same in all jurisdictions"); *Hanks v. Lincoln Life & Annuity Co. of New York,* 330 F.R.D. 374, 383 (S.D.N.Y. 2019) (certifying a breach of contract class and noting "the applicable legal standard for breach of contract is not materially different across jurisdictions").

As the evidentiary proffer summarizes, the salient evidence necessary to establish Plaintiff's breach of contract claim is common to Plaintiff and all members of the national class.[9]  To summarize, the factfinder will determine how the contract should be construed, whether the contract was breached when Capital One assessed OD Fees on APPSN transactions, and class-wide damages with the benefit of evidence offered through Plaintiff's expert, Mr. Olsen. The evidentiary presentation changes little if there are 100 class members or 100,000. In either instance, Plaintiff would present the *same* evidence of (1) Capital One's form adhesion contract, with identical terms, applicable to Plaintiff and class members; (2) class members' use of Capital One's overdraft service; (3) the uniform manner in which Capital One assessed OD Fees on APPSN transactions; (4) the damages incurred as a result of the improper OD Fees on APPSN transactions. Because the contract and method by which it was breached by Capital One would be the same as to all consumers, common issues predominate over individual issues. *See* Section III.B*, supra.*

---

[9] Importantly, the Court has already skeptical that individualized evidence of the Parties' subjective intent at drafting is admissible and/or relevant when interpreting a form contract. *See* DE#131. at 26 ("I find somewhat persuasive the cases that suggest that in the case of formal contracts the parties' intent at the inception of the contract isn't really a useful question to ask."). To the extent extrinsic evidence of industry custom and practice is admissible (Plaintiff maintains it is not), such evidence can be applied class-wide. *See In re U.S. Foodservice Inc. Pricing Litig.,* 729 F.3d at 125 (certifying a breach of contract class and noting that extrinsic evidence of "generalized trade usage . . . [is] appropriately considered on a class-wide basis.").

### b.   The New York Consumer Protection Act Subclass

Like with the multistate breach of contract class, the New York subclass will require the factfinder to resolve one, central issue: did Capital One mislead consumers regarding its assessment of overdraft fees on APPSN transactions? Under the GBL § 349, Plaintiff is required to demonstrate that Capital One engaged in materially misleading conduct directed at consumers. *Price*, 2018 U.S. Dist. LEXIS 138473, at *14; *Nick's Garage, Inc. v. Progressive Casualty Insurance Company*, 875 F.3d 107, 124 (2d Cir. 2017). New York uses an objective standard and does not require actual reliance. *See Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) ("§ 349 does not require proof of actual reliance"); *see also Nick's Garage, Inc.*, 875 F.3d at 124 ("Whether a representation or an omission, the deceptive practice must be likely to mislead a reasonable consumer acting reasonably under the circumstances.").

Like her breach of contract claim, Plaintiff's GBL claim is subject to common proof. *See* Ex. 1. Ms. Roberts will seek to prove that Capital One's representations in its Agreements, its opt in form, and on its online and mobile banking interfaces, were misleading insofar as they led consumers like Ms. Roberts to believe APPSN transactions would not incur OD Fees. Common issues thus predominate with respect to the GBL § 349 claim and courts routinely such claims. *See Price*, 2018 U.S. Dist. LEXIS 138473, at *12-13*; Rodriguez v. It's Just Lunch, Int'l,* 300 F.R.D. 125, 147 (S.D.N.Y. 2014)*; Jermyn v. Best Buy Stores, L.P.,* 256 F.R.D. 418, 423 (S.D.N.Y. 2009); *Dupler,* 249 F.R.D. at 37; *In re Scotts EZ Seed Litig.,* 304 F.R.D. at 409.

In *Bank of Hawaii*, another overdraft case, the court recently certified a class of Hawaii consumers brought under Hawaii's consumer protection statute. The court noted that such claims were well-suited for class certification: "[T]he fact-finder will focus on the standardized written materials given to all plaintiffs and determine whether those materials are likely to mislead consumers acting reasonably under the circumstances . . . Because Hawaii uses an objective test to effectuate its

remedial consumer protection statute, individual reliance issues are not a proper ground to deny class certification." *Bank of Hawaii*, 2019 U.S. Dist. LEXIS 109110, at *12 (internal quotations and citations omitted). Identical reasoning applies here.

### c.     Damages Are Amenable to Calculation on a Class-wide Basis

"'Individualized damages determinations alone cannot preclude certification under Rule 23(b)(3),' but it is a factor to 'consider in deciding whether issues susceptible to generalized proof 'outweigh' individual issues.'" *Price*, 2018 U.S. Dist. LEXIS 138473, at *12-13 (quoting *Roach*, 778 F.3d at 408-09); *Klay*, 382 F.3d at 1259-60 ("[W]here damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods, the fact that damages must be calculated on an individual basis is no impediment to class certification); Advisory Committee Notes to Rule 23(b)(3) (certification appropriate "despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class.").

Here, Capital One's records will allow Plaintiff's expert, Mr. Olsen, to use Capital One's data to identify class members and systematically calculate class members' damages for APPSN transactions. Capital One maintains and stores the historical transaction information, including records of all debit transactions in a searchable format. Streisfeld Decl. Ex.12 at 211:2-20. In fact, in reliance on Plaintiff's same expert, the court in *TD Bank* certified the class because the bank's records could be used to identify class members and the harm that they suffered.

> Mr. Olsen has adequately demonstrated he can mine the Bank's customer transaction data, determine the number of fees each customer did incur or would have incurred under differing accounting and posting scenarios defined by objective criteria, and adjust these calculations based upon data parameters established by the Court.

*TD Bank,* 325 F.R.D. at 173. The same is true here, with Mr. Olsen confirming that he has a reliable way to recreate the available balance at the time Capital One authorized debit card transactions. *See* Streisfeld Decl. Ex. 7 at 19-21. The calculation of damages is therefore not an impediment to

certification and any critique of Mr. Olsen's methodology is a merits, not class certification, question.

**2.      Superiority**

Rule 23(b)(3) lists four factors which courts should consider in determining whether a class action is superior to other means of adjudication: "individual control of litigation, prior actions involving the parties, the desirability of the forum, and manageability." *Sykes*, 780 F.3d at 82. Manageability "is, by the far, the most critical concern in determining whether a class action is a superior means of adjudication," *id.* (quoting 2 William B. Rubenstein, Newberg on Class Actions § 4.72 (5th ed. West 2014), and failure to certify an action "on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule." *In re Visa Check*, 280 F.3d at 140 (internal quotation marks omitted).  And in cases involving class members with small claims, "the class action device is frequently superior to individual actions." *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010).

The pertinent superiority factors are: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3). All of these factors favor class treatment here.

Here, the superiority requirement is clearly met. For the first factor, the value of each claim on an individual level is not sufficient to justify the litigation expenses associated with proving the claim. Absent a class action, recovery for the class members would not be economically feasible. The members of the Classes therefore do not have a strong interest in controlling their own lawsuits against Capital One. Moreover, if individual class members wish to control his or her own lawsuit, they will be provided notice and an opportunity to opt out.

For the second factor, counsel are not aware of any pending litigation in which the claims at

issue in this case are being separately pursued by any class members. As a result, the second factor in Fed. R. Civ. P. 23(b)(3) supports the conclusion that a class action is the superior method for resolution of the claims in the Complaint.

Consideration of the third factor in Fed. R. Civ. P. 23(b)(3) (the desirability of concentrating the litigation of the claims in the particular forum) further demonstrates that a class action is superior. As discussed, *supra*, this case involves legal and factual issues that are common to all class members. Accordingly, it is desirable to concentrate this litigation in this Court.

Finally, as the Trial Plan confirms, there are no management difficulties unique to this case that would prevent class certification. The factual and legal issues are based on a common nucleus of operative facts and legal theories. Resolution of these issues as to Plaintiff will resolve these issues as to all class members. In addition, there is no meaningful alternative for prosecution of these claims. This action provides an efficient vehicle for resolving the claims of thousands of individuals in a single proceeding. Moreover, the Second Circuit has cautioned that denying certification on manageability grounds is disfavored. *In re Visa Check,* 280 F.3d at 140.

In any event, the Court will not encounter any difficulties in the management of the Classes. Rather, litigation of thousands of individual cases would unnecessarily burden the courts. Furthermore, the reality is that individual litigation is unlikely, if not impossible, given the fact that the amount of each class member's injury is likely very small. As the Supreme Court observed, "the policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem*, 521 U.S. at 617. Thus, the likely alternative to this proceeding is not multiple individual actions, but none.

E.     **Ascertainability**

Finally, the Second Circuit recently held that Rule 23 does not have a standalone

ascertainability requirement. *In re Petrobras Sec.,* 862 F.3d 250, 265 (2d Cir. 2017). Instead, "[t]he ascertainability doctrine that governs in this Circuit requires only that a class be defined using objective criteria that establish a membership with definite boundaries." *Id.* Such a requirement is clearly satisfied here. The class definitions rely on objective criteria from which class membership can be determined. Further, Capital One maintains meticulous records of the amount of OD Fees charged in addition to detailed transaction data that resulted in those charges. This information, which is in a form that can be analyzed using algorithms, will be used to programmatically identify class members and calculate damages in order to provide class notice to those harmed by Capital One's APPSN transaction OD Fee policy. Streisfeld Decl. Ex. 7 at 19-22. Accordingly, ascertainability is not a barrier to certification.

## II.     CONCLUSION

Plaintiff respectfully requests that the Court certify the Classes, and direct that a Notice Plan be presented to the Court.

Dated:  September 13, 2019

By: /s/ Jonathan Streisfeld
Jonathan M. Streisfeld (*pro hac vice*)
Jeff Ostrow (*pro hac vice*)
Joshua R. Levine (*pro hac vice*)
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
One West Las Olas Boulevard, Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-525-4100
Facsimile: 954-525-4300
*streisfeld@kolawyers.com*
*ostrow@kolawyers.com*

Jeffrey D. Kaliel (*pro hac vice*)
**KALIEL PLLC**
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C.  20009
(202) 350-4783
*jkaliel@kalielpll.com*
*sgold@kalielpllc.com*

Hassan A. Zavareei (*pro hac vice*)
Anna C. Haac (*pro hac vice*)
**TYCKO & ZAVAREEI LLP**
1828 L Street, N.W., Suite 1000
Washington, D.C. 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
hzavareei@tzlegal.com
ahaac@tzlegal.com

Laurie Rubinow
James E. Miller
**SHEPHERD, FINKELMAN, MILLER**
**& SHAH, LLP**
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile: (866) 300-7367
lrubinow@sfmslaw.com
jmiller@sfmslaw.com

## CERTIFICATE OF SERVICE

I, Jonathan M. Streisfeld, hereby certify that on September 13, 2019, caused PLAINTIFF'S

MOTION FOR CLASS CERTIFICATION, with supporting memorandum of law, declaration, and

exhibits, to be served via CM/ECF and email on the following counsel of record:

James R. McGuire (pro hac vice)
Sarah N. Davis (pro hac vice)
Lauren Wroblewski (pro hac vice)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California
Telephone: (415) 268-7000
jmcguire@mofo.com
sarahdavis@mofo.com
lwroblewski@mofo.com

Jessica L. Kaufman
Tiffani B. Figueroa
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
jkaufman@mofo.com

/s/ Jonathan M. Streisfeld
Jonathan M. Streisfeld