UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TAWANNA ROBERTS, on behalf of herself and all others similarly situated, | |
| Plaintiff, | CASE NO.  1:16-cv-04841-LGS |
| vs. | |
| CAPITAL ONE, N.A., | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................... 1

II.   BACKGROUND .................................................................................................... 1

    A.  Class Counsel's Investigation and Procedural History ......................................... 1

    B.  Summary of the Settlement Terms ....................................................................... 4

        1.  The Settlement Class ....................................................................................... 4

        2.  Relief for the Benefit of the Settlement Class ................................................ 4

            a.  Settlement Fund & Settlement Administration Costs ................................. 4

            b.  Practice Change – Modified Disclosures ..................................................... 6

        3.  Releases ......................................................................................................... 6

        4.  The Notice Program ....................................................................................... 6

        5.  Settlement Administration .............................................................................. 8

        6.  Settlement Termination .................................................................................. 9

        7.  Class Representative's Service Award ............................................................ 9

        8.  Attorneys' Fees and Costs ............................................................................. 9

III.  ARGUMENT ..................................................................................................... 10

    A.  The Legal Standard for Preliminary Approval .................................................. 10

    B.  This Settlement Satisfies the Criteria for Preliminary Approval ........................ 11

        1.  This Settlement Is the Product of Good Faith, Informed and Arm's Length
            Negotiations ................................................................................................. 12

        2.  The Facts Support a Preliminary Determination That the Settlement Is Fair,
            Adequate and Reasonable .............................................................................. 12

            a.  The Risks of Establishing Liability and Damages Demonstrate the
               Settlement Is Within the Range of Reasonableness in Light of All
                Attendant Risks of Litigation and Relative to the Best Possible Recovery .......... 13

            b.  The Expense, Complexity, and Likely Duration of Further Litigation ................. 16

            c.  The Risk of Maintaining Class Action Status Throughout Trial ........................... 17

      d.   The Extent of Discovery Completed and the Stage of the Proceedings ..............18

      e.   The Effectiveness of Distributing Relief, the Release and Equitable Treatment of Class Members ...................................................................19

      f.   The Terms of Any Proposed Award of Attorneys' Fees ........................20

  C.  Certification of the Settlement is Approriate .........................................................20

  D.  The Court Should Approve the Proposed Notice Plan Because It Is Constitutionally Sound ......................................................................................23

  E.  Notice Pursuant to the Class Action Fairness Act ................................................24

  F.  Plaintiff's Counsel Should Be Appointed Class Counsel .......................................24

IV. CONCLUSION ...........................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>                                                                                                    <u>**Page(s)**</u>

*Am. Medical Ass'n v. United Healthcare Corp.,*
   2009 WL 1437819 (S.D.N.Y. May 19, 2009) ................................................................. 13

*Amchem Products, Inc. v. Windsor,*
   521 U.S. 591 (1997) ....................................................................................................... 20, 22

*Bellifemine v. Sanofi-Aventis U.S. LLC,*
   2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ................................................................. 17

*Bodnar v. Bank of Am., N.A.,*
   No. 14-3224, 2016 U.S. Dist. LEXIS 121506 (E.D. Pa. Aug. 4, 2016) ......................... 15

*Charron v. Pinnacle Group N.Y. LLC,*
   874 F. Supp. 2d 179 (S.D.N.Y. 2012) .......................................................................... 24

*Charron v. Weiner,*
   731 F.3d 241 (2d Cir. 2013) ...................................................................................... 16, 24

*Christine Asia Co. v. Jack Yun Ma,*
   2019 U.S. Dist. LEXIS 179836 (S.D.N.Y. Oct. 16, 2019) ........................................ 13, 14

*City of Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2d Cir. 1974) ........................................................................................ 13

*D'Alauro v. GC Services Ltd. P'ship,*
   168 F.R.D. 451 (E.D.N.Y. 1996) ................................................................................ 22

*D'Amato v. Deutsche Bank,*
   236 F.3d 78 (2d Cir. 2001) ........................................................................................ 12, 13

*Denney v. Deutsche Bank AG,*
   443 F.3d 253 (2d Cir. 2006) ........................................................................................ 22

*Dupler v. Costco Wholesale Corp.,*
   705 F. Supp. 2d 231 (E.D.N.Y. 2010) ...................................................................... 13, 17

*Ferrick v. Spotify USA Inc.,*
   2018 U.S. Dist. LEXIS 86083 (S.D.N.Y. May 22, 2018) ........................................... 13

*Fleisher v. Phx. Life Ins. Co.,*
   2015 U.S. Dist. LEXIS 121574 (S.D.N.Y. Sep. 9, 2015) ........................................... 13

*Flores v. One Hanover, LLC,*
   2014 U.S. Dist. LEXIS 78269 (S.D.N.Y. June 9, 2014) ............................................. 18

*Gilliam v. Addicts Rehab. Ctr. Fund,*
   2008 U.S. Dist. LEXIS 23016 (S.D.N.Y. Mar. 24, 2008) .......................................... 19

*Goldberger v. Integrated Res., Inc.,*
  209 F.3d 43 (2d Cir. 2000) .................................................................................................. 13

*Hawthorne v. Umpqua Bank, No. 11-cv-06700-JST,*
  2015 U.S. Dist. LEXIS 56370 (N.D. Cal. Apr. 28, 2015) .................................................. 15

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.,*
  2006 U.S. Dist. LEXIS 17588 (S.D.N.Y. Apr. 6, 2006) .................................................... 13

*In re Austrian & German Bank Holocaust Litig.,*
  80 F.Supp.2d 164 (S.D.N.Y.2000) ...................................................................................... 16

*In re Checking Account Overdraft Litig.,*
  No. l:09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 190562, (S.D. Fla. Aug. 2, 2013) .............................. 15

*In re Checking Account Overdraft Litig.,*
  No. l:09-MD-02036-JLK, 2015 U.S. Dist. LEXIS 193690, (S.D. Fla. May 22, 2015) .................. 15

*In re Glob. Crossing Sec. & ERISA Litig.,*
  225 F.R.D. 436 (S.D.N.Y. 2004), ...................................................................................... 14

*In re GSE Bonds Antitrust Litig.*
  In re GSE Bonds Antitrust Litig., 2019 U.S. Dist. LEXIS 194736 (S.D.N.Y. Nov. 7, 2019) ...... 19

*In re Indep. Energy Holdings PLC Sec. Litig.,*
  2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) .................................................................. 14

*In re Initial Pub. Offering Sec. Litig.,*
  243 F.R.D. 79 (S.D.N.Y. 2007) .......................................................................................... 10

*In re Nasdaq Mkt.-Makers Antitrust Litig.,*
  176 F.R.D. 99 (S.D.N.Y. 1997) .......................................................................................... 11

*In re PaineWebber Ltd. P'ships Litig.,*
  171 F.R.D. 104 (S.D.N.Y. 1997) .................................................................................. 14, 18

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,*
  330 F.R.D. 11 (E.D.N.Y. 2019) .................................................................................... 19, 20

*In re Sumitomo Copper Litig.,*
  189 F.R.D. 274 (S.D.N.Y. 1999) ........................................................................................ 16

*In re Telik Inc. Sec. Litig.,*
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) ................................................................................ 13

*In re Visa Check/MasterMoney Antitrust Litig.,*
  280 F.3d 124 (2d Cir. 2001) ............................................................................................... 23

*Lizondro-Garcia v. Kefi LLC,*
  300 F.R.D. 169 (S.D.N.Y. 2014) ........................................................................................ 21

*Marisol A. by Forbes v. Giuliani,*
    126 F.3d 372 (2d Cir. 1997) ................................................................................................. 22

*Meredith Corp. v. SESAC, LLC,*
    87 F. Supp. 3d 650 (S.D.N.Y. 2015) ..................................................................................... 19

*Mosser v. TD Bank, N.A.,*
    No. 1:09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 187627, (S.D. Fla. Mar. 18, 2013) ................ 15

*Mullane v. Central Hanover Navy Federal & Trust Co.,*
    339 U.S. 306 (1950) ............................................................................................................. 23

*Newman v. Stein,*
    464 F.2d 689 (2d Cir. 1972) ................................................................................................. 14

*Odom v. Hazen Transport, Inc.,*
    275 F.R.D. 400 (W.D.N.Y. 2011) ......................................................................................... 17

*Reed v. Continental Guest Svcs. Corp.,*
    2011 WL 1311886 (S.D.N.Y. Apr. 4, 2011) ......................................................................... 11

*Robidoux v. Celani,*
    987 F.2d 931 (2d Cir. 1993) ................................................................................................. 21

*Saddle Rock Partners Ltd. v. Hiatt, No. 96-cv-9474-SHS,*
    2000 WL 1182793 (S.D.N.Y. Aug. 21, 2000) ....................................................................... 21

*Schulte v. Fifth Third Bank,*
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ................................................................................... 15

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.,*
    659 F.3d 234 (2d Cir. 2011) ................................................................................................. 21

*Steen v. Cap. One (In re Checking Account Overdraft Litig.),*
    No. 1:09-MD-02036-JLK, Doc. # 4168 (S.D. Fla. May 22, 2014) ........................................... 4

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini,*
    258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) .......................................................................... 17

*Thompson v. Metropolitan Life Ins. Co.,*
    216 F.R.D. 55 (S.D.N.Y. 2003) ............................................................................................ 14

*Torres v. Bank of Am.,*
    830 F. Supp. 2d 1330 (S.D. Fla. 2011) ................................................................................ 15

*Trombley v. Nat'l City Bank,*
    826 F. Supp. 2d 179 (D.D.C. 2011) ..................................................................................... 15

*United States v. Glens Falls Newspapers, Inc.,*
    160 F.3d 853 (2d Cir. 1998) ................................................................................................. 16

*Wal-Mart Stores v. Visa U.S.A.*,
   396 F.3d 96 (2d Cir. 2005) ................................................................................ 10, 12

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................................................. 21

**<u>Rules and Statutes</u>**

28 U.S.C. § 1715(b) ................................................................................................. 24

Federal Rule of Civil Procedure 23 .................................................................. *passim*

Federal Rule of Civil Procedure 23(a) ............................................................. 21, 25

Federal Rule of Civil Procedure 23(a)(1) .............................................................. 21

Federal Rule of Civil Procedure 23(a)(2) .............................................................. 21

Federal Rule of Civil Procedure 23(a)(3) .............................................................. 21

Federal Rule of Civil Procedure 23(a)(4) .............................................................. 21

Federal Rule of Civil Procedure 23(b)(1) .............................................................. 23

Federal Rule of Civil Procedure 23(b)(2) .............................................................. 23

Federal Rule of Civil Procedure 23(b)(3) ...................................... 4, 22, 23, 25

Federal Rule of Civil Procedure 23(e) ................................................................... 13

Federal Rule of Civil Procedure 23(e)(1) ......................................................... 20, 23

Federal Rule of Civil Procedure 23(e)(2) ...................................... 10, 11, 12, 19

Federal Rule of Civil Procedure 23(e)(3) .............................................................. 10

Federal Rule of Civil Procedure 23(g) ................................................................... 25

Federal Rule of Civil Procedure 23(g)(1)(A)(i-iv) ................................................ 24

Federal Rule of Civil Procedure 23(g)(1)(B) ........................................................ 24

1 Herbert Newberg & Alba Conte, Newberg on Class Actions § 3.10 (3d ed. 1992) ........................ 22

Manual for Compl. Lit., § 21.311 ........................................................................... 23

Manual for Compl. Lit., § 21.312 ........................................................................... 23

Manual for Compl. Lit., § 21.632 ........................................................................... 21

Manual for Compl. Lit., § 21.633 ........................................................................... 21

## I.  INTRODUCTION

Plaintiff, Tawanna Roberts, respectfully moves for Preliminary Approval of the Settlement Agreement and Releases, attached as **Exhibit A**, which will resolve all claims against Capital One, N.A. in the Action.[1]  Preliminary Approval should be granted because the Settlement provides substantial relief for the Settlement Class and the terms of the Settlement are well within the range of reasonableness and consistent with applicable case law.  Indeed, the Settlement – which provides for Capital One's: (a) cash payment of $17,000,000.00; and (b) agreement to pay up to $750,000.00 towards Settlement Administration Costs[2] – is an outstanding result for the Settlement Class.

The Settlement satisfies all Second Circuit criteria for approval. A keystone of the Settlement is that all Settlement Class Members will automatically receive their *pro rata* share of the Net Settlement Fund. There are no claim forms to fill out and Settlement Class Members will not be asked to prove that they were damaged by Capital One's practice of assessing Overdraft Fees on Debit Card Transactions that authorized against a positive balance but settled against a negative balance. Instead, Class Counsel and their expert will use bank data to determine the Account Holders' Relevant Overdraft Fees and will then apply a formula to calculate each Settlement Class Member's appropriate distribution. Thus, the Settlement Fund will be fairly allocated based on each Settlement Class member's individual claim. Consequently, this Settlement is fair and reasonable and merits Preliminary Approval.

## II.  BACKGROUND

### A.  Class Counsel's Investigation and Procedural History

On June 22, 2016, Plaintiff filed the Action and alleged that Capital One improperly charged

---

[1] All capitalized terms used throughout this memorandum have the same meanings as those found in the Settlement Agreement.
[2] Capital One will be entitled to reimbursement of the Settlement Administration Costs if, and only if, there is a residual fund due to uncashed checks.

Overdraft Fees on Debit Card Transactions that authorized against a positive balance but settled against a negative balance. ECF #1. Plaintiff alleged that this practice is prohibited by the terms of Capital One's Rules Governing Deposit Accounts and Electronic Fund Transfer Agreement and Disclosure for Personal and Commercial Accounts (collectively ("Account Agreements"). *Id.*

Prior to filing suit, Class Counsel spent many hours investigating the claims of several potential plaintiffs against Capital One. *See* Joint Declaration of Class Counsel Jeff Ostrow, Hassan Zavareei and Jeffrey Kaliel ("Decl.") at ¶ 7.  Class Counsel interviewed a number of Capital One customers to gather information about Capital One's conduct and its impact upon consumers. *Id.* This information was essential to Class Counsel's ability to understand the nature of Capital One's conduct, the Account Agreements, and potential remedies. *Id.* Class Counsel further expended significant resources researching and developing the legal claims at issue. *Id.* at ¶ 8. Class Counsel is familiar with the claims as they have litigated and resolved several similar cases. *Id.* ¶ 9. Class Counsel has experience in understanding the damages at issue, the information critical to determine class membership, and the data necessary to calculate each Settlement Class member's damages. *Id.*

 On September 2, 2016, Capital One filed a Motion to Dismiss. ECF #18-20. On October 11, 2016, Plaintiff opposed that motion. ECF #30. On May 4, 2017, the Court granted the Motion to Dismiss and entered Final Judgment on May 5, 2017. ECF #41, 42. On June 2, 2017, Plaintiff filed a Notice of Appeal. ECF #43. On December 1, 2017, the Second Circuit reversed the Court's judgment, remanding the Action for further proceedings, and issued its mandate on December 28, 2017. ECF #45. On May 31, 2018, Capital One filed its Answer and Affirmative Defenses. ECF #66.

The Parties then engaged in extensive fact and class discovery, retained experts, and exchanged expert reports. The Parties served written discovery, Class Counsel reviewed approximately 49,285 pages of documents and additional bank data, and the Parties took eight depositions. Decl. at ¶ 11.

On October 18, 2018, the Parties participated in a full day mediation in New York with

mediator Simeon Baum, Esq. In advance of the mediation, Class Counsel spent a significant amount of time, with the assistance of a well-qualified expert, analyzing data related to Capital One's assessment of Relevant Overdraft Fees to estimate class damages. *Id.* at ¶ 12.  The mediation concluded that day without the Parties reaching an agreement. *Id.*

On January 25, 2019, Capital One moved for summary judgment. ECF #96-100. On March 15, 2019, Plaintiff filed her opposition and cross-motion for partial summary judgment. ECF #105-07. On March 25, 2019, Capital One replied in support of its motion and opposed the cross-motion. ECF #108-12. On April 1, 2019, Plaintiff replied in support of her cross-motion. ECF #115-16. On June 25, 2019, the Court heard oral argument on those motions and denied them. ECF #130-31. On July 30, 2019, Capital One moved for reconsideration of its summary judgment motion, which Plaintiff opposed and has not been decided. ECF #136-37, 140. On September 13, 2019, Plaintiff filed her Motion for Class Certification, which likewise remained pending when the Settlement was reached. ECF #145-47.

On October 10, 2019, the Parties again met in New York with Simeon Baum, Esq. for a second full day of mediation. Decl. at ¶ 14. The case did not settle that day, but the Parties continued to negotiate and ultimately agreed to the material terms of a settlement on October 25, 2019. *Id.* The Parties then filed a Notice of Settlement confirming their agreement in principle and requesting that the Court stay all deadlines in the Action. ECF #154.

In summary, this Action was heavily litigated prior to negotiating the Settlement. Class Counsel spent significant time communicating with Plaintiff, investigating facts, researching the law, preparing the Complaint, engaging in significant discovery and motion practice, working with an expert witness, and reviewing important documents and data. Decl. at ¶ at 15. This resulted in the Settlement for which Preliminary Approval is respectfully requested.

B. **Summary of the Settlement Terms.**

1. **The Settlement Class.**

The Settlement Class is a Federal Rule of Civil Procedure 23(b)(3) opt-out class:

All current and former Capital One customers, other than those with Capital One 360 accounts, who were charged an Overdraft Fee on a debit card or ATM transaction that was authorized into a positive available balance, but settled against a negative balance, during the Class Period.  Excluded from the Settlement Class is Capital One, its parents, subsidiaries, affiliates, officers and directors, all Settlement Class members who make a timely election to be excluded, and all judges assigned to this litigation and their immediate family members.

Agreement at 47. Class Period means:

a.    for Settlement Class Members who established Accounts in Connecticut, Louisiana, New Jersey, and New York, the period from August 16, 2010, through November 7, 2018; [3]

b.    for Settlement Class Members who established Accounts in Virginia, the period from June 22, 2011, through November 7, 2018;

c.    for Settlement Class Members who established Accounts in Texas, the period from June 22, 2012, through November 7, 2018; and

d.    for Settlement Class Members who established Accounts in Delaware, Maryland, and Washington D.C. the period from June 22, 2013, through November 7, 2018.

Agreement at ¶ 21.

2. **Relief for the Benefit of the Settlement Class.**

a. **Settlement Fund & Settlement Administration Costs**

The Settlement consists of a Settlement Fund of $17,000,000.00 for Settlement Class Members, and Capital One's separate commitment to pay up to $750,000.00 toward Settlement Administration Costs. Agreement at ¶¶ 50, 53. The Settlement Fund will be used to pay: (a) Settlement Class Members their respective Settlement Class Member Payments; (b) Class Counsel for any Court

---

[3] For Settlement Class members who established their accounts in Connecticut, Louisiana, New Jersey, and New York, the Class Period begins on August 16, 2010, because August 15, 2010 is the end of the class period in *Steen v. Cap. One (In re Checking Account Overdraft Litig.)*, No. 1:09-MD-02036-JLK, Doc. # 4168 (S.D. Fla. May 22, 2014), which settled and released claims regarding overdraft fees against Capital One.

awarded attorneys' fees and litigation costs and expenses; (c) any Court awarded Service Award for the Class Representative; (d) Settlement Administration Costs, if any, above the Capital One Settlement Administration Costs Cap; and (e) in the event funds remain after the initial distribution to Settlement Class Members, as a result of uncashed checks, reimburse Capital One for up to what it paid toward Settlement Administration Costs up to the Settlement Administration Costs Cap, and make a second distribution, if feasible as explained below. *Id.* at ¶¶ 53, 81.

Settlement Class Members do not have to submit claims or take any other affirmative step to receive relief under the Settlement. Instead, as soon as practicable, but no later than 90 days following the Effective Date, Capital One and the Settlement Administrator will distribute the Net Settlement Fund. Agreement at ¶ 75. Current Account Holders will receive their distributions via a credit by Capital One to their accounts, with notice thereof, or by checks mailed by the Settlement Administrator. *Id.* at ¶ 76. Past Account Holders will exclusively receive check payments. *Id.* at ¶ 79. Any uncashed or returned checks will remain in the Settlement Fund, during which time the Settlement Administrator will make reasonable efforts to deliver Settlement Class Member Payments. *Id.* at ¶ 80.

All Settlement Class Members entitled to a Settlement Class Member Payment will receive a *pro rata* distribution from the Net Settlement Fund based on the number of Relevant Overdraft Fees during the Class Period. *Id.* at ¶¶ 71.c., 74. Because each Settlement Class Member Payment depends on his or her specific Account activity and the number of Settlement Class Members, it is impossible to determine each Settlement Class Member's likely recovery until after this calculation is done.

In the event funds remain in the Settlement Fund after the initial distribution to Settlement Class Members, Capital One shall be reimbursed for the Settlement Administration Costs it paid. *Id.* at ¶81.a. Thereafter, if funds remain, to the extent feasible, those funds shall be distributed in a second distribution to those Settlement Class Members that were paid or credited with a Settlement Class

Member Payment in the first distribution. *Id.* at ¶81.b. All Settlement Administration Costs of a second distribution will be paid out of the Settlement Fund. *Id.* at ¶81.d. If a second distribution is not feasible, or if funds remain after a second distribution, those funds shall be distributed to a *cy pres* recipient, proposed by the Parties and to be approved by the Court, that works to promote financial literacy. *Id.* at ¶81.c.

### b.   Practice Change – Modified Disclosures

On November 7, 2018, well after this Action was initiated, Capital One voluntarily modified its disclosures to better inform its members that they may incur an Overdraft Fee on Debit Card transactions that are authorized against a positive available balance, if at the time of settlement, the account balance is negative. This practice change inures to the benefits of Settlement Class members and to other Capital One customers and has resulted in and will continue to result in significant savings.

### 3.   Releases.

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released Capital One from claims relating to the subject matter of the Action. The Releases are set forth in Section XIII of the Agreement.

### 4.   The Notice Program.

The Parties recommend BrownGreer PLC as the Settlement Administrator. BrownGreer PLC is one of the leading notice administration firms in the United States. The Settlement Administrator will oversee the Notice Program, which is designed to provide the best notice practicable and is tailored to take advantage of the information Capital One has available about the Settlement Class. Decl. at ¶ 18. The Notice Program is reasonably calculated to apprise Settlement Class members of: the material Settlement terms; a date by which Settlement Class members may exclude themselves from the Settlement Class; a date by which Settlement Class Members may object to the Settlement; the Final Approval Hearing date; and the Settlement Website address where the Settlement Class may

access the Agreement and other related documents. Agreement at ¶¶ 58-60; *see also*, Mailed Notice and Email Notice attached hereto as ***Exhibits B&C***. The Notice and Notice Program constitute sufficient notice to all persons entitled to notice, and satisfies all applicable requirements of law, including Rule 23 and constitutional due process. Decl. at ¶ 18.

The Notice Program is comprised of three parts: (1) direct mail Postcard Notice to all Settlement Class members for whom Capital One lacks a current email address; (2) Email Notice to those Settlement Class members for whom Capital One maintains email addresses; and (3) Long Form Notice containing more detail than the Postcard Notice and Email Notice that will be available on the Settlement Website (www.CapitalOneOverdraftLitigation.com) and via U.S. mail upon request. Agreement at ¶¶ 51, 62. Among additional information, the Long Form notice will describe the procedure that Settlement Class members must follow to (a) opt-out of the Settlement, or (b) object to the Settlement; Class Counsel's application for attorneys' fees, costs and expenses; and/or for a Service Award for the Plaintiff.

Specifically, opt-outs and objections must be postmarked no later than the last day of the Opt-Out Period. *Id.* at ¶¶ 58-61. A valid objection must include: (a) the name of the Action; (b) the objector's full name, address and telephone number; (c) all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel; (d) the number of times the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case; (e) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or fee application; (f) the number of times in which objector's counsel and/or counsel's law firm have objected to a class action settlement within the five

years preceding the date that objector filed the objection, the caption of each case in which counsel

or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or

the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed

case in which the objector's counsel and/or counsel's law firm have objected to a class action

settlement within the preceding 5 years; (g) any and all agreements that relate to the objection or the

process of objecting—whether written or oral—between objector or objector's counsel and any other

person or entity; (h) the identity of all counsel (if any) representing the objector who will appear at the

Final Approval Hearing; (i) a list of all persons who will be called to testify at the Final Approval

Hearing in support of the objection; (j) a statement confirming whether the objector intends to

personally appear and/or testify at the Final Approval Hearing; and (k) the objector's signature (an

attorney's signature is not sufficient). *Id.* at ¶ 61.

The Notice Program (Postcard Notice and Email Notice, including the Notice Re-Mailing

Process) shall be completed no later than 60 days before the Final Approval Hearing. *Id.* at ¶ 65. The

Settlement Website, which will include hyperlinks to the Agreement, the Long Form Notice,

Preliminary Approval Order, and such other documents as the Parties agree or the Court orders

posted, will be established following Preliminary Approval and prior to the commencement of the

Notice Program. *Id.* at ¶¶ 51, 57-58.

The Settlement Administrator will also establish and maintain an automated toll-free telephone

line for the Settlement Class to call with Settlement-related inquiries and receive automated responses,

and which will accept requests for Long Form Notices. *Id.* at ¶ 57.d.

### 5. Settlement Administration

The Settlement Administrator will: (i) obtain and verify contact information for Settlement

Class members; (ii) establish and maintain a post office box for exclusion requests, an automated toll-

free telephone line and Settlement Website for Settlement related inquiries; (iii) handle any mailed or

e-mailed Class Member inquiries; (iv) process and report requests for exclusion and objections; and (v) process and transmit Settlement Class Member Payments, reimburse Capital One for Settlement Administration Costs, if applicable, and make secondary distribution or *cy pres* payments, if applicable. *Id.* at ¶ 57.

### 6. Settlement Termination.

Either Party may terminate the Settlement if the Settlement is rejected or materially modified by the Court or an appellate court. Agreement at ¶93.b.-d. Capital One also may terminate the Settlement if the number of Settlement Class members who timely request exclusion from the Settlement Class equals or exceeds the number or percentage specified in the separate letter executed by Class Counsel and Capital One. *Id.* at ¶ 94. The number or percentage shall be confidential except to the Court upon request for in camera review. *Id.*

### 7. Class Representative's Service Award.

Class Counsel will seek a Service Award of $15,000.00 for Plaintiff from the Settlement Fund in addition to the Settlement Class Member Payment that Plaintiff will be entitled to receive. Agreement at ¶ 91; Decl. at ¶15. The award will compensate Plaintiff for her considerable time, effort and risk she assumed in prosecuting the Action. Decl. at ¶15. Specifically, she assisted Class Counsel to successfully prosecute the Action and reach the Settlement, including: (1) submitting to interviews with Class Counsel; (2) locating and forwarding documents and information to Class Counsel; (3) written discovery responses and taking time off of work to sit for a full-day deposition; and (4) keeping apprised of the case and conferring with Class Counsel. *Id.* In so doing, the Plaintiff was integral to the case. *Id.*

### 8. Attorneys' Fees and Costs.

Class Counsel has not been paid for their extensive efforts or reimbursed for litigation costs and expenses. Class Counsel are entitled to request, and Capital One will not oppose, attorneys' fees

of up to 35% of the Settlement Fund, as well as reimbursement of litigation costs and expenses incurred in connection with the Action. Agreement at ¶ 87; Decl. at ¶ 20. Nevertheless, Class Counsel will seek no more than 30% of the Settlement Fund. Decl. at ¶ 20. The Parties negotiated and reached agreement regarding attorneys' fees, costs and expenses only after agreeing on all material terms of the Settlement. Agreement ¶ 92; Decl. ¶ 20.  Such award is subject to this Court's approval and will serve to compensate for the time, risk and expense Plaintiff's counsel incurred pursuing claims on Settlement Class Members' behalf.

## III. <u>ARGUMENT</u>

### A.  The Legal Standard for Preliminary Approval.

Courts have emphasized the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores v. Visa U.S.A.*, 396 F.3d 96, 116 (2d Cir. 2005). "Review of a proposed class action settlement generally involves a two-step process: preliminary approval and a subsequent 'fairness hearing.' The court first must review the proposed terms of settlement and make a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

Rule 23(e)(2) requires courts to consider whether, at the final approval stage, the following factors will likely weigh in favor of granting final approval in determining whether the settlement agreement is fair, reasonable, and adequate:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3);[4] and

---

[4] There is no such agreement to be identified. The only agreement is the Settlement Agreement.

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

A proposed settlement of a class action should be preliminarily approved where it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (granting preliminary approval). To evaluate a class settlement, courts examine the settlement's procedural and substantive fairness. *Reed v. Continental Guest Svcs. Corp.*, 2011 WL 1311886, at *2 (S.D.N.Y. Apr. 4, 2011).

## B.  This Settlement Satisfies the Criteria for Preliminary Approval.

The relevant factors weigh in favor of Preliminary Approval here. First, the Settlement was reached with no collusion and is the product of good-faith, informed and arm's length negotiations by competent counsel. Furthermore, a review of the fairness, adequacy and reasonableness factors demonstrates that the Settlement warrants Preliminary Approval.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Plaintiff believes that the claims asserted are meritorious and she would prevail if the case proceeded to trial. However, Capital One argues her claims are unfounded, denies any potential liability and Plaintiff's ability to certify a class, and up to the point of settlement was willing to litigate those claims vigorously. The Parties concluded the benefits of settlement in this case outweigh the risks and uncertainties of continued litigation, as well as the attendant time and expenses associated with contested class certification proceedings and possible interlocutory appellate review, completing merits discovery, pretrial motion practice, trial, and finally appellate review. Decl. at ¶ 21.

1. _This Settlement Is the Product of Good Faith, Informed and Arm's Length Negotiations._

Procedural fairness examines the negotiating process leading to the settlement. _D'Amato v. Deutsche Bank_, 236 F.3d 78, 85 (2d Cir. 2001). A strong initial presumption of fairness attaches to the proposed settlement if the settlement is reached after discovery by experienced counsel and after intensive arm's length negotiations. _Wal-Mart Stores, Inc._, 396 F.3d at 116. That is true here. Experienced attorneys familiar with class action litigation and with the relevant legal and factual issue represented the Parties. Decl. at ¶¶ 3-7; 9; 11; 17 and exhibits thereto.

Class Counsel is particularly experienced in the litigation, certification, trial, and settlement of nationwide class actions cases. _Id._ at ¶ 9. In negotiating this Settlement in particular, Class Counsel had the benefit of years of experience and familiarity with the facts, as well as with other cases involving similar claims. _Id._ Furthermore, as detailed above, Class Counsel thoroughly investigated and analyzed Plaintiff's claims and engaged in extensive motion practice throughout this Action and an appeal. Class Counsel reviewed thousands of pages of Capital One's documents and data, and took and defended multiple depositions. Id. at ¶ 11. Class Counsel engaged a data expert to analyze Capital One's sample data to determine whether a class could be ascertained and to support the Motion for Class Certification. _Id._ They were thus able to accurately evaluate the strengths and weaknesses of Plaintiff's claims. _Id._

2. _The Facts Support a Preliminary Determination That the Settlement Is Fair, Adequate and Reasonable._

A preliminary review of the Settlement supports Preliminary Approval under Rule 23(e)(2). The Second Circuit has identified nine factors (the _Grinnell_ factors) to be considered in determining the substantive fairness of a proposed settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the

> settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) *abrogated on other grounds by Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000). Although the *Grinnell* factors are routinely considered in connection with final approval of class action settlements, they are considered a "useful guide" at the preliminary approval stage as well. *Am. Medical Ass'n v. United Healthcare Corp.*, 2009 WL 1437819, at *3-4 (S.D.N.Y. May 19, 2009). The *Grinnell* factors remain applicable even after the amendment of Rule 23(e). *Christine Asia Co. v. Jack Yun Ma*, 2019 U.S. Dist. LEXIS 179836, *37 (S.D.N.Y. Oct. 16, 2019). "In applying these factors, not every factor must weigh in favor of the settlement, but rather the court should consider the totality of these factors in light of the particular circumstances." *Fleisher v. Phx. Life Ins. Co.*, 2015 U.S. Dist. LEXIS 121574, at *19 (S.D.N.Y. Sep. 9, 2015) (quoting *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008)). Applied here, the *Grinnell* factors weigh in favor of Preliminary Approval.[5]

> a. <u>The Risks of Establishing Liability and Damages Demonstrate the Settlement Is Within the Range of Reasonableness in Light of All Attendant Risks of Litigation and Relative to the Best Possible Recovery</u>

The range of reasonableness of the Settlement in light of the best possible recovery, and the range of reasonableness of the Settlement Fund to a possible recovery in light of all the attendant risks of litigation, are two *Grinnell* factors that are often combined for the purposes of analysis. *See Ferrick v. Spotify USA Inc.*, 2018 U.S. Dist. LEXIS 86083, *33-34 (S.D.N.Y. May 22, 2018). The Court need only determine if the Settlement falls within a "range of reasonableness," which "recognizes the

---

[5] The sole *Grinnell* factor not favoring settlement is the ability of the defendant to withstand a larger settlement; however, this standing alone is no reason to reject the Settlement. *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 U.S. Dist. LEXIS 17588, *42, (S.D.N.Y. Apr. 6, 2006). Where all of the other *Grinnell* factors weigh in favor of the Settlement, as they do here, "'this factor alone does not suggest the settlement is unfair.'" *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 241 (E.D.N.Y. 2010) (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001)). Another factor, the reaction of the class to the Settlement, cannot be gauged prior to Preliminary Approval and Notice to the Settlement Class.

uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Plaintiff and Class Counsel are confident in the strength of their case, but they are also pragmatic in their awareness of Capital One's various defenses, as well as the risks they faced in establishing both liability and damages. Courts routinely approve settlements where a plaintiff would have faced significant legal and factual obstacles to establishing liability. *Thompson v. Metropolitan Life Ins. Co.,* 216 F.R.D. 55, 63 (S.D.N.Y. 2003). Indeed, "[l]itigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). The adequacy of the amount achieved in settlement may not be judged in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *Christine Asia Co.*, 2019 U.S. Dist. LEXIS 179836, at *50-51 (internal quotations omitted).[6]

The dispute centers on Capital One's assessment of overdraft fees on Debit Card Transactions that authorized against a positive balance but purportedly settled against a negative balance. With this Settlement, Plaintiff has achieved her desired goal of compensating class members charged Relevant Overdraft Fees during the Class Period. While Plaintiff's best-case scenario is a 100% refund of Relevant Overdraft Fees, there was a substantial risk Plaintiff would not achieve such a result. Prior to the Settlement, Capital One successfully sought dismissal of this case. Although the dismissal was reversed on appeal, this Court's dismissal shows that reasonable minds can differ as to the merits of Plaintiff's claims. Further, Plaintiff's cross-motion for summary judgment as to liability was denied.

Capital One contends that the Account Agreements are not ambiguous, and even if they were ambiguous, the extrinsic evidence resolves the ambiguity in its favor on the issue of whether the

---

[6] *See also In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004) (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery"); *In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) (noting few jury trials result in full amount of damages claimed).

Overdraft Fees at issues in this action are permitted by the Account Agreements. Thus, although Plaintiff believes she has a strong chance on the merits, it is possible that Plaintiff might lose at trial. Decl. at ¶ 17. For these reasons, a Settlement Amount representing approximately 35% of the Relevant Overdraft Fees that were allegedly wrongly charged to Settlement Class members, particularly given the risks inherent to this litigation, is a very fair and reasonable recovery.

Indeed, this Settlement either meets or exceeds the vast majority of court-approved recoveries in overdraft fee class actions nationwide. *See Bodnar v. Bank of Am., N.A.*, No. 14-3224, 2016 U.S. Dist. LEXIS 121506, at *12 (E.D. Pa. Aug. 4, 2016) (cash fund of between 13 and 48 percent of the maximum amount of damages they may have been able to secure at trial, and describing such a result as a "significant achievement" and outstanding"); *In re Checking Account Overdraft Litig.*, No. l:09-MD-02036-JLK, 2015 U.S. Dist. LEXIS 193690, at *37 (S.D. Fla. May 22, 2015) ($31,767,200 settlement representing approximately 35% of the most probable aggregate damages); *Hawthorne v. Umpqua Bank*, No. 11-cv-06700-JST, 2015 U.S. Dist. LEXIS 56370, at *9 (N.D. Cal. Apr. 28, 2015) ($2.9 million settlement that was approximately 38% of damages); *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 190562, at *3-4 (S.D. Fla. Aug. 2, 2013) ($4,000,000 settlement that was 25% of the most probable recoverable damages); *Mosser v. TD Bank, N.A.*, No. 1:09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 187627, at *83-84 (S.D. Fla. Mar. 18, 2013) ($62,000,000 settlement that was 42% of the most probable damages, praised as an "outstanding result"); *Torres v. Bank of Am.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) ($410 million settlement that was between 9 to 45 percent of the total potential damages); *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 198 (D.D.C. 2011) (overdraft settlement with recovery range of 12 to 30 percent as "within the realm of reasonableness"); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 583 (N.D. Ill. 2011) (settlement representing 10% of potential recovery).

Under the circumstances, Plaintiff and Class Counsel appropriately determined that the

Settlement reached with Capital One outweighs the gamble of continued litigation. Decl. at ¶ 21. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F.Supp.2d 164, 174 (S.D.N.Y.2000). This Settlement provides substantial relief to Settlement Class Members without further delay. Decl. at ¶¶ 25, 26.

Further, the Settlement is the product of arm's-length negotiations conducted by the Parties' experienced counsel with the assistance of a well-respected mediator through multiple in-person mediation sessions at different points in the litigation. These negotiations led the Parties to a Settlement that Class Counsel believes to be fair, reasonable, and in the Settlement Class's best interests. Class Counsel's assessment in this regard is entitled to considerable deference. The $17,000,000.00 in cash and payment of up to $750,000.00 towards Settlement Administration Costs in cash is fair and reasonable in light of Capital One's defenses, and the challenging and unpredictable litigation path in the absence of settlement. *Id.* at ¶¶ 24-29.

  b.  The Expense, Complexity, and Likely Duration of Further Litigation

Settlements are favored in class actions, which "have a well-deserved reputation as being most complex.". *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999) (internal citations omitted). The Action's complexity, expense, and duration weighs heavily in favor of the Settlement's reasonableness. *Charron v. Weiner,* 731 F.3d 241, 247 (2d Cir. 2013). Recovery by any other means would require additional years of litigation, involving a massive expenditure of public and private resources. Moreover, delay, both at the trial stage, and through post-trial motions, and the appellate process, could force the Settlement Class to wait even longer for any recovery, reducing its value.[7]

---

[7] *See United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 856 (2d Cir. 1998) ("[A] principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial.").

Settlement approval will mean an immediate recovery for Settlement Class Members. Plaintiff also would first have to prevail on her Motion for Class Certification. *See Dupler*, 705 F. Supp. 2d at 241 ("[T]he risk of maintaining a nationwide class through trial also weighs in favor of Settlement approval.").

Settling now provides immediate, guaranteed, and substantial benefits to hundreds of thousands of Account Holders and avoids the significant costs and risks of continuing litigation. This consideration militates heavily in favor of the Settlement. *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("Even if the class plaintiffs were willing to assume each of these litigation risks, the passage of time would introduce yet more risks."). The Settlement is in the Settlement Class's best interest.

c.   The Risk of Maintaining Class Action Status Throughout Trial

Whether the Action would have been tried as a class action is also relevant in assessing the fairness of the Settlement. *Dupler*, 705 F. Supp. 2d at 241; *accord Odom v. Hazen Transport, Inc.*, 275 F.R.D. 400, 411 (W.D.N.Y. 2011) ("Although class certification has been approved by this Court for the purpose of settlement, it is not certain that the case would be certified in the absence of settlement."). As the Court had not yet certified a class at the time of settlement, it is unclear whether or not certification would have been granted. The uncertainty of whether a class would be certified favors approving the Settlement. *Dupler*, 705 F. Supp. 2d at 241 (unlikeliness of obtaining a nationwide class weighed in favor of settlement).[8]

Although Capital One had not yet responded to Plaintiff's Motion for Class Certification, its pre-motion letter in opposition to class certification showed that Capital One intended to vigorously

---

[8] *See also Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 WL 3119374, at *4 (S.D.N.Y. Aug. 6, 2010) (there "is no assurance of obtaining class certification through trial, because a court can reevaluate the appropriateness of certification at any time during the proceedings.").

oppose the motion and argue against numerosity, commonality, typicality, adequacy, and predominance, as well as argue lack of personal jurisdiction over the claims of out-of-state putative class members. ECF # 138. Success on any one of these grounds could prevent the maintenance of a class through trial. Further, this litigation activity would have required the Parties to expend significant resources. Decl. at ¶¶ 27-28. Accordingly, this factor weighs in favor of Preliminary Approval.

> d.   The Extent of Discovery Completed and the Stage of the Proceedings

*Grinnell* requires the parties to engage in sufficient investigation of the facts to enable the Court to intelligently make an appraisal of the settlement. *Flores v. One Hanover, LLC*, 2014 U.S. Dist. LEXIS 78269, at *13 (S.D.N.Y. June 9, 2014). This factor is "relevant to the parties' knowledge of the strengths and weaknesses of the various claims in the case, and consequently affects the determination of the settlement's fairness." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Here, Class Counsel devoted substantial time and resources to investigating, litigating, and resolving this case. Plaintiff settled the Action with the benefit of extensive fact, expert, and class discovery. The Parties served written discovery, Class Counsel reviewed approximately 49,285 pages of documents and bank data, and the Parties took eight depositions including Plaintiff's, Capital One's corporate representative, key bank employees, and the parties' experts. Decl. at ¶ 11.

Additionally, given the stage of the litigation and that this case has already been before the Second Circuit and back, the Parties are well aware of the relative strengths and weaknesses of their respective cases. This informed the settlement negotiations.

Based on the record, there is no doubt the Settlement is fair. Plaintiff has litigated this Action for three and a half years, and Class Counsel have been involved in similar litigation in the past. *Id.* at ¶ 9. Accordingly, this factor also weighs in favor of preliminary approval.

In sum, Plaintiff's $17,000,000.00 recovery for the Settlement Class is an outstanding result given the Action's complexity and the significant barriers that would loom in the absence of

settlement. Based on Capital One's data analysis, Plaintiff estimates that the Settlement will afford Plaintiff and the Settlement Class Members a recovery of approximately 35% of their damages, without further risks attendant to litigation, a significant achievement considering the obstacles that Plaintiff faced in the litigation. *Id.* at ¶¶ 17; 26. "[S]ettlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road." *Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 U.S. Dist. LEXIS 23016, at *13 (S.D.N.Y. Mar. 24, 2008) (internal quotations and citation omitted).

e.   The Effectiveness of Distributing Relief, the Release and Equitable Treatment of Class Members

Rule 23(e)(2), which addresses whether class members are treated equally relative to each other, also favors approval. This factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23 Advisory Committee's Note to 2018 Amendment.

Because the Settlement distributes proceeds on a *pro rata* basis, Settlement Class Members will be treated equitably. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 47 (E.D.N.Y. 2019) (finding that the pro rata distribution scheme is sufficiently equitable); *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (finding that a pro rata allocation plan "appear[ed] to treat the class members equitably . . . and has the benefit of simplicity"). Further, the scope of the release applies uniformly to Settlement Class Members and does not affect apportionment of the relief to Settlement Class Members. *In re GSE Bonds Antitrust Litig.*, 2019 U.S. Dist. LEXIS 194736, *27-28 (S.D.N.Y. Nov. 7, 2019). The Parties explicitly agree that the Release from the Settlement Class is not a general release of claims against Capital One, nor does it release any claims that Settlement Class Members may have against other individuals or entities. Agreement ¶ 86. Rather, the release is tailored to the expressly-defined Released Claims. *Id.* Accordingly, this Court

should find that this factor will likely weigh in favor of granting final approval.

        f.   The Terms of Any Proposed Award of Attorneys' Fees

Class Counsel has not been paid for their extensive efforts or reimbursed for litigation costs and expenses incurred in this case. Under the Agreement, Class Counsel are entitled to request, and Capital One will not oppose, attorneys' fees of up to 35% of the Settlement Fund, as well as reimbursement of litigation costs and expenses incurred in connection with the Action. Agreement at ¶ 87; Decl. at ¶ 20 Class Counsel will seek no more than 30% of the Settlement Fund. Decl. at ¶ 20. The Parties negotiated and reached agreement regarding fees and costs only after agreeing on all material terms of the Settlement. Agreement at ¶ 92; Decl. at ¶ 20. Such award remains subject to this Court's approval and will compensate for the time, risk, and expenses incurred pursuing claims on Settlement Class Members' behalf. Accordingly, this Court should find that this factor will weigh in favor of granting final approval and should reserve a full analysis of this factor for the final approval stage. *See, e.g. In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 42.

### C. Certification of the Settlement Class Is Appropriate.

For settlement purposes, Plaintiff respectfully requests that the Court certify the Settlement Class. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The Court should conclude that it is likely to certify the Settlement Class and approve the Settlement as fair, adequate, and reasonable. *See* Rule 23(e)(1).

Certification of the proposed Settlement Class will allow Notice to issue to the Settlement Class to inform them of the existence and terms of the proposed Settlement; of their right to be heard on its fairness; of their right to opt-out or object; and of the date, time, and place of the Final Approval Hearing. *See Manual for Compl. Lit.*, §§ 21.632, 21.633. For purposes of this Settlement only, Capital

One does not oppose class certification. For the reasons set forth below, certification is appropriate under Fed. R. Civ. P. 23(a) and (b)(3).

**Numerosity.** The numerosity requirement of Rule 23(a)(1) is satisfied because the Settlement Class consists of hundreds of thousands of Capital One customers, and joinder of all such persons is impracticable. Decl. at ¶ 31. "[A] plaintiff need not show that joinder is impossible. . . . Nor need the plaintiff know the exact number of class members." *Saddle Rock Partners Ltd. v. Hiatt*, No. 96-cv-9474-SHS, 2000 WL 1182793, at *2 (S.D.N.Y. Aug. 21, 2000) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)).

**Commonality.** "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 389-390 (2011) (citation omitted). "Even a single common legal or factual question will suffice." *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 175 (S.D.N.Y. 2014) (citations omitted). Here, Rule 23(a)(2) is readily satisfied. There are multiple questions of law and fact—centering on Capital One's alleged systematic practice of assessing Overdraft Fees—that are common to the Settlement Class and that would generate common answers to the viability of the claims. Decl. at ¶ 32.

**Typicality.** For similar reasons, Plaintiff's claims are reasonably coextensive with those of absent members of the Settlement Class, such that Rule 23(a)(3) is satisfied. The typicality requirement "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Shahriar v. Smith & Wollensky*

*Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (citation omitted).[9] There is no requirement that all putative class members' claims be identical. Plaintiff is typical of absent Settlement Class members because she was subjected to the same overdraft practices and fees, suffering the same injuries, and she will benefit equally from the relief provided by the Settlement. Decl. at ¶ 34.

**Adequacy.** Plaintiff and Class Counsel satisfy Rule 23(a)(4), which "serves to uncover conflicts of the interest between named parties and the class they seek to represent." *Amchem Prods.*, 521 U.S. at 625. The analysis of a class representative's adequacy "is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). Here, Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class because she and the absent Settlement Class members have the same interest in the relief the Settlement affords, and the absent members of the Settlement Class have no diverging interests. Decl. at ¶ 35. Further, Plaintiff is represented by qualified and competent counsel who have extensive experience and expertise prosecuting complex class actions, including consumer actions similar to the instant case. Decl. at ¶¶ 3-7; 9; 11; 17. Class Counsel has devoted substantial time and resources to this Action and will vigorously protect the interests of the Settlement Class. *Id.* at ¶ 30.

**Predominance.** Certification of the Settlement Class is further appropriate because the questions of law or fact common to members of the Settlement Class predominate over any questions affecting only individual members. *See* Fed. R. Civ. P. 23(b)(3). To satisfy Rule 23(b)(3), "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . .

---

[9] Commonality and typicality tend to merge, as the "crux of both requirements is to ensure that maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (alteration in original) (quotations omitted). Further, "[w]hen the same unlawful conduct was directed at both the named Plaintiff and the class to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims." *D'Alauro v. GC Services Ltd. P'ship*, 168 F.R.D. 451, 456-57 (E.D.N.Y. 1996) (quoting 1 Herbert Newberg & Alba Conte, Newberg on Class Actions § 3.10 (3d ed. 1992)).

predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (abrogated on other grounds). This is readily satisfied because liability questions common to all Settlement Class members substantially outweigh any possible issues that are individual to each member of the Settlement Class. Decl. at ¶ 33. For example, each Settlement Class member's relationship with Capital One arises from Account Agreements that are the same or substantially similar in all relevant respects to the other Settlement Class members' agreements, and the Relevant Overdraft Fees at issue were charged based on the same set of circumstances alleged to be in breach of the form Account Agreements. *Id.* at ¶ 32.

**Superiority.** Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class.

### D. The Court Should Approve the Proposed Notice Plan Because It Is Constitutionally Sound.

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit.* § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Navy Federal & Trust Co.*, 339 U.S. 306, 314 (1950). "Rule 23 . . . requires that individual notice in [opt-out] actions be given to class members who can be identified through reasonable efforts. Those who cannot be readily identified must be given the best notice practicable under the circumstances." *Manual for Compl. Litig.*, § 21.311. "Courts in this Circuit have explained that a Rule 23 Notice will satisfy due process when it 'describe[s] the terms of the settlement generally[,]' and 'inform[s] the class about the allocation of attorneys' fees, and provide[s] specific information regarding the date, time, and place of

the final approval hearing.'" *Charron v. Pinnacle Group N.Y. LLC*, 874 F. Supp. 2d 179, 191 (S.D.N.Y. 2012), *aff'd sub nom. Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013).

The proposed Notice Program satisfies these content requirements. The Notice will properly inform Settlement Class members of the Settlement's substantive terms, their options for opting-out of or objecting to the Settlement, and how to obtain additional information about the Settlement. The Notice Program is designed to reach a high percentage of the Settlement Class by sending direct mail and email notices to Settlement Class members, which exceeds the requirements of constitutional due process. Decl. at ¶ 18. Therefore, the Court should approve the Notice Program and the Notices attached as ***Exhibits B & C***.

### E.  Notice Pursuant to the Class Action Fairness Act.

The Class Action Fairness Act ("CAFA") requires that settling defendants give notice of a proposed class action settlement to appropriate state and federal officials. 28 U.S.C. § 1715(b). The CAFA Notice of Proposed Settlement must supply all of the information and documents set forth in 28 U.S.C. § 1715(b)(1)-(8). Capital One will serve the CAFA Notice, along with a CD containing the documents described in Section 1715(b).

### F.  Plaintiff's Counsel Should Be Appointed Class Counsel.

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider counsel's work in identifying or investigating potential claims; experience in handling class actions or other complex litigation, and the types of claims asserted in the case; knowledge of the applicable law; and resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

As described in detail above, Class Counsel diligently investigated and litigated Plaintiff's claims and the feasibility of class certification, and have and will continue to devote substantial time

and resources to this litigation. Class Counsel have extensive experience with similar class action litigation and have been appointed class counsel in many class actions, including many overdraft fee cases. *See* Decl., Ex. 1-3. Accordingly, the Court should appoint Plaintiff's counsel to serve as Class Counsel pursuant to Rule 23(g).

## II. CONCLUSION

Plaintiff respectfully requests that the Court: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes the Settlement Class, pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3); (3) appoint Plaintiff as Class Representative; (4) approve the Notice Program and approve the form and content of the Notices, attached as **Exhibits B-C** hereto; (5) approve and order the opt-out and objection procedures; (6) stay the Action against Capital One pending Final Approval of the Settlement; (7) appoint as Class Counsel the law firms listed in paragraph 20 of the Agreement; and (8) schedule a Final Approval Hearing no sooner than the week of June 15, 2020 (if convenient for the Court). For the Court's convenience, Plaintiff submits contemporaneously with this memorandum a Proposed Order Preliminarily Approving Class Settlement and Certifying Settlement Class and setting forth the various deadlines referenced herein and outlined in the Agreement.

Pursuant to the Settlement Agreement and the Proposed Order, Plaintiff and Class Counsel will file their motion and memorandum for Final Approval, attorneys' fees and costs, and request for Service Awards no later than 105 days following the entry of the Preliminary Approval Order, unless otherwise ordered by the Court.

DATED: December 16, 2019.

 /s/ Jeff Ostrow
Jeff Ostrow (*pro hac vice*)                    Hassan Zavareei (*pro hac vice*)
Jonathan M. Streisfeld (*pro hac vice*)         Anna C. Haac (*pro hac vice*)
Joshua R. Levine (*pro hac vice*)               **TYCKO & ZAVAREEI LLP**
**KOPELOWITZ OSTROW**                           1828 L Street, NW, Suite 1000
**FERGUSON WEISELBERG GILBERT**                 Washington, DC 20036
1 W Las Olas Blvd, Suite 500                    Telephone: (202) 973-0900

Fort Lauderdale, Florida 33301
Telephone: 954-525-4100
Fax: 954-525-4300
ostrow@kolawyers.com
streisfeld@kolawyers.com
levine@kolawyers.com

Facsimile: (202) 973-0950
hzavareei@tzlegal.com

KALIEL PLLC
Jeffrey D. Kaliel (*pro hac vice*)
Sophia G. Gold (*pro hac vice*)
1875 Connecticut Ave. NW
10th Floor
Washington, DC 20009
jkaliel@kalielpllc.com
sgold@kalielpllc.com

Laurie Rubinow
James E. Miller
**SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP**
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile: (866) 300-7367
lrubinow@sfmslaw.com
jmiller@sfmslaw.com

*Counsel for Plaintiff and the Proposed Settlement Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 16, 2019, the foregoing was filed via CM/ECF, which caused a true and correct copy to be served to all counsel of record.

Respectfully submitted,

By: */s/ Jeff Ostrow*
Jeff Ostrow