# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

TAWANNA ROBERTS, on behalf of herself
and all others similarly situated,

      Plaintiff,

  v.

CAPITAL ONE, N.A.,

      Defendant.

CASE No. 1:16-cv-04841-LGS

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
<u>APPLICATION FOR ATTORNEYS' FEES AND COSTS AND SERVICE AWARD</u>**

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................... 1

II.   BACKGROUND .......................................................................................................... 2

    A.    PROCEDURAL HISTORY ........................................................................... 2

    B.    THE SETTLEMENT TERMS ....................................................................... 6

        1.    The Settlement Class ........................................................................... 6

        2.    Relief for the Benefit of the Settlement Class ................................... 7

            a.    Settlement Fund & Settlement Administration Costs ........... 7

            b.    Practice Change – Modified Disclosures .............................. 8

        3.    Releases ............................................................................................. 8

        4.    The Notice Program ........................................................................... 9

        5.    Class Representative's Service Award ............................................... 10

        6.    Attorneys' Fees and Costs ................................................................. 11

III.  ARGUMENT ............................................................................................................. 12

    A.    THE LEGAL STANDARD FOR FINAL APPROVAL ................................ 12

    B.    THIS SETTLEMENT SATISFIES THE CRITERIA FOR FINAL APPROVAL ........ 13

        1.    This Settlement Is the Product of Good Faith, Informed and Arm's-Length Negotiations ................................................................ 13

        2.    The Facts Support a Determination That the Settlement Is Fair, Adequate, and Reasonable ................................................................ 14

            a.    The Risks of Establishing Liability and Damages Demonstrate That This Settlement is Within the Range of Reasonableness in Light of All Attendant Risks of Litigation and Relative to the Best Possible Recovery. ...................... 15

            b.    The Reaction of Settlement Class Members to the Proposed Settlement. ...... 18

            c.    The Expense, Complexity, and Likely Duration of Further Litigation Favor Settlement. ....................................... 19

            d.    The Risk of Maintaining Class Action Status Throughout Trial Favors Settlement. ....................................................... 20

            e.    The Extent of Discovery Completed and the Stage of the Proceedings Favor

Settlement .................................................................................................21

f.   Effectiveness of Distributing Relief, the Release and Equitable Treatment of Class Members Favor Approval ......................................................22

g.   The Terms of Any Proposed Award of Attorneys' Fees Favor Approval .....22

C.   NOTICE TO THE SETTLEMENT CLASS WAS ADEQUATE AND SATISFIED RULE 23 AND DUE PROCESS ......................................................................23

D.   CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE .................23

E.   NOTICE PURSUANT TO THE CLASS ACTION FAIRNESS ACT (CAFA) ...........24

F.   APPLICATION FOR ATTORNEYS' FEES ........................................................25

1.   The Standard for Awarding Attorneys' Fees to Class Counsel ...................25

2.   Goldberger Factors ....................................................................................27

a.   The Magnitude and Complexities of Litigation ...................................27

b.   Risks of Litigation ...............................................................................27

c.   Quality of Representation ....................................................................28

d.   Requested Fee in Relation to the Settlement .......................................28

e.   Public Policy Considerations ...............................................................30

f.   The Time and Labor Expended by Counsel and Lodestar Cross-Check .......31

G.   APPLICATION FOR SERVICE AWARD ...........................................................33

H.   Reimbursement of Costs ...............................................................................34

IV.   CONCLUSION .................................................................................................34

## TABLE OF AUTHORITIES

**Cases**                                                                                            **Page(s)**

*Amchem Products, Inc. v. Windsor,*
   521 U.S. 591 (1997) ............................................................................... 24

*Anyoku v. World Airways* (In re Nig. Charter Flights Litig.),
   No. MD 2004-1613 (RJD)(MDG), 2011 U.S. Dist. LEXIS 155180
   (E.D.N.Y. Aug. 25, 2011) ..................................................................... 28

*Arbuthnot v. Pierson,*
   607 F. App'x 73 (2d Cir. 2015) ............................................................ 24

*Bellifemine v. Sanofi-Aventis U.S. LLC,*
   2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ........................................ 20

*Bodnar v. Bank of Am., N.A.,*
   No. 14-3224, 2016 U.S. Dist. LEXIS 121506 (E.D. Pa. Aug. 4, 2016) ........... 17

*Charron v. Weiner,*
   731 F.3d 241 (2d Cir. 2013) ................................................................ 18

*Christine Asia Co. v. Jack Yun Ma,*
   No. 1: 15-md-02631, 2019 U.S. Dist. LEXIS 179836
   (S.D.N.Y. Oct. 16, 2019) ................................................. 12, 14, 15, 19, 20

*City of Detroit v. Grinnell Corp.*
   City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974) .................. 12, 14

*City of Providence v. Aéropostale, Inc.,*
   2014 U.S. Dist. LEXIS 64517 (S.D.N.Y. May 9, 2014) ...................... 32

*D'Amato v. Deutsche Bank,*
   236 F.3d 78 (2d Cir. 2001) ............................................................ 13, 15

*Deposit Guar. Nat'l Bank v. Roper,*
   445 U.S. 326 (1980) ........................................................................... 30

*Dornberger v. Metro. Life Ins. Co.,*
   203 F.R.D. 118 (S.D.N.Y. 2001)....................................................... 22

*Ferrick v. Spotify USA Inc.,*
   No. 16-cv-8412 (AJN), 2018 U.S. Dist. LEXIS 86083 (S.D.N.Y. May 22, 2018) ........ 20

*Flores v. Mamma Lombardi's of Holbrook, Inc.,*
   104 F. Supp. 3d 290 (E.D.N.Y. 2015) ................................................ 33

*Fresno Cty. Emps.'s Ret. Ass'n v. Isaacson/Weaver Family Tr.,*
   925 F.3d 63 (2d Cir. 2019) ................................................................ 25

*Goldberger v. Integrated Resources, Inc.,*

209 F.3d 43 (2d Cir. 2000) ........................................................................ 14, 25, 26, 27, 30

*Goodwin v. Boesky* (In re Ivan F. Boesky Sec. Litig.),
   888 F. Supp. 551 (S.D.N.Y. 1995) ........................................................................ 31

*Guevoura Fund Ltd. v. Sillerman,*
   No. 1:15-cv-07192-CM, 2019 U.S. Dist. LEXIS 218116
   (S.D.N.Y. Dec. 18, 2019) ........................................ 15, 16, 17, 19, 28, 33

*Guippone v. BH S&B Holdings LLC,*
   2016 U.S. Dist. LEXIS 134899 (S.D.N.Y. Sep. 23, 2016). ........................................ 19, 20

*Hawthorne v. Umpqua Bank,*
   No. 11-cv-06700-JST, 2015 U.S. Dist. LEXIS 56370 (N.D. Cal. Apr. 28, 2015) ......................... 17

*In re Austrian and German Bank Holocaust Litig.,*
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) ........................................................................ 21

*In re Checking Account Overdraft Litig.,*
   No. 1:09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 190562                (S.D. Fla.
   Aug. 2, 2013) ........................................................................ 17

*In re Checking Account Overdraft Litig.,*
   No. 1:09-MD-02036-JLK,2015 U.S. Dist. LEXIS 193690 (S.D. Fla. May 22, 2015) ................... 17

*In re Colgate-Palmolive Co. ERISA Litig.,*
   36 F. Supp. 3d 344 (S.D.N.Y. 2014) ........................................................ 25, 30, 32

*In re Global Crossing Sec. & ERISA Litig.,*
   225 F.R.D. 436, 461 (S.D.N.Y. November 23, 2004).......................................... 17

*In re GSE Bonds Antitrust Litig., No. 19-cv-1704*
   (JSR), 2020 U.S. Dist. LEXIS 104842 (S.D.N.Y. June 16, 2020) .................................... 12

*In re PaineWebber Ltd. P'ships Litig.,*
   171 F.R.D. 104 (S.D.N.Y. 1997) ........................................................ 17

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,*
   330 F.R.D. ........................................................ 22

*In re Platinum & Palladium Commodities Litig.,*
   No. 10cv3617, 2015 U.S. Dist. LEXIS 98691 (S.D.N.Y. July 7, 2015) ........................... 32

*In re Signet Jewelers Ltd. Sec. Litig.,*
   Civil Action No. 1:16-cv-06728-CM-SDA,2020 U.S. Dist. LEXIS 128998
   (S.D.N.Y. July 21, 2020) ........................................................ 19

*In re Sinus Buster Prods. Consumer Litig.,*
   2014 U.S. Dist. LEXIS 158415 (E.D.N.Y. Nov. 10, 2014) ........................................ 14

*James v. China Grill Mgmt.,*
   2019 U.S. Dist. LEXIS 72759 (S.D.N.Y. Apr. 30, 2019) ........................................ 32

*Johnson v. Brennan, No.,*
   No. 10-cv- 4712, 2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sep. 16, 2011) ................................. 32

*Meredith Corp. v. SESAC, LLC,*
   87 F. Supp. 3d 650 (S.D.N.Y. 2015) ...................................................................... 21

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar,*
   2009 U.S. Dist. LEXIS 27899 (S.D.N.Y. Mar. 31, 2009) ................................................ 28

*Mosser v. TD Bank, N.A.,*
   No. 1:09-MD-02036-JLK,2013 U.S. Dist. LEXIS 187627
   (S.D. Fla. Mar. 18, 2013) ................................................................................. 17

*Newman v. Stein,*
   464 F.2d 689 (2d Cir. 1972) .............................................................................. 15

*Raniere v. Citigroup Inc.,*
   310 F.R.D. 211 (S.D.N.Y. 2015) ..................................................................... 25, 26

*Schulte v. Fifth Third Bank,*
   805 F. Supp. 2d 560 (N.D. Ill. 2011) ..................................................................... 17

*Thompson v. Metropolitan Life Ins. Co.,*
   216 F.R.D. 55 (S.D.N.Y. 2003) ........................................................................... 17

*Times v. Target Corp.,*
   No. 18 Civ 02993, 2019 U.S. Dist. LEXIS 189101 (S.D.N.Y. Oct. 29, 2019) ............................. 33

*Torres v. Bank of Am.,*
   830 F. Supp. 2d 1330 (S.D. Fla. 2011) ................................................................... 17

*Torres v. Gristede's Operating Corp.,*
   No. 04-CV-3316 (PAC), 2010 U.S. Dist. LEXIS 139144
   (S.D.N.Y. Dec. 21, 2010) ................................................................................. 33

*Torres v. Gristede's Operating Corp.,*
   519 F. App'x 1 (2d Cir. 2013) ............................................................................ 26

*Trombley v. Nat'l City Bank,*
   826 F. Supp. 2d 179 (D.D.C. 2011) ....................................................................... 17

*United States ex rel. Fox Rx, Inc. v. Omnicare, Inc., No. 12cv275*
   (DLC), 2015 U.S. Dist. LEXIS 49477 (S.D.N.Y. Apr. 15, 2015) ..................................... 32

*United States v. Glens Falls Newspapers, Inc.,*
   160 F.3d 853 (2d Cir. 1998) .............................................................................. 19

*Wal-Mart Stores v. Visa U.S.A.,*
   396 F.3d 96 (2d Cir. 2005) ........................................................................ *passim*

**Rules and Statutes**

28 U.S.C. Section 1715(b) ............................................................................................ 24, 25

Federal Rules of Civil Procedure 23 ...................................................................... *passim*

Federal Rules of Civil Procedure 23(a) ........................................................................ 23, 34

Federal Rules of Civil Procedure 23(b)(3) ...........................................................2, 6, 23, 24, 34

Federal Rules of Civil Procedure 23(e) ................................................................... 12, 14, 15

Federal Rules of Civil Procedure 23(e)(2) ..............................................................12, 14, 21

Federal Rules of Civil Procedure 23(e)(3) ...................................................................12

New York General Business Law § 349 et seq. .............................................................. 2

**Other**

Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards,* 7 J. Empirical Legal Stud. 811 (2010) ..................................................................................... 28

## I.   **INTRODUCTION**

Plaintiff, Tawana Roberts, submits this Memorandum of Law in Support of her Unopposed Motion for Final Approval of Class Settlement and Application for Attorneys' Fees and Costs and Service Award.[1] The Settlement Agreement, attached as ***Exhibit A***, if approved, will resolve all claims against Defendant Capital One, N.A., in the Action. The Settlement should be finally approved because it provides substantial relief for the Settlement Class and the Settlement terms are reasonable and consistent with Second Circuit precedent.

Given the material risks inherent in this Action, the Settlement is an excellent result for the Settlement Class. The Settlement provides for a cash Settlement Fund of $17,000,000.00 and Capital One's agreement to separately pay up to $750,000.00 in Settlement Administration Costs. One of the keystones of the Settlement is that the Settlement Fund will automatically be distributed or credited to Settlement Class Members without the requirement for a claims process or reversion to Capital One. The allocation plan fairly and adequately accounts for the value of each Settlement Class Member's individual damages. Class Counsel is seeking attorneys' fees of 30% of the Settlement Fund, reimbursement of reasonable litigation costs, and a $15,000.00 Service Award for Ms. Roberts.

Since Preliminary Approval of the Settlement on January 10, 2020, the Settlement Administrator properly completed the Court-approved Notice Program. To date, no Settlement Class Member has objected to the Settlement, Class Counsel's request for attorneys' fees and costs, or the Service Award, and only five Settlement Class members have opted-out of the Settlement. The absence of objections to date and the low number of opt-outs shows that the Settlement Class fully supports approval of the Settlement and that it warrants final approval.[2]

Based on the controlling legal standards and supporting facts, Final Approval is warranted.  In support of the Motion, Plaintiff submits a Joint Declaration from Class Counsel Jeff Ostrow, Jeffrey Kaliel and Hassan Zavareei ("Joint Decl."), a Declaration from the Settlement Administrator ("Admin.

---

[1] All capitalized terms in this memorandum shall have the same meanings as those defined in the Settlement Agreement.

[2] Should a proper objection be asserted following the filing of this Motion, Plaintiff will file a response pursuant to this Court's Preliminary Approval Order.

Decl."), a Declaration from Plaintiff's expert, Arthur Olsen, and Declarations from Jeff Ostrow, Hassan Zavareei, Jeffrey Kaliel, and Matthew Wessler ("Individual Counsel Declarations"), respectively. Therefore, Plaintiff and Class Counsel respectfully request that the Court: (1) grant Final Approval of the Settlement; (2) certify for settlement purposes the Settlement Class pursuant to Federal Rules of Civil Procedure 23(b)(3); (3) appoint Plaintiff Tawanna Roberts as Class Representative; (4) appoint Kopelowitz Ostrow Ferguson Weiselberg Gilbert, Kaliel PLLC, and Tycko & Zavareei LLP as Class Counsel; (5) grant Class Counsel's Application for Attorneys' Fees and Costs and Service Award; and (6) enter Final Judgment dismissing the Action with prejudice.

## II.   **BACKGROUND**

This Action seeks redress from Capital One's assessment of Overdraft Fees charged on Debit Card Transactions that authorized against a positive balance but settled against a negative balance ("APPSN Transactions"). Plaintiff alleges that Capital One breached its contract with Account Holders in assessing these fees. Capital One denies any wrongdoing or liability.

### A.  **PROCEDURAL HISTORY**

The legal theories at issue were relatively untested at the time this Action commenced. Consequently, Class Counsel spent a significant amount of time researching and investigating Capital One's practice of assessing overdraft fees on APPSN Transactions, identifying applicable legal theories, and interviewing prospective plaintiffs. Joint Decl. ¶ 3.

On June 22, 2016, Plaintiff filed the Action seeking damages and injunctive relief arising out of Capital One's purported breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, conversion, and a violation of New York General Business Law § 349 *et seq.* (ECF #1). Plaintiff brought claims on behalf of both a nationwide and New York class of similarly situated individuals who, like her, had been assessed Overdraft Fees on APPSN Transactions. *Id.* On September 2, 2016, Capital One filed a Motion to Dismiss, arguing that its contract permitted the challenged fees. (ECF #18-20). On October 11, 2016, Plaintiff filed an Opposition to the Motion to

Dismiss. (ECF #30). On May 4, 2017, the Court granted the Motion to Dismiss, dismissing Plaintiff's Complaint with prejudice and thereafter entering Final Judgment on May 5, 2017. (ECF #41, 42). On June 2, 2017, Plaintiff filed a Notice of Appeal of the Order dismissing the Action. (ECF #43).

On December 1, 2017, the Second Circuit Court of Appeals reversed the Court's order and remanded the Action for further proceedings. (ECF #45). Thereafter, the Parties commenced discovery and on May 31, 2018, Capital One filed its Answer and Affirmative Defenses. (ECF #66).

The Parties engaged in extensive fact, class, and expert discovery. Joint Decl. ¶ 4. Class Counsel formulated targeted discovery requests and the Parties met and conferred numerous times to address Capital One's objections to those discovery requests. *Id.* The Parties had significant disagreements as to the proper scope of discovery but ultimately worked through those issues so as to avoid judicial intervention. *Id.* Class Counsel negotiated a protective order and order to govern the production of electronically stored information. *Id.* ¶ 5. Class Counsel also spent significant time negotiating ESI search terms and the proper custodians for those search terms. *Id.* ¶. Ultimately, Class Counsel's efforts resulted in Capital One producing approximately 49,285 pages of documents in this case, which Class Counsel reviewed. *Id.* ¶ 6. In addition to those documents, Capital One produced hours of call recordings between Ms. Roberts and Capital One customer service representatives. *Id.* Capital One produced transaction data, which allowed Class Counsel, in conjunction with Plaintiff's expert, to determine a methodology for determining which Overdraft Fees were assessed under Plaintiff's theory of liability in support of class certification and which would ultimately be used to determine class membership and damages. *Id.* ¶ 7. Class Counsel worked extensively with their expert, Art Olsen, to enable him to issue his expert report in this case. *Id.*

Class Counsel also took and defended eight depositions in this case. *Id.* ¶ 8. Class Counsel took two 30(b)(6) depositions in this case—one pertaining to data issues and the other pertaining to class certification and overlapping merits issues. *Id.* Leading up to those 30(b)(6) depositions, the

Parties negotiated the scope of the 30(b)(6) topics. *Id.* Class Counsel met and conferred with Capital One to address numerous objections. *Id.* Class Counsel took three additional fact witness depositions and deposed Capital One's expert. *Id.* ¶ 9. Class Counsel also defended Mr. Olsen's deposition and defended Ms. Robert's full-day deposition.  *Id.* ¶.

On October 18, 2018, the Parties participated in a full day mediation in New York with mediator Simeon Baum, Esq. *Id.* ¶ 10. In advance of the mediation, Capital One provided additional transactional data for Mr. Olsen's review and analysis to estimate class damages. *Id.* Class Counsel also prepared a detailed mediation statement analyzing the risks each side faced in the litigation. The mediation was unsuccessful. *Id.*

On January 25, 2019, Capital One moved for summary judgment. (ECF #96-100). Capital One argued, *inter alia*, that Plaintiff lacked standing because she was not harmed by Capital One's practices; that she could not prove damages for the same reason; and that extrinsic evidence required a contract interpretation in its favor. Responding to Capital One's motion required an extensive review of both the factual record in this case and the legal landscape. Joint Decl. ¶ 11. This Action was the first asserting Plaintiff's specific theory of liability to be evaluated at the summary judgment stage. *Id.* Opposing Capital One's motion required Class Counsel to devise responses to novel legal arguments and a detailed review and understanding of the factual record developed from the extensive written and deposition discovery described above. *Id.* On March 15, 2019, Plaintiff filed her opposition and cross-motion for partial summary judgment on the issue of Capital One's liability for assessing the challenged Overdraft Fees. (ECF #105-07). On March 25, 2019, Capital One replied in support of its motion and opposed the cross-motion. (ECF #108-12). Capital One also filed objections to Plaintiff's evidence. (ECF #111). On April 1, 2019, Plaintiff replied in support of her cross-motion and responded to Capital One's objections. (ECF #115-16). On June 25, 2019, the Court held oral argument on those motions and denied them. (ECF #130-31). On July 30, 2019, moved for

reconsideration of its summary judgment motion, which Plaintiff opposed. The Motion for Reconsideration had not been decided at the time of Settlement.  (ECF #136-37, 140).

On September 13, 2019, Plaintiff filed her Motion for Class Certification, supported by the extensive discovery taken and a proposed trial plan that analyzed applicable breach of contract law in each of the relevant states to demonstrate manageability. The Motion for Class Certification remained pending when the Parties agreed to settle. (ECF #145-47).

After fact discovery closed with respect to the Plaintiff, and with the class certification motion filed, on October 10, 2019, the Parties attended a second, full-day mediation with Mr. Baum. Joint Decl. ¶ 12. The Action did not settle that day, but the Parties continued to negotiate and ultimately agreed to the material settlement terms on October 25, 2019. *Id.* The Parties filed a Notice of Settlement confirming their agreement in principle and the Court stayed all deadlines. (ECF #154, 155).

Thereafter, the Parties began discussing a formal settlement agreement. *Id.* After several weeks of negotiations, the Parties were able to reach agreement on its terms. *Id.* On December 16, 2019, the Parties executed the Settlement Agreement. *See* Exhibit A.

Determining Settlement Class membership and apportioning the Settlement Fund required obtaining complex transactional data from Capital One, a process which took several months of work between the Parties and Class Counsel and Plaintiff's expert. *Id.* ¶ 13. Class Counsel then worked with the Settlement Administrator to develop an efficient Notice Program. *Id.*

Thereafter, on December 16, 2019, the Plaintiff filed her Unopposed Motion and Memorandum in Support of Preliminary Approval of the Settlement. (ECF #156-159).

On January 10, 2020, the Court entered an Order Granting Plaintiff's Unopposed Motion for Preliminary Approval (ECF #171).

On April 10, 2020, the Parties moved the Court for an order extending the deadlines in the

Preliminary Approval Order, which the Court granted on April 13, 2020. (ECF #173, 174). Class

Counsel then worked with the Settlement Administrator to ensure Notice was timely completed by

August 24, 2020. Joint Decl. ¶ 13; Admin. Decl. ¶17.

### B.  THE SETTLEMENT TERMS

#### 1.  The Settlement Class

The Settlement Class is an opt-out class under Fed. R. Civ. P. 23(b)(3), defined as:

> All current and former Capital One customers, other than those with Capital One 360
> accounts, who were charged an Overdraft Fee on a debit card or ATM transaction that
> was authorized into a positive available balance, but settled against a negative available
> balance, during the Class Period.  Excluded from the Settlement Class is Capital One,
> its parents, subsidiaries, affiliates, officers and directors, all Settlement Class members
> who make a timely election to be excluded, and all judges assigned to this litigation
> and their immediate family members.

Agreement ¶47.

> Class Period means:
>
>   a.   for Settlement Class members who established Accounts in
> Connecticut, Louisiana, New Jersey, and New York, the period from August 16, 2010,
> through November 7, 2018;[3]
>   b.   for Settlement Class members who established Accounts in Virginia,
> the period from June 22, 2011, through November 7, 2018;
>   c.   for Settlement Class members who established Accounts in Texas, the
> period from June 22, 2012, through November 7, 2018; and
>   d.   for Settlement Class members who established Accounts in Delaware,
> Maryland, and Washington D.C., the period from June 22, 2013, through November
> 7, 2018.

Agreement ¶21.

---

[3] For Settlement Class members who established their Accounts in Connecticut, Louisiana, New
Jersey, and New York, the Class Period begins on August 16, 2010, because August 15, 2010 is the
end of the Class Period in *Steen v. Cap. One (In re Checking Account Overdraft Litig.)*, No. 1:09-MD-02036-
JLK, Doc. # 4168 (S.D. Fla. May 22, 2014), which previously settled similar overdraft litigation against
Capital One.

## 2. Relief for the Benefit of the Settlement Class.

### a. Settlement Fund & Settlement Administration Costs

The Settlement consists of Capital One's agreement to a Settlement Fund of $17,000,000.00 and to separately pay up to $750,000.00 toward Settlement Administration Costs. Agreement ¶¶50, 53. On January 22, 2020, Capital One fully funded the Escrow Account with the $17,000,000.00. Joint Decl. ¶ 14. The Settlement Fund will be used to pay: (a) Settlement Class Members their respective Settlement Class Member Payments; (b) Class Counsel for any Court awarded attorneys' fees and costs; (c) any Court awarded Service Award for the Class Representative; and (d) Settlement Administration Costs, if any, above the Capital One Settlement Administration Costs Cap of $750,000.00.[4] In the event funds remain after the initial distribution to Settlement Class Members, as a result of uncashed checks, the Settlement Fund will also be used to reimburse Capital One for up to what it paid toward Settlement Administration Costs up to the Settlement Administration Costs Cap, and make a second distribution, if feasible, as explained below. *Id.* ¶¶53, 81.

Settlement Class Members do not have to submit claims or take any other affirmative step to receive Settlement relief.  Instead, as soon as practicable, but no later than 90 days after the Effective Date, Capital One and the Settlement Administrator will distribute the Net Settlement Fund. Agreement ¶75. Current Account Holders will automatically receive a credit to their Accounts and notification of the credit, or by checks mailed by the Settlement Administrator.  *Id.* ¶76.  Past Account Holders will exclusively receive check payments.  *Id.* ¶79.  Any uncashed or returned checks will remain in the Settlement Fund, during which time the Settlement Administrator will make reasonable efforts to deliver Settlement Class Member Payments.  *Id.* ¶ 80.

---

[4] As of the dates of the filing of this Motion, the Settlement Administrator has confirmed that Settlement Administration Costs are expected to be less than the Settlement Administration Costs Cap.

All Settlement Class Members entitled to a Settlement Class Member Payment will receive a *pro rata* distribution from the Net Settlement Fund based on the number of Relevant Overdraft Fees during the Class Period. *Id.* ¶¶71.c., 74. Because each Settlement Class Member Payment depends on his or her specific Account activity and the number of Settlement Class Members, it is impossible to determine each Settlement Class Member's likely recovery until after this calculation is done.

If funds remain in the Settlement Fund after the initial distribution to Settlement Class Members, Capital One shall be reimbursed for the Settlement Administration Costs it paid. *Id.* ¶81.a. Thereafter, if funds remain, to the extent feasible, a second distribution will occur to those Settlement Class Members that were paid or credited with a Settlement Class Member Payment in the first distribution. *Id.* ¶81.b. All Settlement Administration Costs of a second distribution will be paid out of the Settlement Fund. *Id.* ¶81.d. If a second distribution is not feasible, or if funds remain after a second distribution, those funds shall be distributed to a *cy pres* recipient, proposed by the Parties and to be approved by the Court, that works to promote financial literacy. *Id.* ¶81.c.

### b.   Practice Change – Modified Disclosures

On November 7, 2018, after this Action had been initiated, Capital One voluntarily modified its disclosures to better inform its account holders that they may incur an Overdraft Fee on Debit Card Transactions that were authorized against a positive available balance, if at the time of settlement, the account balance is negative. Joint Decl. ¶ 16. This practice change inured to the Settlement Class's benefit and to other Capital One customers and has resulted and will continue to result in millions of dollars in savings. *Id.* Class Counsel is not seeking attorneys' fees in connection with the substantial savings related to this practice change. *Id.*

### 3.   Releases.

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released Capital One from claims relating to the subject matter of the Action. The

Releases are set forth in Section XII of the Agreement.

### 4.   The Notice Program.

The Notice Program was completed in accordance with this Court's instructions in the Preliminary Approval Order. Joint Decl. ¶ 34. The Court approved BrownGreer PLC as the Settlement Administrator. *Id.* ¶ 35. Pursuant to the Court's Preliminary Approval Order, the Settlement Administrator oversaw the Notice Program, which consisted of Email Notice, Postcard Notice, Long Form Notice, the establishment of a Settlement Website (www.capitaloneoverdraftlitigation.com), and a toll free telephone number that was available 7 days a week, 24 hours a day, for Settlement Class members to obtain information or to request Long Form Notices. *Id.* Each facet of the Notice Program was timely and properly accomplished. Admin. Decl. ¶ 24.

Following Preliminary Approval, the Settlement Administrator received the data files identifying the Settlement Class members' names, last known addresses and email addresses. *Id.* ¶ 10. Thereafter, on July 13, 2020, 191,628 emails were sent to Settlement Class members for whom Capital One maintained addresses. *Id.* ¶ 14. On July 20, 2020, 142,660 postcards were sent to Settlement Class members with (1) no facially valid email address, or (2) an undeliverable email after multiple attempts. *Id.* ¶ 16-17. On August 24, 2020, the Settlement Administrator implemented multiple additional Postcard Notice mailings to: (1) Settlement Class members whose initial Postcard Notices returned as undeliverable but for whom the USPS provided a forwarding address; and (2) Settlement Class members whose initial Postcard Notices returned as undeliverable without a forwarding address but for whom it was able to obtain an alternative mailing address through research using LexisNexis's commercial compendium of domestic addresses; and (3) the Account Holders of the Unreachable-by-Email Accounts, completing the Mailed Notice. *Id.* ¶17. In addition, the Settlement Website, with a Long Form Notice and other important Settlement-related filings, was established on July 13, 2020.

*Id.* ¶ 7. The website allowed Settlement Class members to obtain detailed information about the Action and Settlement. *Id.* As of September 1, 2020, the Settlement Website has been visited 5,028 times and visitors have downloaded documents from the Settlement Website 3,279 total times. *Id.* The Notice Program was extremely effective as 98.6% of Settlement Class members received individual notice. *Id.* ¶ 18.

The Notice Program was reasonably calculated to and did apprise Settlement Class members of the following: a description of the material Settlement terms; a date by which Settlement Class members may exclude themselves from the Settlement Class; a date by which Settlement Class Members may object to the Settlement; the Final Approval Hearing date; and the Settlement Website address where the Settlement Class may access the Agreement and other related documents. Joint Decl. ¶ 36.  The Notice Program was designed to and did provide the best notice practicable and was tailored to take advantage of the information Capital One had available about the Settlement Class. Joint Decl. ¶ 37.  The Notice Program constituted sufficient notice to all persons entitled to notice, and satisfied all applicable requirements of law, including Rule 23 and constitutional due process. Admin. Decl. ¶23.

### 5. Class Representative's Service Award.

Class Counsel seeks a Service Award of $15,000.00 for the Plaintiff for serving as the Class Representative. The Service Award is in addition to the Settlement Class Member Payment that she will be entitled to receive as a Settlement Class Member. Agreement ¶91. The Plaintiff took considerable risk by offering her services when the viability of her claims was uncertain. Her claim necessarily put her finances at issue and publicly disclosed her personal financial difficulties, creating notoriety regardless of the success of her claim. Joint Decl. ¶ 39. She should be commended for taking action to protect the interest of hundreds of thousands of Capital One customers who were affected by Capital One's policies. *Id.* ¶ 40. It cannot be disputed that it is because of the Plaintiff's efforts, and

her willingness to stand up to a powerful adversary, that the class is receiving extraordinary financial benefits. The fact that she was willing to do so is the only reason a settlement was possible here. *Id.*

The award will also compensate the Plaintiff for her considerable time and effort she spent in prosecuting the Action. Specifically, she assisted Class Counsel to successfully prosecute the Action and reach the Settlement, including: (1) participating in interviews, telephone calls, and in-person meetings with Class Counsel; (2) pursuing an appeal when the Court initially dismissed the Action; (3) taking time off of work to prepare for and sit for a full-day deposition during which she was interrogated about her finances and her financial decisions; (4) reviewing documents with Class Counsel, including numerous telephone recordings of her calls with Capital One's customer service; (5) assisting Class Counsel in reviewing and responding to numerous discovery requests including by locating and forwarding potentially responsive documents and information to Class Counsel; and (6) keeping apprised of the case and conferring with Class Counsel; (7) reviewing Settlement documents; and (8) staying informed throughout the Settlement process.  *Id.* ¶ 41.  In so doing, the Plaintiff was integral to the case.  *Id.*

### 6.  Attorneys' Fees and Costs.

Class Counsel has not been paid for their extensive efforts or reimbursed for litigation costs incurred. Class Counsel are entitled to request, and Capital One will not oppose, attorneys' fees of up to 35% of the Settlement Fund, as well as reimbursement of litigation costs incurred in connection with the Action.  Agreement ¶87; Joint Decl. ¶ 42. The Notice Program informed the Settlement Class that Class Counsel was entitled to request fees of that percentage, as well as reimbursement of costs. *Id.*  As of the date of the filing of this Motion, no Settlement Class Member has objected to the amount of fees Class Counsel is entitled to request. *Id.* ¶ 43. Notwithstanding, Class Counsel is only seeking 30% of the Settlement Fund as fair and reasonable fee for their efforts. *Id.* ¶ 42. The Parties negotiated and reached agreement regarding fees and costs only after agreeing on all material terms of the

Settlement. Agreement ¶ 92; Joint Decl. ¶ 45. Such award is subject to this Court's approval and will serve to compensate Class Counsel for the time, risk, and expense they incurred pursuing claims on behalf of the Settlement Class.

## III.   ARGUMENT

### A.   THE LEGAL STANDARD FOR FINAL APPROVAL.

Courts, including the Second Circuit, have emphasized the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores v. Visa U.S.A.*, 396 F.3d 96, 116 (2d Cir. 2005). Fed. R. Civ. P. 23(e) requires court approval before a class action can be dismissed via a settlement. "In order to grant final approval of a proposed settlement under Federal Rule of Civil Procedure 23(e)(2), the Court must find 'that it is fair, reasonable, and adequate.' The Court considers a number of factors laid out in Rule 23(e)(2), as well as in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), to determine whether this standard has been met." *In re GSE Bonds Antitrust Litig.*, No. 19-cv-1704 (JSR), 2020 U.S. Dist. LEXIS 104842, at *10 (S.D.N.Y. June 16, 2020).

At the final approval stage, Rule 23(e)(2) requires courts to consider whether:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and  appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3);[5] and
(D) the proposal treats class members equitably relative to each other.

To evaluate the Settlement's fairness, the Court must examine its procedural fairness under Rule 23(e)(2)(A)-(B) and substantive fairness under 23(e)(2)(C)-(D). *Christine Asia Co. v. Jack Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 U.S. Dist. LEXIS 179836, at *38 (S.D.N.Y. Oct. 16, 2019).

---

[5] There is no such agreement to be identified. The only agreement is the Settlement Agreement.

Both are clearly satisfied here.

### B.  THIS SETTLEMENT SATISFIES THE CRITERIA FOR FINAL APPROVAL.

The relevant factors weigh in favor of Final Approval. First, the Settlement was reached in the absence of collusion, and is the product of good faith, informed and arm's-length negotiations by competent counsel, making it procedurally fair. Joint Decl. ¶ 17. Furthermore, a review of the substantive factors related to the Settlement's fairness, adequacy and reasonableness demonstrates that Final Approval is warranted. Any settlement requires the parties to balance the claims' merits and the defenses asserted against the attendant risks of continued litigation and delay. Plaintiff believes she asserted meritorious claims and would prevail if this matter proceeded to trial. Capital One argues the claims are unfounded, denies any potential liability, and up to the point of settlement indicated a willingness to litigate those claims vigorously.  The Parties concluded that the benefits of settlement outweigh the risks and uncertainties of continued litigation, as well as the attendant time and expenses associated with contested class certification proceedings and possible interlocutory appellate review, completing class discovery, pretrial motion practice, trial, and finally appellate review. *Id.* ¶ 18.

### 1.  This Settlement Is the Product of Good Faith, Informed and Arm's-Length Negotiations.

The Settlement in this case is the result of intensive, arm's-length negotiations between experienced attorneys familiar with class action litigation and with the legal and factual issues of this Action. *Id.* ¶ 17. In assessing procedural fairness, courts examine the negotiating process leading to the settlement. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). A strong initial presumption of fairness attaches to the proposed settlement if, as here, the settlement is reached after discovery by experienced counsel and after arm's length negotiations. *Wal-Mart Stores, Inc.*, 396 F.3d at 116.

Furthermore, Class Counsel is particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases in the financial services industry. Joint Decl. ¶ 19. In negotiating this Settlement in particular, Class Counsel had the benefit of years of experience and

familiarity with the facts of this case as well as with other cases involving overdraft fees across the country. *Id.* Class Counsel conducted a thorough investigation and analysis of Plaintiff's claims and engaged in extensive motion practice throughout this Action and an appeal. *Id.* Class Counsel reviewed 49,285 pages of Capital One's documents and data and took and defended eight depositions. *Id.* ¶¶ 6, 8. Class Counsel engaged a data expert to analyze Capital One's sample data to determine whether a class could be ascertained and to support Plaintiff's Motion for Class Certification. *Id.* ¶ 7. Class Counsel was able to accurately evaluate the strengths and weakness of Plaintiff's claims. *Id.* ¶ 18. Finally, Class Counsel used an experienced mediator to achieve this Settlement. This factor, too, supports Final Approval.

### 2. The Facts Support a Determination That the Settlement Is Fair, Adequate, and Reasonable.

A review of the relevant factors supports a determination that Settlement should be finally approved under Rule 23(e)(2). The Second Circuit has identified nine factors (the *Grinnell* factors) that should be considered in determining the substantive fairness of the Settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) *abrogated on other grounds by Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000). In applying these factors, "not every factor must weigh in favor of [the] settlement, rather the court should consider the totality of these factors in light of the particular circumstances." *Christine Asia Co.*, 2019 U.S. Dist. LEXIS 179836, at *36 (alteration in original) (quotation omitted). As applied here, the *Grinnell* factors weigh heavily in favor of Final

Approval.[6] These factors remain applicable even after the 2018 amendment of Rule 23(e), which clarified the factors quoted above. *Christine Asia Co.*, 2019 U.S. Dist. LEXIS 179836, at *37 ("The Court understands the new Rule 23(e) factors to add to, rather than displace, the *Grinnell* factors.").

 **a. The Risks of Establishing Liability and Damages Demonstrate That This Settlement is Within the Range of Reasonableness in Light of All Attendant Risks of Litigation and Relative to the Best Possible Recovery**

 "Courts typically collapse into this inquiry the final two *Grinnell* factors: 'the range of reasonableness of the settlement fund in light of the best possible recovery' and 'the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.'" *Guevoura Fund Ltd.*, 2019 U.S. Dist. LEXIS 218116, at *28 n.1 (internal citations omitted). The Court need only decide if the Settlement falls within a "range of reasonableness" which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

 The $17,000,000.00 Settlement Fund and $750,000.00 in Settlement Administration Costs is an excellent result given the Action's complexity and the significant litigation barriers looming without settlement. The Settlement Fund represents approximately 34% of the most likely recoverable damages for class members. While Plaintiff's best-case scenario is a 100% refund of Relevant Overdraft Fees, there was a substantial risk that the Plaintiff would not achieve such a result. Early

---

[6] The sole *Grinnell* factor that does not favor settlement is the ability of the defendant to withstand a larger settlement; however, this standing alone is not reason to reject the Settlement. *In re Sinus Buster Prods. Consumer Litig.*, 2014 U.S. Dist. LEXIS 158415, at *26 (E.D.N.Y. Nov. 10, 2014) (collecting cases); *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-cv-07192-CM, 2019 U.S. Dist. LEXIS 218116, at *26-27 (S.D.N.Y. Dec. 18, 2019) ("[T]he ability of defendants to pay more, on its own, does not render the settlement unfair. Rather, the reasonableness of the Settlement is better analyzed in light of the amount of the Settlement compared to the substantial risks Lead Plaintiff faced in proving liability and damages, and not on whether the Director Defendants could have paid more.") (quotations omitted); *accord D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001).

on, Capital One obtained dismissal of the Action. Although the dismissal was reversed on appeal, this Court's dismissal shows that reasonable minds can differ as to the merits of Plaintiff's claims. While Capital One's motion for summary judgment was denied, Plaintiff's cross-motion for summary judgment was also denied. Plaintiff's cross-motion sought a liability-judgment, emphasizing there was no admissible or relevant extrinsic evidence to support contract construction and thus the *contra proferentem* cannon should apply to construe the contract in her favor. The Court's denial meant extrinsic evidence may have been admissible at trial. When the summary judgment hearing concluded, the Court commented that Plaintiff faced an uphill battle at class certification. (ECF # 131 at 33). While Plaintiff, of course, disagreed and extensively briefed her class certification papers, the Court's comment shows the significant risk Plaintiff faced at class certification and beyond. Thus, although Plaintiff believes she has a strong chance on the merits, it is possible that Plaintiff may lose at trial. Joint Decl. ¶ 20.

Based on the data analysis, the Parties estimate that the Settlement Class's most likely recoverable damages at trial would have been $ 50,517,226. Olsen Decl. ¶14. As stated above, the Settlement provides the Settlement Class 34% of their most likely damages, without further attendant litigation risks.[7] Joint Decl. ¶ 21. That is a significant achievement and notably in-line with other overdraft fee class settlements. "The prompt, guaranteed payment of the settlement money increases the settlement's value in comparison to some speculative payment of a hypothetically larger amount years down the road." *Guevoura Fund Ltd.*, 2019 U.S. Dist. LEXIS 218116, at *30 (internal citation omitted).

Moreover, Plaintiff and Class Counsel are confident their case is strong, but they are also

---

[7] 34% is based upon the $17,000,000.00 Settlement Fund. When considering the Settlement Administration Costs that Capital One has agreed to pay, the total recovery for the Settlement Class increases to 35%. Such costs are often borne by the Settlement Class.

pragmatic in their awareness of Capital One's various defenses, and the risks inherent to litigation despite defeating Capital One's motion for summary judgment, as well as establishing both liability and damages. This is a crucial factor favoring settlement, as Courts routinely approve settlements where Plaintiff would have faced significant legal and factual obstacles to establishing liability. *Thompson v. Metropolitan Life Ins. Co.,* 216 F.R.D. 55, 63 (S.D.N.Y. 2003). Indeed, "[l]itigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). "In analyzing these factors, the adequacy of the amount offered in settlement must be judged 'not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.'" *Guevoura Fund Ltd*, 2019 U.S. Dist. LEXIS 218116, at *28.[8]

This Settlement either meets or exceeds the vast majority of court-approved recoveries in overdraft fee class actions nationwide. *See, e.g., Bodnar v. Bank of Am., N.A.*, No. 14-3224, 2016 U.S. Dist. LEXIS 121506, at *12 (E.D. Pa. Aug. 4, 2016) (cash fund of between 13 and 48 percent of the maximum amount of damages they may have been able to secure at trial, and describing such a result as a "significant achievement" and outstanding"); *In re Checking Account Overdraft Litig.*, No. l:09-MD-02036-JLK, 2015 U.S. Dist. LEXIS 193690, at *37 (S.D. Fla. May 22, 2015) ($31,767,200 settlement representing approximately 35% of the most probable aggregate damages); *Hawthorne v. Umpqua Bank*, No. 11-cv-06700-JST, 2015 U.S. Dist. LEXIS 56370, at *9 (N.D. Cal. Apr. 28, 2015) ($2.9 million settlement that was approximately 38% of damages); *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 190562, at *3-4 (S.D. Fla. Aug. 2, 2013) ($4,000,000 settlement that was 25% of the most probable recoverable damages); *Mosser v. TD Bank, N.A.*, No. 1:09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 187627, at *83-84 (S.D. Fla. Mar. 18, 2013) ($62,000,000

---

[8] *See also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 461 (S.D.N.Y. November 23, 2004) (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery").

settlement that was 42% of the most probable damages, praised as an "outstanding result"); *Torres v. Bank of Am.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) ($410 million settlement that was between 9 to 45 percent of the total potential damages); *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 198 (D.D.C. 2011) (overdraft settlement with recovery range of 12 to 30 percent as "within the realm of reasonableness"); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 583 (N.D. Ill. 2011) (settlement representing 10% of potential recovery).

Under the circumstances, Plaintiff and Class Counsel appropriately determined that the Settlement outweighs the gamble of continued litigation. Joint Decl. ¶ 22. This Settlement provides substantial relief to Settlement Class Members without delay. *Id.*

Finally, as discussed above, the Settlement is the product of arm's-length negotiations conducted by the Parties' experienced counsel with the assistance of a well-respected mediator through multiple in-person mediation sessions at different points in the litigation. *Id.* ¶¶ 2, 10, 12. These negotiations led the Parties to a Settlement that Class Counsel believes to be fair, reasonable, and in the best interest of the Settlement Class.  Joint Decl. ¶ 23. Given Class Counsel's experience in these cases, Class Counsel's assessment in this regard is entitled to considerable deference. The benefits are fair and reasonable in light of Capital One's defenses, and the challenging and unpredictable litigation path in the absence of settlement. *Id.*

**b.  The Reaction of Settlement Class Members to the Proposed Settlement**

The Reaction of the Settlement Class has been overwhelmingly positive. Out of approximately 339,048 Settlement Class member Accounts, only five opted-out by the day this Motion was filed, and no objections have been filed. Admin. Decl. ¶ 19-20.  Following the Opt-Out Period and objection deadline, Class Counsel will file an updated declaration from the Settlement Administrator advising the Court as to any additional opt-outs or objections.

### c. The Expense, Complexity, and Likely Duration of Further Litigation Favor Settlement

The traditional means for handling claims like those at issue here would tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the claims of the individual Settlement Class Members, is impracticable. Indeed, the complexity, expense, and likely duration of litigation is critical in evaluating the reasonableness of a class action settlement. *Charron v. Weiner,* 731 F.3d 241, 247 (2d Cir. 2013). Settlements are favored in class actions, which in general have a well-deserved reputation as being most complex. *Christine Asia Co.*, 2019 U.S. Dist. LEXIS 179836, at *34-35.

Recovery by any means other than settlement would require additional years of litigation in this Court and the Second Circuit. Delay, both at the trial stage, and through post-trial motions and appeals, could force the class to wait even longer, further reducing its value.[9] Joint Decl. ¶ 24.

Here, approval of the Settlement will mean a present recovery for Settlement Class Members. While Plaintiff believes that the Action has merit and that the class ultimately would prevail at trial, continued litigation would last for an extended period before any judgment might be entered. Settling now with the benefit of Capital One's analysis of Settlement Class membership provides immediate and substantial benefits to holders of 339,048 Settlement Class member Accounts, avoiding the significant costs and risks of continuing litigation, including considerable fees incurred by experts. This factor militates heavily in favor of the Settlement. *Guippone v. BH S&B Holdings LLC*, 2016 U.S. Dist. LEXIS 134899, at *20-21 (S.D.N.Y. Sep. 23, 2016). Settling now on such favorable terms is, therefore, in the Settlement Class's best interests. *See In re Signet Jewelers Ltd. Sec. Litig.*, Civil Action No.

---

[9] *See United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial").

1:16-cv-06728-CM-SDA, 2020 U.S. Dist. LEXIS 128998, at *10 (S.D.N.Y. July 21, 2020). Therefore, the proposed Settlement is the best vehicle for Settlement Class Members to receive the relief to which they believe they are entitled in a prompt and efficient manner.

### d.   The Risk of Maintaining Class Action Status Throughout Trial Favors Settlement

Whether the Action would be tried as a class action is also relevant in assessing the Settlement's fairness. *Guevoura Fund Ltd.*, 2019 U.S. Dist. LEXIS 218116, at *26. As the Court had not yet certified a class when the Agreement was executed, it is unclear whether certification would have been granted. This is especially true given the Court's comment that Plaintiff could face an uphill battle with class certification. (ECF No. 131 at 33). The difficulty of certifying a class favors approving the Settlement. *Guippone*, 2016 U.S. Dist. LEXIS 134899, at *19.[10] Although Capital One had not yet responded to Plaintiff's Motion for Class Certification, its pre-motion letter opposing class certification showed Capital One intended to vigorously oppose the motion and argue against numerosity, commonality, typicality, adequacy and predominance, as well as argue lack of jurisdiction over the claims of out-of-state putative class members. (ECF #138). Further, this litigation activity would have required the expenditure of significant resources. Joint Decl. ¶24. Accordingly, this factor weighs in favor of Final Approval.

Further, at the time of Settlement, Capital One's Motion for Reconsideration remained pending. Obviously, had the Court reconsidered its Order on Capital One's motion for summary judgment, the putative class claims would have been in jeopardy. And class certification was no sure thing in the Court's view.

---

[10] *See also Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 WL 3119374, at *4 (S.D.N.Y. Aug. 6, 2010) (there "is no assurance of obtaining class certification through trial, because a court can reevaluate the appropriateness of certification at any time during the proceedings.").

### e.  The Extent of Discovery Completed and the Stage of the Proceedings Favor Settlement

This *Grinnell* factor requires that the parties have engaged in sufficient investigation of the facts "such that counsel possessed a record sufficient to permit evaluation of the merits of Plaintiffs claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement." *Christine Asia Co.*, 2019 U.S. Dist. LEXIS 179836, at *43. Further, "a sufficient factual investigation must have been conducted to afford the Court the opportunity to 'intelligently make . . . an appraisal' of the Settlement." *Ferrick v. Spotify USA Inc.*, No. 16-cv-8412 (AJN), 2018 U.S. Dist. LEXIS 86083, at *31 (S.D.N.Y. May 22, 2018) (alteration in original) (quoting *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000)). Here, fact discovery had been completed with respect to the Plaintiff. Very little discovery (only that related to classwide membership and damages) remained pending. The Parties served written discovery, Class Counsel reviewed 49,285 pages of documents and bank data, and the Parties took eight depositions including Plaintiff's, multiple depositions of Capital One's corporate representatives, key bank employees, and the Parties' experts. Joint Decl. ¶¶ 6-9.  Plaintiff therefore settled the Action with the benefit of extensive fact, expert and class discovery.

Given the stage of litigation when the Action settled, the Parties are well aware of the relative strengths and weaknesses of their respective positions, having dealt with the appeal, extensive discovery, unsuccessful summary judgment efforts, Plaintiff moving for class certification, and two mediations. The extensive factual and legal analysis along the way fully inform the Settlement negotiations.

Based on the record, there is no doubt the Settlement is fair. Plaintiff has litigated this Action for nearly four years, and Class Counsel have been involved in similar litigation in the past. *Id.* ¶28. Accordingly, this favor also weights in favor of Final Approval.

### f.   Effectiveness of Distributing Relief, the Release and Equitable Treatment of Class Members Favor Approval

Consideration under the Rule 23(e)(2) factor, which asks whether Class members are treated equally relative to each other, also favors approval. Consideration here "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. By distributing Settlement proceeds on a pro rata basis, Settlement Class Members will be treated equitably. *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (finding that the pro rata distribution scheme is sufficiently equitable).

Further, the scope of the Releases applies uniformly to Settlement Class Members and does not affect the apportionment of the relief to Settlement Class Members. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 47. The Releases are not a general release of claims against Capital One and are instead tailored to the Released Claims as expressly defined in the Agreement. Agreement ¶ 82. Accordingly, this factor also weighs in favor of granting Final Approval.

### g.   The Terms of The Proposed Award of Attorneys' Fees Favor Approval

Class Counsel has not been paid for their extensive efforts or reimbursed for litigation costs incurred. Under the Agreement, Class Counsel are entitled to request, and Capital One does not oppose, attorneys' fees of up to 35% of the Settlement Fund, as well as reimbursement of litigation costs incurred in connection with the Action. Agreement ¶ 87. Notwithstanding, Class Counsel is seeking only 30% of the Settlement Fund as compensation for its services. The Parties negotiated and reached agreement regarding fees and costs only after agreeing on all material terms of the Settlement. Joint Decl. ¶ 45. Upon consideration of the detailed analysis of Class Counsel's application *infra*, this Court should find that this factor weighs in favor of Final Approval.

## C. NOTICE TO THE SETTLEMENT CLASS WAS ADEQUATE AND SATISFIED RULE 23 AND DUE PROCESS

In addition to having personal jurisdiction over Plaintiff, the Court also has personal jurisdiction over all members of the Settlement Class because they received the requisite notice and due process. *Wal-Mart Stores, Inc.*, 396 F.3d at 114 (adequate notice must be fairly understood by the average class member, fairly apprise prospective class members of the proposed settlement terms and the options open to them, and will satisfy due process when it informs class members of the allocation of attorney's fees and provide the final approval hearing date, time and place.); *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118 (S.D.N.Y. 2001) ("Because adequate notice has been disseminated and all potential Class Members have been given the opportunity to opt out of this class action, the Court has personal jurisdiction over all Class Members.").

As described more fully above, the Notice Program was designed to provide the best notice practicable and was tailored to take advantage of the information Capital One has available about the Settlement Class. Joint Decl. ¶ 37. It was reasonably calculated under the circumstances to apprise Settlement Class members of: the material terms of the Settlement; the deadline for them to exclude themselves from the Settlement Class; the deadline to object to the Settlement; the Final Approval Hearing date; and the Settlement Website address to access the Agreement and other related documents and information. Joint Decl. ¶ 36. The Notice Program constituted sufficient notice to all persons entitled to notice and satisfied all applicable requirements of law, including Fed. R. Civ. P. 23 and constitutional due process. *Id.*; Admin. Decl. ¶ 23. Again, it effectively reached 98.6% of Settlement Class members. Admin. Decl. ¶ 18.

## D. CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE.

In its Preliminary Approval Order, the Court conditionally certified the Settlement Class for Settlement purposes. (ECF # 171). Now, for settlement purposes, Plaintiff respectfully requests that the Court finally certify the Settlement Class. As explained at Preliminary Approval certification for

settlement purposes is appropriate under Fed. R. Civ. P. 23(a) and (b)(3) because:

(1) the Settlement Class of holders of 339,048 Capital One Accounts is so numerous that joinder of all members is impracticable, Joint Decl. ¶29;

(2) there are questions of law or fact common to the Settlement Class including whether Capital One's alleged systematic practice of assessing Overdraft Fees breached its contract, *Id.* ¶ 30;

(3) Plaintiff is typical of absent members of the Settlement Class as she was subjected to the same Capital One practices leading to the assessment of fees and suffered from the same injuries, and she will benefit equally from the Settlement relief, *Id.* ¶ 31; and

(4) Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class because Plaintiff and the absent Settlement Class members have the same interest in the Settlement's relief, and the absent Settlement Class members have no diverging interests and Plaintiff is represented by qualified and competent counsel who devoted a substantial time to the litigation and who has extensive experience and expertise prosecuting complex class actions, including consumer actions like the instant case. *Id.* at *Id.* ¶ 32; *See* Individual Counsel Declarations.

Further, resolution of a few hundred thousand claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3).[11] For these reasons, the Court should certify the Settlement Class.

### E.  NOTICE PURSUANT TO THE CLASS ACTION FAIRNESS ACT (CAFA)

CAFA requires a settling defendant to give notice of a proposed class settlement to appropriate

---

[11] "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

state and federal officials. 28 U.S.C. § 1715(b). The CAFA Notice of Proposed Settlement must supply

the information and documents set forth in 28 U.S.C. § 1715(b)(1)-(8). Capital One served the CAFA

Notice, along with a CD containing the documents described in Section 1715(b). *See* ECF # 172. The

CAFA notice protects class members from a settlement that may be deemed unfair or inconsistent

with regulatory policies and from class action abuse. No regulatory authorities have objected to date.

### F. APPLICATION FOR ATTORNEYS' FEES

In this common fund Settlement, the Notice provides that Class Counsel will request an

attorneys' fee of up to 35% of the Settlement Fund. Agreement ¶ 87. However, Class Counsel has

chosen to seek attorneys' fees in the amount of 30% of the Settlement Fund. Joint Decl. ¶ 42. As of

the filing this Motion, there are zero objections to the 35% fee amount, let alone the reduced 30% fee

Class Counsel actually requests. *Id.* ¶ 44. The Parties negotiated and reached agreement regarding

attorneys' fees only after reaching agreement on all other material terms of this Settlement. *Id.* ¶ 45.

Class Counsel's application is subject to this Court's approval to compensate them for their time, risk,

and expenses incurred pursuing claims for the Settlement Class. While discretionary, to the extent that

the Court wishes to perform a lodestar cross-check, it should be noted that there is a 2.22- lodestar

multiplier as a result of the hard work Class Counsel performed. *Id.* ¶ 48. For the reasons stated below,

Class Counsel's application should be approved.

#### 1. The Standard for Awarding Attorneys' Fees to Class Counsel

In settlements such as this one involving a common fund, courts in this Circuit typically look

at the percentage-of-the-fund method, with a lodestar crosscheck. *Goldberger v. Integrated Resources, Inc.*,

209 F.3d 43, 50 (2d Cir. 2000). The "'percentage of the fund' method, [ ] is the trend in this Circuit."

*In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 348 (S.D.N.Y. 2014) (Schofield, J.) (citing

*Wal-Mart Stores*, 396 F.3d at 121). Class Counsel is entitled to "a reasonable fee – set by the court – to

be taken from the fund." *Goldberger*, 209 F.3d 50; *see also* Fed. R. Civ. P. 23(h). *See also Fresno Cty. Emps.'s*

*Ret. Ass'n v. Isaacson/Weaver Family Tr.*, 925 F.3d 63, 68 (2d Cir. 2019) ("The common-fund doctrine is . . . rooted in the courts' 'historic power of equity to permit' a person who secures a fund for the benefit of others to collect a fee directly from the fund." (citation omitted)).

In addition to being far simpler, awarding a percentage of the fund is preferred and "'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d at 348 (quoting *Wal-Mart Stores*, Inc., 396 F.3d at 121). This method further incentivizes class counsel to obtain the largest possible recovery in the most efficient manner possible. *Id.* "The lodestar method, on the other hand, disincentivizes early settlements, tempts lawyers to run up their hours, and 'compels district courts to engage in a gimlet-eyed review of line-item fee audits.'" *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 220 (S.D.N.Y. 2015) (citing *Wal-Mart Stores, Inc.*, 396 F.3d at 121). *See also Torres v. Gristede's Operating Corp.*, 519 F. App'x 1, 3 (2d Cir. 2013) (trial courts evaluating fee requests "need not, and indeed should not, become green-eyeshade accountants").

The percentage method is an appropriate method of fee recovery here because, among other things, it aligns Class Counsel's interest in being paid a fair fee with the Settlement Class's interests. It achieves the maximum recovery in the shortest amount of time required under the circumstances, is supported by public policy, has been recognized as appropriate by the Supreme Court for cases of this nature, and represents the current trend in the Second Circuit.

The 30% requested fee is within the range of reason when considering the foregoing and when analyzing the following guidelines set forth by the Second Circuit in *Goldberger*: (1) the time and labor expended by counsel, (2) the magnitude of the litigation, (3) the risk of the litigation, (4) the quality of the representation, (5) the requested fee in relation to the settlement, and (6) public policy considerations. 209 F.3d at 50. In fact, when considering the Settlement Administration Costs, the requested fee is actually only 28.85% of the overall value of the Settlement. Joint Decl. ¶ 46.

2.   *Goldberger* Factors

   a.   **The Magnitude and Complexities of Litigation**

The magnitude and complexity of the litigation weighs in favor of approval. *Raniere*, 310 F.R.D. at 221 This Action is complex presenting novel factual and legal issues, which have yet to be tried in this Court or others. *Id.*; *see also* Joint Decl. ¶ 25. Legally, the case involved complex issues which already required guidance from the Second Circuit once and may have involved an additional appeal to the Second Circuit in the future. Factually, as well, the case was difficult. The case involved the laborious review of back-end transactional data from Capital One, a review of 49,285 documents from Capital One, and extensive briefing from both Parties at summary judgment. Indeed, the fundamental contract construction issue remained unresolved when the Parties agreed to settle. That issue, along with other merits issues and the yet to be decided motion for class certification, would have been litigated aggressively. *Id.* Thus, if Capital One was successful in opposing class certification or at trial, that would have prevented the Settlement Class from recovering anything at all. *Id.* ¶ 27.

   b.   **Risks of Litigation**

The Second Circuit has historically labeled the risk of success as "perhaps the foremost factor to be considered in determining whether to award an enhancement." *Goldberger*, 209 F.3d at 54. Courts recognize that regardless of the perceived strength of a plaintiff's case, liability is no sure thing. *Wal-Mart Stores, Inc.*, 396 F.3d at 118.

As stated above, Plaintiff's Counsel took on considerable risk in filing and prosecuting this case as demonstrated by this Court's initial dismissal of the Complaint with prejudice. Joint Decl. ¶ 33. Nevertheless, Class Counsel proceeded with the appeal. As noted above, after winning the appeal, the Court denied Plaintiff's motion for partial summary judgment on the contract construction issue, leaving open the risk that the trier of fact would determine that Capital One was permitted to assess the challenged overdraft fees. *Id.* Thus, Class Counsel certainly invested extensive time and costs with

no guarantee of success.

### c. Quality of Representation

Class Counsel are experienced in class action litigation, serving as Lead or Co-Lead Counsel in dozens of consumer class actions in federal and state courts throughout the country. *Id.* ¶ 32. Counsel used their experience to obtain a great result for the Settlement Class. "[T]he quality of representation is best measured by results, and such results may be calculated by comparing 'the extent of possible recovery with the amount of actual verdict or settlement.'" *Goldberger*, 209 F.3d at 55 (citation omitted). Here the Settlement representing 34% of the most likely recoverable damages is an excellent result. Thus, the Court should easily find counsel achieved success.

"The quality of opposing counsel is also important in evaluating the quality of class counsel's work." *See Anyoku v. World Airways (In re Nig. Charter Flights Litig.)*, No. MD 2004-1613 (RJD)(MDG), 2011 U.S. Dist. LEXIS 155180, *28 (E.D.N.Y. Aug. 25, 2011). Capital One is represented by James McGuire, Esq., currently with Buckley LLP and earlier with another prominent national firm, Morrison & Foerster LLP, when the Settlement was reached. *Id.* He has defended numerous financial institutions in class actions. *Id.* Counsel have professionally and zealously represented the Parties. *Id.*

### d. Requested Fee in Relation to the Settlement

The $5,100,000.00 requested fee – which is 30% of the Settlement Fund - is reasonable in light of the work performed, the results obtained, and falls within the range of common fund awards in the Second Circuit. The attorneys' fee requested is lower than what would be requested in individual contingent fee litigation, which generally start at 33.33% of any recovery and frequently go up to 40% or more. Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical Legal Stud. 811, 830 (2010) (the attorneys' fees generally awarded to class action lawyers are lower than what "contingency-fee lawyers receive in individual litigation, which are usually at least 33 percent."); see also Joint Decl. at ¶ 47. As discussed above, courts in this circuit have found an award

of one-third of a class settlement as the benchmark to be fair, reasonable, and within the range of

what is normally awarded for a class settlement. *See Guevoura Fund Ltd.*, 2019 U.S. Dist. LEXIS 218116,

at *46 (compiling cases awarding 33% for settlements between $6,750,000 and $21,000,000, and noting

reasonable paying clients typically pay one-third pursuant to contingent fee agreements). *See also Mohney

v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 U.S. Dist. LEXIS 27899, at *16 (S.D.N.Y. Mar. 31,

2009) ("Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements

in the Second Circuit."). The most common fee percentages awarded in common fund class actions

are 25%, 30% and 33%. *See* Fitzpatrick, 7 J. Empirical Legal Stud. at 833 (Figure 6). Here, the requested

fee, 30% of the Settlement Fund, is within the range of acceptable attorneys' fees in Second Circuit

cases and is common in overdraft fee litigation. Courts regularly award fees in excess of 30% when

awarding attorneys' fees in similar financial services class action settlements. The following table

depicts these settlements nationwide, all of which resulted in fee awards at or above the 30% that

Class Counsel requests here:

| **Overdraft Fee Case Name** | **Percentage-of-the-Fund Awarded** |
|---|---|
| *Lopez v. JPMorgan Chase Bank, N.A.*, No. 1:09-MD-02036-JLK (S.D. Fla.) | **44%** of value of settlement, which includes 30% of $110 million cash fund and 30% of value of practice changes |
| *Jacobs v. Huntington Bancshares Inc.* No. 11-cv-000090 (Lake County Ohio) | **40%** of value of settlement, which includes 40% of $8.975 million and 40% of $7 Million in debt forgiveness |
| *Nelson v. Rabobank, N.A.*, No. RIC 1101391 (Cal. Supr.) | **35.2%** ($750k fee includes % of practice changes) |
| *Molina v. Intrust Bank, N.A.*, No. 10-CV-3686 (Dist. Ct. Ks.) | **33%** of $2.7 million |
| *Hawkins et al v. First Tenn. Bank, N.A.* (Cir. Ct. Tenn.) | **35%** of $16.75 million |
| *Swift v BancorpSouth*, No. 1:10-cv-00090-GRJ (N.D. Fla.) | **35%** of $24 million |
| *Casto v. City National Bank, N.A.*, No. 10-C-1089 (Cir. Ct. W.Va.) | **33%** of $3 million |
| *Schulte v. Fifth Third Bank*, No. 09-cv-6655 (N.D. Ill.) | **33%** of $9.5 million |
| *Johnson v. Community Bank, N.A.*, No. 12-cv-01405-RDM (M.D. Pa.) | **33%** of $2.5 million |
| *Bodnar v. Bank of America*, No. 5:14-cv-03224-EGS (E.D. Pa.) | **33%** of $27 million |

| *Harris v. Associated Bank, N.A.*, No. 1:09-MD-02036-JLK (S.D. Fla.) | **30%** of $13 million |
| *Duval v. Citizens Bank Fin. Group, Inc.*, No. 1:09-MD-02036-JLK (S.D. Fla.) | **30%** of $137.5 million |
| *Mosser v. TD Bank, N.A.*, No. 1:09-MD-02036-JLK (S.D. Fla.) | **30%** of $62 million |
| *Anderson v. Compass Bank*, No. 1:09-MD-02036-JLK (S.D. Fla.) | **30%** of $11.5 million |
| *Casayuran v. PNC Bank, N.A.*, No. 1:09-MD-02036-JLK (S.D. Fla.) | **30%** of $90 million |
| *Orallo v. Bank of the West*, No. 1:09-MD-02036 JLK (S.D. Fla.) | **30%** of $18 million |
| *Wolfgeher v. Commerce Bank, N.A.*, No. 1:09-MD-02036-JLK (S.D. Fla.) | **30%** of value of settlement, which includes 30% of $18.3 million cash and 30% of value of practice changes |
| *McKinley v. Great Western Bank*, No. 1:09-MD-02036-JLK (S.D. Fla.) | **30%** of $2.2 million |
| *Eno v. M & I Marshall & Ilsley Bank*, No. 1:09-MD-02036-JLK (S.D. Fla.) | **30%** of $4 million |
| *Larsen v. Union Bank*, No. 1:09-MD-02036-JLK (S.D. Fla.) | **30%** of $35 million |
| *Tornes v. Bank of America, N.A.*, No. 1:09-MD-02036-JLK (S.D. Fla.) | **30%** of $410 million |
| *Case v. Bank of Oklahoma, N.A.*, No. 1:09-MD-02036-JLK (S.D. Fla.) | **30%** of $19 million |
| *Allen v. UMB Bank*, No. 1016-CV34791 (Cir. Ct. Mo.) | **30%** of $7.8 million |
| *Jones v. United Bank*, (Jackson, WV) | **30%** of $3.3 million |
| *Higgins v. Pinnacle Bank*, (Tenn. St. Ct.) | **30%** of $1.25 million |
| *Beason v. Liberty Bank*, (Ark. St. Ct.) | **30%** of $325k |

As the requested fee is clearly in line with other similar overdraft litigation around the nation that settled for a similar amount, the fee requested is reasonable.

### e. Public Policy Considerations

Where relatively small claims can only be prosecuted through aggregate litigation, "private attorneys general" play an important role. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980). Attorneys who fill the private attorney general role must be adequately compensated for their efforts. *Id. See also Wal-Mart Stores*, 396 F.3d 96 (policy issue in evaluating a fee request is that fees "must . . . serve as an inducement for lawyers to make similar efforts in the future"). This and the other *Goldberger* factors support approval of the attorneys' fees requested by Class Counsel.

### f.   The Time and Labor Expended by Counsel and Lodestar Cross-Check

"The last Goldberger factor to consider is the time and labor expended by counsel, which is essentially what the lodestar method does by assessing the value of attorney hours worked times a reasonable billing rate." *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d at 353. Under the lodestar method, the court "scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate" to calculate the "lodestar." *Goldberger*, 209 F.3d at 47. "Of course, where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. In considering the lodestar in common fund settlements, it is appropriate to enhance the lodestar by a multiplier accounting for "(1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved." *Goodwin v. Boesky (In re Ivan F. Boesky Sec. Litig.)*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995).

There was no unnecessary amount of time, labor, and resources expended by the Parties. *Id.* As is detailed above, this Action was hotly contested and heavily litigated, including one appeal to the Second Circuit, substantial discovery, the cross motions for summary judgement, Plaintiff's class certification motion, two mediations, negotiating and documenting the Settlement, and the Settlement approval process.

To date, Class Counsel have expended a total of 3,777.45 hours in the prosecution of this case. Joint Decl. ¶ 49.  It is anticipated that from the date of the filing of this Motion forward, Class Counsel will spend an additional 35 hours preparing for the Final Approval Hearing, which includes the filing of supplemental declarations, responding to any objections, if any, and preparing for and attending the Final Approval Hearing. Furthermore, there will be significant post-Final Approval work ensuring that the Settlement proceeds are properly distributed to Settlement Class Members, responding to

Settlement Class Members' inquiries, and effectuating a secondary or *cy pres* distribution, as needed. *Id.*

To assist with the appeal to the Second Circuit, Plaintiff retained Matthew Wessler of Gupta Wessler PLLC, one of the nation's leading appellate law firms, which invested substantial resources, with Class Counsels' assistance, without any guarantee of success that the Second Circuit would revive Plaintiff's putative class claims. The success in that appeal permitted Class Counsel to pursue the merits of the putative class claims, culminating in the Settlement. Mr. Wessler and his colleagues aided preparations for the hearing on the Parties' competing summary judgment motions.

Summaries of the time expended by all counsel and paralegals on the Action appear in Class Counsel's declaration and Mr. Wessler's declaration in support of this Motion, organized by work performed in the various stages of the Action. *See* Individual Counsel Declarations. Should the Court require detailed billing, Class Counsel will promptly submit it. Hourly rates of attorneys and paralegals are commensurate with the rates charged by class action practitioners in this district with similar experience. Joint Decl. ¶ 50. *See, e.g., United States ex rel. Fox Rx, Inc. v. Omnicare, Inc.*, No. 12cv275 (DLC), 2015 U.S. Dist. LEXIS 49477, at *5 (S.D.N.Y. Apr. 15, 2015) (approving as reasonable in this district $836/hour for a litigation partner; $631.75/hour for an eighth-year associate; and $541.50/hour for a fourth-year associate); *In re Platinum & Palladium Commodities Litig.*, No. 10cv3617, 2015 U.S. Dist. LEXIS 98691, at *13 (S.D.N.Y. July 7, 2015) (approving rates up to $950/hour and citing National Law Journal survey indicating that the average partner billing rate at the largest New York-based law firms is $982 per hour); *City of Providence v. Aéropostale, Inc.*, 2014 U.S. Dist. LEXIS 64517, at *38 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73, 73 (2d Cir. 2015) (approving rates ranging from $640 to $875 for partners, $550 to $725 for of counsels, and $335 to $665 for other attorneys).

Here, the aggregate lodestar is $2,294,960.25. Joint Decl. ¶ 53. Class Counsel seek fees of $5,100,000.00, representing 30% of the Settlement Fund. The lodestar multiplier of 2.22 is well within

the range of what Court's in this circuit typically award. *Johnson v. Brennan*, No. No. 10-cv- 4712, 2011 U.S. Dist. LEXIS 105775, at *58 (S.D.N.Y. Sep. 16, 2011) ("Courts regularly award lodestar multipliers from two to six times lodestar."). As detailed above, Class Counsel and appellate counsel assumed significant risks in representing Plaintiff on a contingent fee basis. Those risks should be rewarded. Given that this Court applies the percentage of the fund method with a lodestar crosscheck, the  2.22 multiplier is reasonable. *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d at 353 (finding that a multiplier of five "was large, but not unreasonable"); *James v. China Grill Mgmt.*, 2019 U.S. Dist. LEXIS 72759, at *8 (S.D.N.Y. Apr. 30, 2019) (Schofield, J.) (approving "a fee award equivalent to 30% of the settlement fund [that] represents a lodestar multiplier of approximately 3.53."). Class Counsel expended resources to achieve a prompt fair, adequate and reasonable settlement.

For the reasons set forth above, the requested fee is appropriate, fair and reasonable, and should therefore be approved.

### G.  APPLICATION FOR SERVICE AWARD

As noted above, a $15,000.00 Service Award is sought for Plaintiff as Class Representative. "[S]ervice awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff." *Torres v. Gristede's Operating Corp.*, No. 04-CV-3316 (PAC), 2010 U.S. Dist. LEXIS 139144, at *22 (S.D.N.Y. Dec. 21, 2010) (approving as "reasonable service awards of $15,000 each" for fifteen named plaintiffs for a total of $225,000 from a settlement fund of $3,530,000); *see also Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 316 (E.D.N.Y. 2015) ($10,000 service award); *Times v. Target Corp.*, No. 18 Civ 02993, 2019 U.S. Dist. LEXIS 189101, at *13 (S.D.N.Y. Oct. 29, 2019) (service award of $20,000). As discussed above, the Plaintiff invested significant time in this case and risked her reputation in doing so. *See supra* at § B.5. If approved, the Service Award is only .09% of the Settlement Fund. The

award sought is well within the range awarded in this District and should be awarded here.

### H. REIMBURSEMENT OF COSTS

"It is well established that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class." *Guevoura Fund Ltd.*, 2019 U.S. Dist. LEXIS 218116, at *67 (citation omitted).  Second Circuit courts grant such requests as a matter of course.  *Id.* Class Counsel requests reimbursement of $185,647.65 for actual costs advanced and necessarily incurred in connection with the prosecution and settlement of the Action. Joint Decl. ¶ 51. Specifically, those costs and expenses consist of expert witness fees, filing fees and service of process costs, pro hac vice admission fees, court reporter expenses, deposition transcripts, litigation support vendors, and half of travel costs incurred. *Id.* ¶ 52. Class Counsel is not seeking costs related to legal research, copying, and other overhead expenses, which were advanced and are commonly reimbursed. All of these out of these pockets were reasonably and necessarily incurred to pursue this Action. *Id.*

### IV.   <u>CONCLUSION</u>

Based on the foregoing, Plaintiff respectfully requests that the Court: (1) grant Final Approval to the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3); (3) appoint Plaintiff as Class Representative; (4) appoint as Class Counsel the attorneys previously appointed in the Preliminary Approval Order; (5) award a Class Representative Service Award in the amount of **$15,000.00**; (6) award attorneys' fees to Class Counsel in an amount of **$5,100,000.00** which is 30% of the Settlement Fund; (7) award Class Counsel reimbursement of litigation costs and expenses in the amount of **$185,647.65**; and (8) enter final judgment dismissing this Action, and reserving jurisdiction over settlement implementation. For the Court's convenience, a proposed Final Approval Order is submitted along with this Motion.

DATED: September 8, 2020.

By: /s/ Jeff Ostrow
Jeff Ostrow (pro hac vice)
Jonathan M. Streisfeld (pro hac vice)
Joshua R. Levine (pro hac vice)
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
One West Las Olas Boulevard, Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-525-4100
Facsimile: 954-525-4300
streisfeld@kolawyers.com
ostrow@kolawyers.com
levine@kolawyers.com

Jeffrey D. Kaliel (pro hac vice)
Sophia G. Gold (pro hac vice)
**KALIEL PLLC**
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C.  20009
Telephone: 202-350-4783
jkaliel@kalielpll.com
sgold@kalielpllc.com

Hassan A. Zavareei (pro hac vice)
Anna C. Haac (pro hac vice)
**TYCKO & ZAVAREEI LLP**
1828 L Street, N.W., Suite 1000
Washington, D.C. 20036
Telephone: 202-973-0900
hzavareei@tzlegal.com
ahaac@tzlegal.com

Laurie Rubinow
James E. Miller
**SHEPHERD, FINKELMAN, MILLER**
**& SHAH, LLP**
65 Main Street
Chester, CT 06412
Telephone: 860-526-1100
lrubinow@sfmslaw.com
jmiller@sfmslaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 8, 2020, the foregoing was filed via CM/ECF,
which caused a true and correct copy to be served to all counsel of record.

Respectfully submitted,

By: /s/ Jeff Ostrow
Jeff Ostrow