UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TAWANNA ROBERTS, on behalf of herself
and all others similarly situated,

    Plaintiff,

    - against -

CAPITAL ONE, N.A.,

    Defendant.

No. 16 Civ. 4841 (LGS)

---

**FINAL APPROVAL ORDER GRANTING IN PART APPLICATION
FOR ATTORNEYS' FEES AND COSTS, AND SERVICE AWARD**

On December 16, 2019, Plaintiffs moved for preliminary approval of a $17 million class action settlement. The Court granted preliminary approval on January 10, 2020, and notice of the settlement and fairness hearing was sent to class members. On October 29, 2020, the Court held a fairness hearing. No objections to the settlement were filed, and no objectors appeared at the hearing. By separate order, the Court approved the settlement plan as fair and adequate under Federal Rule of Civil Procedure 23(e).

Plaintiffs move for fees and costs to be paid out of the $17 million settlement fund pursuant to Federal Rule of Civil Procedure 23(h). The requested attorneys' fees are 30% of the fund or $5,100,000. Plaintiffs also move for costs of $185,647.65 and an incentive award of $15,000 for the lead Plaintiff for her participation in the litigation. The motion is granted in part. Class counsel are awarded 27% of the fund in attorneys' fees, or $4,590,000, as well as $185,647.65 in costs. The lead Plaintiff is awarded $10,000.

**I.     BACKGROUND**

The lead Plaintiff filed her Complaint in 2016, alleging unauthorized assessment of

overdraft fees by Defendant on debit card transactions for which there were sufficient available funds in customers' accounts at the time the transactions were authorized and approved. The case was litigated for more than three years before the settlement was negotiated. The class was represented by Kopelowitz Ostrow Ferguson Weselberg Gilbert, Kaliel PLLC and Tycko & Zavareei, LLP (collectively, "Class Counsel"). Class Counsel's work on the litigation included: (1) investigating and filing the Complaint; (2) conducting class, fact and expert discovery; (3) briefing a motion to dismiss and interlocutory appeal of that motion; (4) briefing and defending summary judgment motions and associated motions for reconsideration; (5) briefing class certification; (6) participating in two mediation sessions; and (7) negotiating and briefing settlement.

Under the settlement plan, approximately $12,215,000 in settlement benefits will be paid to approximately 340,000 current and former accounts of Defendant -- an average of approximately $36 per account. Class Counsel worked a total of 3,777.45 billable hours on this matter. This represents work performed up to September 8, 2020, and excludes time spent preparing and arguing the motion to approve the settlement and attorneys' fees, and time that will be spent administering the settlement. If attorneys' fees were calculated on an hourly basis at current rates, the total fee or "lodestar" would be $2,294,960.25. A fee award of 30% of the fund or $5,100,000 would represent a multiplier of 2.22 of the lodestar.

## II.  LEGAL STANDARD

In Rule 23 class actions, the "attorneys whose efforts created the fund are entitled to a reasonable fee—set by the court—to be taken from the fund." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000); *accord Beacon Assocs. LLC I v. Beacon Assocs. Mgmt. Corp.*, No. 14 Civ. 2294, 2020 WL 2213477, at *7 (S.D.N.Y. May 7, 2020). "What constitutes a

reasonable fee is properly committed to the sound discretion of the district court . . . and will not be overturned absent an abuse of discretion . . . ." *Goldberger*, 209 F.3d at 47; *accord Hart v. BHH, LLC*, 334 F.R.D. 74, 79 (S.D.N.Y. 2020). The reasonableness of a fee in this Circuit is evaluated considering the *Goldberger* factors: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50 (omission in original).

District courts in this Circuit may use one of two methods as a starting point to analyze attorneys' fees. *Id.* The first is the "lodestar" method, by which the district court multiplies the reasonable hours billed by a reasonable hourly rate. *See id.* at 47. Once that computation is made, the district court may adjust the multiplier based on other factors such as the risk of the litigation or the performance of the attorneys. *See id.* The second method is the "percentage of the fund" method, which is the trend in this Circuit. *Wal–Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir.2005); *accord Zekanovic v. Augies Prime Cut of Westchester, Inc.*, No. 19 Civ. 8216, 2020 WL 5894603, at *5 (S.D.N.Y. Oct. 5, 2020). Under the percentage method, the fee must be a reasonable percentage of the total value of the settlement fund created for the class. *See Goldberger*, 209 F.3d at 47. The percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal–Mart*, 396 F.3d at 121. By contrast, the lodestar method creates "a disincentive to early settlements, tempts lawyers to run up their hours, and compels district courts to engage in a gimlet-eyed review of the line-item fee audits." *Id.* at 121 (internal quotation marks, citations and alterations omitted); *accord In re Signet Jewelers Ltd. Sec. Litig.*, No. 16 Civ. 6728, 2020 WL 4196468, at *15 (S.D.N.Y. July 21, 2020). The percentage method

3

is used to evaluate the attorneys' fees in this case, with use of the lodestar method as a cross-check to verify the reasonableness of the awarded percentage. *See Wal–Mart Stores, Inc.*, 396 F.3d at 123; *accord Signet Jewelers*, 2020 WL 4196568, at *15.

## III.   DISCUSSION

### A.   Attorneys' Fees

The first step in the attorneys' fees analysis is to determine a baseline reasonable fee with reference to other common fund settlements of a similar size and complexity, based on the subject matter of the claims. This analysis considers three of the *Goldberger* factors: (1) the requested fee in relation to the settlement, (2) whether to award a lower percentage of a higher settlement amount under a "sliding scale" approach in order to avoid a windfall to Class Counsel and (3) the magnitude and complexity of the case. *See In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 348 (S.D.N.Y. 2014). The second step is to consider the *Goldberger* factors of risk, the quality of the representation and other public policy concerns to make any necessary adjustments to the baseline fee. The final step is to apply the lodestar method as a cross-check, which addresses the final *Goldberger* factor -- the time and labor expended by counsel. Based on this analysis, a reasonable fee in this case is 27% of the $17,000,000 settlement fund, or $4,590,000.

#### 1.   Comparison to Court–Approved Fees in Other Common Fund Settlements

Historical data of fees awarded in common fund cases provides an unbiased and useful reference for comparing fees in cases of similar type or with similar recovery amounts. A 2010 empirical study by Professors Eisenberg and Miller examined attorneys' fees awards from nearly 700 common fund settlements between 1993 and 2008. *See* Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993–2008*, 7 J. Empirical

Legal Stud. 248, 263–64 (2010) ("Eisenberg & Miller 2010"). Eisenberg and Miller performed a follow-on study in 2017, examining data from 458 common fund settlements between 2009 and 2013. Theodore Eisenberg et. al., *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 940 (2017) ("Eisenberg & Miller 2017"). Those studies classify the examined settlements by recovery amount and type of litigation. From 1993 to 2008, in cases with recoveries in the $14.3 million to $22.8 million range, the mean attorneys' fees as a percentage of the settlement fund were 22.7, with a median of 23.5. Eisenberg & Miller 2010 at 265, Table 7. From 2009 to 2013, in cases with recoveries in the $12 million to $23.4 million range, attorneys' fees averaged between 25% and 26% of the settlement fund. Eisenberg & Miller 2017 at 948, Fig. 5.

Similar attorneys' fees percentages are found in empirical data for consumer class actions, of which this is one. From 1993 to 2008, attorneys' fees in consumer class actions averaged 25% of the settlement fund, with a median of 20%. Eisenberg & Miller 2010 at 262, Table 5. From 2009 to 2013, attorneys' fees in consumer class actions averaged 26% of the settlement fund, with a median of 25%. Eisenberg & Miller 2017 at 952, Table 4.

Other empirical sources contain similar data. Professor Fitzpatrick's 2016 study of federal class action settlements in 2006 shows that attorneys fees average 24% of the total settlement amount in consumer cases. Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical Legal Stud. 811, 831, Table 7 (2010) ("Fitzpatrick 2010"). His analysis of cases in 2007 showed only a 9% average recovery. *Id.*

As such, fees in cases with similarly-sized settlement funds are typically lower than the 30% Class Counsel request. Fees in consumer class actions are likewise generally lower than Class Counsel's request.

The next question is whether a "sliding scale" approach -- awarding a smaller percentage for fees as the size of the settlement fund increases -- is appropriate and avoids a windfall to plaintiffs' counsel to the detriment of class members. *See Wal–Mart* at 122–23 ("Recognizing that economies of scale could cause windfalls in common fund cases, courts have traditionally awarded fees for common fund cases in the lower range of what is reasonable."); *accord In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 Civ 2613, 2020 WL 6891417, at *3 (S.D.N.Y. Nov. 24, 2020). In support of their request for a 30% fee, Class Counsel provide a 2019 affidavit prepared by Professor Fitzpatrick for a motion for attorneys' fees in a separate case. That affidavit surveys attorneys' fees in 64 bank overdraft class actions like this one. *See In Re: TD Bank, N.A. Debit Card Overdraft Fee Litigation*, MDL No. 2613, Docket No. 223 ¶4 (D.S.C. Nov. 13, 2019). The affidavit notes that the average fee was 30.5% of the settlement fund, with a median of 30%. *Id.* ¶5. However, the affidavit does not provide any reasoned basis for why recoveries in bank overdraft litigation are higher than the average in consumer class actions. Instead, it only notes that although "[e]mpirical scholars have often found that settlement size has a negative inverse effect on fee awards . . . there is *no* statistically significant relationship between fee award and settlement size" in bank overdraft class actions. *Id.* ¶8. Nor did Class Counsel articulate any reason for why class actions should inherently have a higher range of recovery than other consumer actions, or class settlements of similar size. Mindful of the fact that "[i]n the context of a class action settlement, it is unlikely that any private stakeholder is a reliable source of information," *In re Colgate-Palmolive*, 36 F. Supp. 3d at 349 (*citing McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 418 (2d Cir. 2010)), as well as the Second Circuit's admonition that use of any fixed percentage for all cases, regardless of settlement size, "seems to offer an all too tempting substitute for the searching assessment that

6

should properly be performed in each case," *Goldberger*, 209 F.3d at 52, the Court declines to award the 30% requested by Class Counsel on the basis of the 2019 Fitzpatrick affidavit, and instead finds that a lower recovery percentage is appropriate in light of the size of the settlement and the fact that the Court must act as a fiduciary "serv[ing] as a guardian of the rights of absent class members," *id*.

The next question is whether the magnitude and complexity of this case warrants a departure from the lower range typically seen in similar cases. As to complexity, Class Counsel do not provide, nor does the Court discern, any reason why overdraft fee litigation is inherently more complex than other types of consumer class litigation. As to magnitude, this case was heavily litigated through an interlocutory appeal, extensive discovery, a motion to dismiss, summary judgment and various mediation and settlement discussions. Accordingly, this factor favors recovery above the baseline set by similar cases.

In considering the first three *Goldberger* factors, a recovery in the range of cases of similar type and size is appropriate, with an upward adjustment due to the time and effort Class Counsel spent litigating this case. The Court finds that a recovery of 27%, totaling $4,590,000, adequately accounts for each of these factors.

        **2.**        **Consideration of Risk, Result and Policy Considerations**

The next step is to consider three additional *Goldberger* factors -- the risk of the litigation, the quality of the representation and any remaining public policy considerations -- and determine whether this case is so exceptional in any of those areas that a departure from the $4,590,000 award is warranted. No such departure is warranted in this case.

        **i.**        **The Risk of Litigation**

Risk should be considered "as of when the case is filed," *Goldberger*, 209 F.3d at 55, and

greater risks undertaken by counsel who accept a case on a contingent fee basis support a higher settlement percentage, *Signet Jewelers*, 2020 WL 4196468, at *19. This case presented specific issues of contract interpretation that were addressed by the Second Circuit on interlocutory appeal, but otherwise did not involve significant unsettled questions of law or complex legal issues. On the other hand, had this case proceeded to trial, unresolved factual and legal issues may have barred any recovery by Class Counsel. However, a demonstrable risk of loss is inherent to any case that proceeds to trial, and such risk does not justify increasing the recovery percentage in this case.

### ii. The Quality of Representation

Class Counsel credibly represent that they have experience in litigating bank overdraft class actions. The settlement in this case supports that representation. *Goldberger*, 209 F.3d at 55 ("the quality of representation is best measured by results"). The settlement is the product of more than four years of litigation and negotiation, and appears to be a fair reflection of the strength of each constituency's case. Class members, none of whom objected to the settlement, will receive approximately 35% of the maximum that they could have received, which assumes that they would have prevailed on various disputed legal and factual issues, including class certification. The settlement therefore appears to be a fair reflection of the risk-adjusted value of the claims, and there is no reason to conclude that its terms warrant an increase in Class Counsel's recovery percentage.

### iii. Public Policy Considerations

Protecting bank customers from unfair or predatory overdraft practices serves the important public interest of consumer protection, and Class Counsel's fees should reflect the important goal of "serv[ing] as an inducement for lawyers to make similar efforts in the future."

8

*Wal–Mart*, 396 F.3d at 96. However, no special public policy concern differentiates this case from other consumer protection cases. As such, this factor does not warrant an increase in Class Counsel's recovery percentage.

### 3. The Lodestar Cross-Check

The lodestar method assesses the value of attorney hours at a reasonable billing rate, as requird by the last *Goldberger* factor. The lodestar cross-check ensures the reasonableness of a fee awarded under the percentage-of-the-fund method. *See Signet Jewelers*, 2020 WL 4196468, at *16 (citing *Goldberger*, 209 F.3d at 50). The requested fee in this case results in a lodestar multiplier of 2.22, and the awarded fee results in a lodestar multiplier of 2.0. Lodestar multipliers in cases with similar settlement amounts averaged 1.68 with a standard deviation of .85 from 1993 to 2008, *see* Eisenberg & Miller 2010 at 274, Table 15, and averaged 1.86 with a standard deviation of 1.58 from 2009 to 2013, *see* Eisenberg & Miller 2017 at 967, Table 13. Consumer class actions from 2009 to 2013 averaged a lodestar multiplier of 1.32. *See id.* at 965, Table 12.B. As such, although the multiplier in this case is higher than usual, it is not unreasonable. Accordingly, the lodestar cross-check provides no basis for adjusting the attorneys' fees award.

### B. Costs

Class Counsel seek reimbursement for $185,647.65 in litigation costs for: expert witnesses, filings, service, pro hac vice admissions, court reporters, deposition logistics, litigation support vendors and 50% of travel costs. Courts routinely award such costs, which are necessarily incurred in litigation and regularly charged to clients. *See Signet Jewelers*, 2020 WL 4196468, at *16 ("in a class action, attorneys should be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental

and necessary to the representation" (internal quotation marks omitted)); Fed. R. Civ. P. 23(h); *see also Wal–Mart*, 396 F.3d 96, 121 (2d Cir. 2005) (affirming award of routine litigation costs and expenses). Class Counsel's motion for costs is accordingly granted.

### C. Service Award to Named Plaintiff

"Courts regularly grant requests for service awards in class actions to compensate plaintiffs for the time and effort expended in assisting with the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Lesser v. TIAA Bank, FSB*, No. 19 Civ. 1707, 2020 WL 6151317, at *4 (S.D.N.Y. Oct. 20, 2020) (internal quotation marks omitted); *see also McReynolds v. Richards-Cantave*, 588 F.3d 790, 796 (2d Cir. 2009). However, such awards should be closely scrutinized, because "[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 434 (S.D.N.Y. 2014). The amount of such awards may range in value based on the amount of work performed by the representative on behalf of the class. *See, e.g.*, *Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at *14 (S.D.N.Y. Apr. 16, 2012) (collecting cases). Service awards are generally higher where the representative puts in demonstrably more effort than usual, *see Sykes v. Harris*, No. 09 Civ. 8486, 2016 WL 3030156, at *18 (S.D.N.Y. May 24, 2016), faces a risk of harm or retaliation as a result of their representation, *see Dial Corp. v. News Corp.*, 317 F.R.D. 426, 439 (S.D.N.Y. 2016) (collecting cases), or lost wages, vacation time or commissions from sales because of time spent at depositions or other proceedings, *see In re Bank of Am. Corp. Sec., Derivative, and Employee Retirement Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 133 (2d Cir. 2014).

Plaintiff requests an incentive award of $15,000 as compensation for her efforts advancing the litigation on behalf of the Class.  Plaintiff engaged in activities commonly expected of class representatives:  she consulted with Class Counsel, sat for a deposition that inquired into her personal finances, reviewed documentation related to discovery, settlement and appeal, and produced responsive documents and information in discovery.  Mindful that a "balance must be struck so that a class representative does not view [her] prospect for rewards as materially different from other members of the class, yet is not disadvantaged by [her] service in pursuing worthy claims," *Lacovara v. Hard Rock Cafe Int'l (USA), Inc.*, No. 10 Civ. 7821, 2012 WL 603996, at *1 (S.D.N.Y. Feb. 24, 2012), the Court finds an incentive award of $10,000 justified.  *See Gonzalez v. Pritzker*, No. 10 Civ. 3105, 2016 WL 5395905, at *5 (S.D.N.Y. Sept. 20, 2016) (awarding $10,000 to "compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation"); *see also In re Doria/Memon Disc. Stores Wage & Hour Litig.*, No. 14 Civ. 7990, 2020 WL 6381830, at *2 (S.D.N.Y. Oct. 30, 2020) (finding a $10,000 service award reasonable); *Montalvo v. Flywheel Sports, Inc.*, No. 16 Civ. 6269, 2018 WL 7825362, at *5 (S.D.N.Y. July 27, 2018) (finding a "$ 10,000 service fee is both appropriate in light of the time [class plaintiff] spent and in light of the risk [class plaintiff] ran and as an incentive for others to follow suit in future cases"); *Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271, 2011 WL 9380874, at *7 (S.D.N.Y. Sept. 21, 2011) (awarding $10,000).

## IV.    CONCLUSION

Class Counsel is hereby awarded attorneys' fees of $4,590,000.00 and reimbursement of expenses in the sum of $185,647.65, to be paid from the settlement fund.  The lead Plaintiff is awarded $10,000, to be paid from the settlement fund.

Dated:  December 2, 2020
        New York, New York

_____
LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE